UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:

MUNCE'S SUPERIOR PETROLEUM PRODUCTS, INC.,

Debtor.

Chapter 11

Case No. 11-10975

**MOTION FOR ORDER: (A) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING; (B) GRANTING TO NORTHWAY BANK POST-PETITION SECURITY INTERESTS; (C) AUTHORIZING THE USE OF CASH COLLATERAL; (D) GRANTING ADEQUATE PROTECTION IN THE FORM OF REPLACEMENT LIENS; AND (E) SETTING A FINAL HEARING**

Munce's Superior Petroleum Products, Inc. (the "Debtor"), the debtor and debtor-in-possession in the above-captioned chapter 11 case, hereby files this motion (the "Motion") seeking an order: (a) authorizing the Debtors[1] to obtain post-petition financing from Northway Bank ("Northway") in the form of a revolving line of credit of up to $300,000 (the "DIP Financing"); (b) authorizing the Debtors to use the DIP Financing proceeds on an interim basis up to and including May 13, 2011; (c) authorizing the Debtors to grant to Northway post-petition security interests in all of their assets; (d) authorizing the use of cash collateral post-petition; (e) granting adequate protection to Northway and Passumpsic Savings Bank ("Passumpsic") in the form of replacement liens; and (f) prescribing the manner of notice for the final hearing. The relief sought in this Motion is critical to enable the Debtors to operate their businesses during their respective chapter 11 cases. Under the circumstances, the relief is in the best interests of the Debtors' estates and is warranted under the applicable sections of title 11 of the United States

---

[1] The term "Debtors" shall refer collectively to Munce's Superior Petroleum Products, Inc. ("MSPP"), Superior Trucking, Inc. ("Superior Trucking"), Gorham Oil, Inc. ("Gorham Oil"), Munce's Real Estate Ventures, LLC ("MREV") and BMRA Real Estate Ventures, LLC ("BMRA").

Code (the "Bankruptcy Code"), including sections 105 and 364. In further support of this Motion, the Debtor states as follows:

**JURISDICTION, VENUE AND STATUTORY BASIS**

1. This Court has jurisdiction to entertain this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are sections 105(a), 363, 364 and 552 of the Bankruptcy Code, Rules 2002 and 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the District of New Hampshire (the "Local Rules").

**BACKGROUND**

*A.     The Debtors' Operations*

2. The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on March 16, 2011 (the "Petition Date"). All of the Debtors will be co-borrowers under the DIP Financing, and each will be pledging its assets, subject to existing valid and unavoidable liens, to secure the DIP Financing.

3. The Debtors continue to operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been sought or appointed in these cases, and no committees have been appointed as of the date of this Motion. A motion seeking joint administration of the Debtors' bankruptcy cases is currently pending before this Court.

4. Prior to the filing of the Chapter 11 cases, the Debtors' operations were financed primarily pursuant to various secured financing arrangements with Northway and Passumpsic

(collectively, the "Lenders"). The Lenders have security interests in substantially all of the Debtors' assets. Those arrangements are described in more detail below.

5. The Debtors are in the heating oil, propane and fuel distribution business, and also operate gas station/convenience stores. MSPP operates eight convenience stores and truck stops located throughout New Hampshire, as well as a campground located on property adjacent to one of its convenience stores in Lancaster, New Hampshire. MSPP also provides home heating and fuel delivery service, delivers propane, and distributes fuel and gasoline to wholesale buyers. Gorham Oil distributes heating fuel to local customers and also operates two convenience stores. Superior Trucking is a transportation company that delivers fuel and gas products to local customers as well as the ten gas station/convenience stores operated by MSPP and Gorham Oil. BMRA and MREV are real estate holding companies which own real property on which a variety of the Debtors' businesses are located. BMRA and MREV lease those properties to operating companies MSPP and Gorham Oil.

6. The Debtors intend to reorganize under chapter 11 of the Bankruptcy Code, which reorganization may involve the sale of some or all of the Debtors' assets on a going concern basis. In order to maximize their ability to reorganize and preserve the going concern value of their assets, the Debtors require a post-petition credit facility and the use of cash collateral to meet their post-petition obligations. Without a credit facility, and the use of cash collateral, the Debtors will suffer immediate cash shortfalls, and will be forced to permanently discontinue operations and liquidate their assets, to the disadvantage of all of their creditors. Moreover, the availability of a credit facility and the working capital it provides is necessary to reassure both wholesale and retail customers as to the certainty of their deliveries; if the Debtors cannot

provide that reassurance and certainty, the Debtors' customer base will erode to the detriment of the businesses, the Debtors' estates, and their respective creditors and stakeholders.

B.   *Existing Secured Debt*[2]

7.   Pre-petition, the Debtors entered into, or guaranteed, certain credit facilities with Northway and Passumpsic. Those obligations can be summarized as follows:

> a. **MSPP** – MSPP is the primary obligor, or a co-obligor, with respect to obligations arising out of: (1) an April 6, 1995 loan from Northway in the original principal amount of $350,000; (2) a July 25, 1997 loan from Northway in the original principal amount of $1,275,000; (3) a February 22, 2007 loan from Northway in the original principal amount of $2,735,000; (4) an April 13, 2007 loan from Northway in the original principal amount of $476,000; (5) a November 23, 2007 loan from Passumpsic in the original principal amount of $173,298.14; (6) a December 23, 2008 loan from Northway in the original principal amount of $250,000; (7) a February 13, 2008 loan from Northway in the original principal amount of $415,000; (8) a March 27, 2009 loan from Passumpsic in the original principal amount of $750,000; and (9) a January 19, 2010 loan from Northway in the original principal amount of $500,000. As of the Petition Date, the aggregate outstanding balance on the loans from Northway totaled $4,096,786 and the aggregate outstanding balance on the loans from Passumpsic totaled $838,422.16.
>
> In addition, MSPP also guaranteed obligations arising out of: (1) a $440,000 loan from Passumpsic to MREV dated December 4, 2002; (2) a $1,140,000 loan from Passumpsic to Harold and Marilyn Munce dated April 18, 2003; and (3) an $860,000 loan from Passumpsic to non-debtor MRRB, Inc. dated November 6, 2003. As of the Petition Date, the total outstanding debt owed to Passumpsic on the guaranteed debt was $1,835,837.64.
>
> MSPP's obligations to Northway and Passumpsic are secured by security interests in substantially all of MSPP's personal property.
>
> b. **MREV** – MREV is the primary obligor, or a co-obligor, with respect to obligations arising out of: (1) a March 21, 2002 loan from Passumpsic in the original principal amount of $1,200,000; and (2) a December 4, 2002 loan from Passumpsic in the original principal amount of $440,000. These obligations are secured by mortgages on certain real properties located at Route 104 in New Hampton, NH and 3 Brooklyn Street in Groveton, NH. As of the Petition Date, the aggregate outstanding balance on these loans totaled $1,301,670.08.

---

[2] The debts described in this section are approximate, both in amount and in the scope of collateral. The Debtors reserve their right to challenge the claim amounts, and the extent, priority and validity of any alleged security interests, except to the extent such rights are waived with respect to Northway in connection with court-approved debtor-in-possession financing.

c. **BMRA** – BMRA is the primary obligor on an April 1, 2004 loan from Northway in the original principal amount of $440,000. As of the Petition Date, the outstanding balance on this loan was $352,346. BMRA also guaranteed MSPP's obligations under a March 27, 2009 promissory note to Passumpsic in the original principal amount of $750,000. As of the Petition Date, the outstanding indebtedness owed on this guaranteed debt was $770,028.14. BMRA's obligations under the Northway loan and its guaranty of the Passumpsic loan to MSPP are secured by mortgages on certain real properties located at 1515 White Mountain Highway in Tamworth, NH and 715 Daniel Webster Highway in Merrimack, NH.

8. In addition to the foregoing loans, the Debtors, Harold Munce and Marilyn Munce, the principal shareholders and/or members of the Debtors (collectively with the Debtors, the "Borrowers"), entered into a loan agreement with Northway on or about March 16, 2011, pursuant to which Northway loaned $200,000 to the Borrowers. This loan was secured by a lien on all assets of the Borrowers, including a first priority security interest in certain vehicles. As of the Petition Date, there was an outstanding balance of approximately $200,000 on the March 16, 2011 loan.

9. In addition to the bank loans, NGM Insurance Company ("NGM") obtained a writ of attachment against certain of MSPP's and Gorham Oil's personal property relating to a certain insurance bond contract. The attachment, which is in the amount of $600,000, was recorded with Secretary of State for the State of New Hampshire.

10. Sprague Energy Corp. alleges that it has a security interest in all vehicles and equipment of MSPP, as well as all goods manufactured or distributed by MSPP, and the proceeds thereof. The alleged security interest secures a purported claim in the amount of $539,412 arising out of losses relating to a certain forward contract between MSPP and Sprague.

11. Associated Grocers of New England, Inc. holds a claim against MSPP in the amount of $48,053.61. This alleged claim is secured by a purported security interest in substantially all of MSPP's personal property.

12. In addition, IBM Credit, LLC holds an alleged claim against MSPP in the amount of $4,749.12, which claim is secured by a purported security interest in certain specified equipment and software owned by MSPP.

13. Finally, DaimlerChrysler Financial Services America holds an alleged claim against Superior Trucking in the amount of $15,954, which claim is purportedly secured by certain equipment owned by Superior Trucking.

14. A UCC search also revealed financing statements filed against MSPP by the U.S. Small Business Administration, M&T Credit Services, LLC and the Valvoline Company. MSPP believes that the debts giving rise to these financing statements have been paid in full.

C. *The DIP Financing*

15. The Borrowers have reached an agreement pursuant to which Northway will make available to the Borrowers a revolving line of credit of up to $300,000 (the "DIP Loan"). The terms and conditions of the DIP Loan are set forth in the commitment letter attached hereto as **Exhibit A** (the "Commitment Letter"). The DIP Loan shall be used for the purposes and to the extent shown in the budget attached hereto as **Exhibit B** (the "Budget").

16. The agreement of Northway and the Borrowers is conditioned upon, *inter alia*, the entry of a final order approving the DIP Loan and the transactions contemplated by this Motion. Upon entry of an interim order and any subsequent final order, Northway will advance up to $300,000 to cover the Debtors' cash needs as set forth in the Budget.

17. Pursuant to section 364(c)(2) and (3) of the Bankruptcy Code, indebtedness for the DIP Loan will be secured by a lien on all of the assets of the Borrowers (the "Collateral"). To the extent that an asset is unencumbered by an existing lien, the lien securing the DIP Loan will be first in priority. With respect to any property encumbered by pre-petition liens, the DIP

Loan will be secured by a lien junior in priority to any existing liens. All of the new liens will be cross-collateralized with all other loans from Northway to the Borrowers. To the extent not already cross-collateralized, all pre-existing loans from Northway to the Borrowers shall be cross-collateralized as well. All pre-petition and post-petition loans shall be cross-defaulted.

18. **Pursuant to Local Rule 4001-2(c), the Debtors hereby highlight that the proposed DIP Loan contains the following provisions:**

   a. **The liens to be given Northway to secure the DIP Loan shall be cross-collateralized with all other loans from Northway to the Borrowers. Moreover, to the extent not already cross-collateralized, all pre-prepetition loans from Northway to the Borrowers shall be cross-collateralized as well. All pre-petition and post-petition loans shall be cross-defaulted.**

   b. **The DIP Loan shall be secured by, *inter alia*, a lien on avoidance actions and avoidance action recoveries, including fraudulent conveyance and preference recoveries.**

   c. **The automatic stay shall be lifted with respect to Northway upon entry of a financing order of this Court to permit, *inter alia*, the ability of Northway to exercise its rights and remedies under the financing order and the loan documents without seeking additional relief from the Court; and**

   d. **The Borrowers shall waive and release any claims against Northway pursuant to section 506(c) of the Bankruptcy Code.**

## REQUEST FOR RELIEF

19. By this motion, MSPP seeks authority to: (1) enter into the DIP Loan, as described above and outlined in greater detail in the Commitment Letter; (2) grant Northway a post-petition lien on all of its assets; (3) use cash collateral post-petition; and (4) grant adequate protection to the Lenders in the form of replacement liens. MSPP also seeks an order setting this matter for a final hearing.

**BASIS FOR RELIEF**

  A. *Approval of the DIP Loan*

  20. The Debtors require the proposed post-petition financing in order to meet critical post-petition obligations and continue operating their businesses as a going concern. The proceeds of the DIP Loan will be used to pay the expenses set forth in the Budget, such as payroll, vendor and supplier costs, and other expenses necessary to their continued operations. Absent this relief, the Debtors will be forced to cease operating and liquidate their assets quickly, to the great detriment of their creditors. The financing is necessary to preserve, protect and maintain the going concern value of the Debtors' assets and maximize the value of their estates.

  21. The Debtors are unable to obtain unsecured credit sufficient to operate or reorganize their businesses by providing an administrative expense claim. The DIP Loan was obtained on the most favorable terms available to the Debtors following discussions with various lending sources, including the Lenders. Under existing time constraints and conditions, and considering the limited available collateral of the Debtors, alternative financing was not and is not available at all, or on a timely basis. The financing terms are reasonable in light of the risks involved and the collateral offered.

  22. Pending final hearing on the DIP Loan, the Debtors anticipate the need to borrow funds sufficient to cover expenses as set forth in the Budget. These funds must be advanced from March 17, 2011 through May 13, 2011, and are necessary to avoid immediate and irreparable harm to the Debtors' estates. Weekly payroll and certain critical expenses must be paid, and the Debtors will have insufficient funds to pay such payrolls and other critical expenses unless such advances are made.

*B.     Use of Cash Collateral*

23.     As noted above, the Debtors' inventory and accounts receivable, as such collateral existed on the Petition Date, are subject to the purported liens of the Lenders. Accordingly, the proceeds of such collateral constitute the Lenders' cash collateral under 11 U.S.C. § 363(a).

24.     Pursuant to section 363(c)(1) and (c)(2)(B) of the Bankruptcy Code, Bankruptcy Rule 4001(b), and Local Rule 4001-2, the Debtors seek authority to use the amounts in their existing bank accounts and cash generated post-petition (the "Cash Collateral") in the ordinary course of business, including payment of items shown in **Exhibit B**, consistent with the terms of the DIP Loan.

25.     As adequate protection of the Lenders' interests in the Cash Collateral, the Debtors seek authority, pursuant to section 552(b)(1) of the Bankruptcy Code, to grant the Lenders a continuing, post-petition interest in the Cash Collateral and the proceeds thereof, to the same nature and extent as the pre-petition liens held by the Lenders in the Debtors' inventory and accounts receivable, to the extent the Cash Collateral is used by the Debtors.

## NOTICE

26.     Notice of the hearing on this Motion was served on the following parties on the date on which it was filed by e-mail or facsimile: (1) the United States Trustee; (2) Northway; (3) the Debtors' secured creditors or their counsel; (4) the non-insider holders of the twenty (20) largest unsecured claims against the Debtors or their counsel; (5) applicable federal and state taxing authorities; and (6) the Critical Vendors.

WHEREFORE, the Debtor respectfully requests that this Court enter an order: (1) authorizing the Debtors, on an interim basis up to and through May 13, 2011, to incur indebtedness to Northway on the terms set forth in **Exhibit A**; (2) authorizing the Debtors to

grant Northway post-petition liens on all of their assets; (3) authorizing the use of cash collateral in the amounts and for the purposes set forth in **Exhibit B**; (4) granting Northway and Passumpsic replacement liens in the Cash Collateral on the terms set forth herein; (5) setting a date and time for a final hearing on the relief requested in this Motion; and (6) granting such other and further relief as this Court deems necessary and appropriate.

Dated:  March 16, 2011                      MUNCE'S SUPERIOR PETROLEUM PRODUCTS, INC.

By its proposed attorneys:

/s/ *Jennifer Rood*
Jennifer Rood, Esq.
BERNSTEIN, SHUR, SAWYER & NELSON
Jefferson Mill Building
670 North Commercial Street, Suite 108
PO Box 1120
Manchester, NH 03105-1120
(603) 623-8700

    and

/s/ *Robert J. Keach*
Robert J. Keach, Esq.
Jay S. Geller, Esq.
Jessica A. Lewis, Esq.
BERNSTEIN, SHUR, SAWYER & NELSON
100 Middle St., PO Box 9729
Portland, Maine 04104-5029
(207) 774-1200