
EXHIBIT
A



3424 White Mountain Highway
North Conway, NH 03860
Tel: (603) 356-8010
Fax: (603) 356-8014
tcaruso@northwaybank.com

March 9, 2011

Harold P. Munce, President
Munce's Superior Petroleum Products, Inc.
620 Main Street
Gorham, NH 03581

Dear Mr. Munce:

Subject to the approval of a Final Financing Order acceptable to Northway Bank by the United States Bankruptcy Court for the District of New Hampshire, I am pleased to inform you that Northway Bank ("Lender") has approved your request for an advance for post-petition debtor-in-possession financing in the form of a new revolving line of credit loan (collectively the "Loan"). The Loan shall also be subject to the following terms and conditions:

1. Borrowers..........................................................Munce's Superior Petroleum Products, Inc.
BMRA Real Estate Ventures, LLC
Gorham Oil, Inc.
Superior Trucking, Inc.
Munce's Real Estate Ventures, LLC
Harold P. Munce
Marilyn J. Munce
All Jointly and severally
(collectively, "Borrowers")

2. Loan amounts....................................................$300,000.00.

3. Term..................................................................(1) year

4. Interest rate.......................................................The interest charged on the Loan shall be fixed at six percent (6.00%) per annum.

5. Payments...........................................................Borrowers shall make payments of accrued interest only on a monthly basis commencing thirty (30) days after Loan closing. A final payment of the entire unpaid balance of principal and interest shall be due at maturity. The annual interest for the Loan will be computed on an actual/360 basis. Lender shall at its discretion be able to demand payment in full upon sale of all or substantially all of Borrowers assets.

6.   Purpose..............................................................working capital for debtor-in-possession operations subsequent to the filing of the Borrowers' Chapter 11 bankruptcy petition in the United State Bankruptcy Court for the District of New Hampshire (the "Court").

7.   Security .............................................................To the extent possible, a first perfected lien on all assets of the Borrowers (the "Collateral"), cross-collateralized with all other loans from Lender to the Borrowers. Currently encumbered assets shall be subject to a second or third priority lien on such assets, as applicable. Borrower further agrees that to the extent not already cross-collateralized, all pre-existing loans from Lender to Borrowers shall be cross-collateralized as well. All pre-petition and post-petition loans shall be cross-defaulted.

8.   Documentation..................................................The Loan will be made subject to the terms and conditions of a comprehensive Loan Agreement which shall include warranties, affirmative and negative covenants and other conditions typical for a Loan of this type and size. All documentation, including but not limited to the Note, Security Agreement, and Loan Agreement and will be in form, content, and execution satisfactory to Lender to be prepared by counsel selected by Lender. Lender reserves for itself and for its counsel the right to require additional documentation, which counsel, in its own discretion, deems necessary to protect the interests of Lender.

9.   Organization and Authorization.........................Borrowers shall provide Lender with appropriate corporate resolutions authorizing Borrowers to enter into the Loan and to execute, deliver and perform the documents relating thereto. Confirmation from the Secretary of State regarding the existence, good standing, and authority of Borrowers to transact business in New Hampshire shall be required prior to closing and shall be obtained by Lender or Lender's counsel.

10.  Advances...........................................................Requests for advances from this Loan must be submitted in writing on forms provided by Lender and in amounts consistent with budgets to be provided by Borrowers to Lender; provided, however, that Lender shall have no obligation whatsoever to make any post-petition advance if, at the time of the proposed funding, the aggregate principal amount of all post-petition advances would exceed the maximum principal amount of the Loan.

11.  Financial Reporting............................................Borrowers shall cause to be prepared and furnished to Lender the following:

        a.   Prior to execution of the Loan Agreement, Borrowers shall have submitted an operating budget for the succeeding 12-month period (the "Budget"), which shall be updated as set forth in sub-paragraph (c) below;

    b. As soon as available, and in any event within 30 days after the end of each month, unaudited financial statements of the Borrowers and the related unaudited statements of income and cash flow for each month;

    c. On or before the third business day of each week, (i) a report in form acceptable to Lender setting forth any variances in actual cash receipts and expenditures from those projected in the Budget and (ii) an update to the Budget setting forth changes therein reasonably anticipated by Borrowers (it being understood that no such changes shall become part of the Budget unless approved by Lender in writing);

    d. Borrowers shall deliver to Lender, in form acceptable to Lender, a detailed aged trial balance of all customer accounts ("Accounts") existing as of the last day of the preceding month, specifying the names, addresses, face value, dates of invoices and due dates for each Account Debtor obligated on an Account so listed ("Schedule of Accounts"), and, upon Lender's request therefor, copies of proof of delivery and a copy of all documents, including repayment histories and present status reports relating to the Accounts so scheduled and such other matters and information relating to the status of then existing Accounts as Lender shall reasonably request; and

    e. Such other data and information (financial or otherwise) as Lender, from time to time, may reasonably request, bearing upon the Collateral or any Borrowers' condition or results of operations.

    f. An updated Personal Financial Statement from Harold and Marilyn Munce detailing all assets and their locations sworn to under oath.

12. Insurance ..........................................................Prior to closing, and throughout the term of the Loan, Lender is to be provided with such insurance policies, binders or certificates as are required by the Loan documents, including but not limited to hazard insurance written on an all-risk basis, and including a builder's risk completed value endorsement, worker's compensation and public liability insurance. The policies shall have standard mortgagee clauses attached or added by endorsement which provide that all insurance proceeds shall be paid to Lender and that the policies shall not be canceled without ten (10) days' prior notice to Lender.

13. Expenses ..........................................................Borrowers will pay all costs incidental to this transaction including but not limited to attorney's fees, recording fees, appraisal and inspection fees and all other related expenses, whether the Loan contemplated hereunder is made or not, unless the Loan is not made because of wrongful action or delay by Lender.

14. Lender not a Joint Venturer ..............................Notwithstanding anything to the contrary herein contained, Lender, by making this Loan or by any action taken pursuant hereto, will not be deemed a partner or a joint venturer with Borrower; and Borrower will indemnify and hold

Lender harmless from any and all damages resulting from such a construction of the parties and their relationship.

15. No Assignability or Assumability;
    Prior Agreements ................................................This commitment is not assignable or assumable and supersedes all prior written or oral communications or understandings between the parties. Any alterations to this letter of commitment will render it null and void.

16. Incorporation into the Loan Documents ...........The parties hereto agree that the terms of this commitment letter shall survive the Loan closing contemplated hereunder and that each and every condition set forth in this commitment shall be a continuing obligation and undertaking and shall not cease or terminate until the entire Loan, together with all interest and fees due herein and any other amounts which may accrue pursuant to this commitment and/or the Loan documents executed pursuant thereto shall have been paid in full, and until the obligations and undertakings of Borrower shall have been fully completed and discharged.

17. Additional Provisions .......................................This commitment is subject to approval by the Court of an interim and final financing order approving all the terms and conditions of this commitment letter, including but not limited to the following terms and conditions:

    a. Repayment of the Loan to be secured by a lien on avoidance actions and avoidance action recoveries, including fraudulent conveyances and voidable preference recoveries;
    b. Advances shall cease immediately upon an event of default (as that term shall be defined in the Loan Agreement);
    c. The automatic stay with respect to Lender shall be lifted upon entry of a financing order of the bankruptcy court to permit, among other things, the ability of Lender to exercise its rights and remedies under the financing order and the loan documents without seeking additional relief from the court;
    d. Borrowers shall provide detailed budgets to Lender and weekly estimates versus actual expenses. Lender shall have the right to approve the budgets, such approval not to be unreasonably withheld. Borrower shall not be allowed to use the Loan proceeds to make payments not scheduled on Borrowers' budgets without prior consent of the Lender, such consent not to be unreasonably withheld.
    e. Borrowers' nonconsensual use of Lender's cash collateral after an Event of Default or other termination of the loan facility shall be strictly prohibited;
    f. The financing order, including any interim financing order, shall contain a specific finding that Lender has acted in "good faith," within the meaning of Section 364(e) of the Bankruptcy Code.

g.  Collateral subject to Lender's security interest shall be insulated from statutory charges for its preservation or disposition under Section 506(c) of the Bankruptcy Code;

h.  The terms and conditions of the financing order shall be binding upon Borrowers' successors, including any subsequently appointed trustee;

i.  There shall be no changes in management personnel of Borrowers while any obligations under the Loan remain outstanding, including with respect to the retention of Mark Stickney as chief restructuring officer, without Lender's prior written consent;

j.  All Loans between Borrowers and Lender are cross-collateralized and cross-defaulted;

k.  Lender shall receive a replacement lien on all cash collateral used by the Borrower;

l.  Lender reserves the right to object to all budgets and fee applications;

m.  Borrowers agree to release any and all claims against Lender relating in any way to the previous or contemplated financing transactions and to release any 506(c) claims;

n.  Borrowers shall cause to be released all nonconsensual liens on any assets of Borrowers by consent of the creditor or through the filing of bankruptcy petitions by Harold and Marilyn Munce;

o.  Lender does not agree in advance to the use of cash collateral. Lender must consent to any proposed cash collateral order, such consent not to be unreasonably withheld;

p.  Lender shall have the right to review and approve the proposed sale of any assets of Borrowers and the distribution of proceeds from the sale of any assets of Borrowers , such approval not to be unreasonably withheld;

q.  Lender has been able to fully perfect its security interest in the borrower's vehicles to secure a prior round of financing and such security interest is not challenged as part of any bankruptcy proceeding;

r.  The financing order and the loan documents shall terminate prior to the maturity date set forth in this commitment letter upon (i) the appointment of a trustee, (ii) the dismissal of the case, (iii) the conversion of the case to a Chapter 7 liquidation, (iv) the payment of any prepetition claims without lender's consent, or (v) any other event of default.

Lender reserves the right to impose such additional reasonable conditions as it may determine prior to closing. This commitment letter and the basic terms and conditions outlined herein are not meant to be, nor shall they be construed as, an attempt to define all the terms and conditions of the financing.

18.  <u>Fees</u> .................................................................Borrowers shall pay a non-refundable commitment fee of $3,000 which shall be due and payable upon delivery of the executed commitment letter from Borrowers to Lender.

This commitment shall not become effective until such time as it is accepted in writing by Borrowers. Please evidence acceptance by signing the enclosed copy of this letter and returning it, with the commitment fee, to Lender on or before March 21, 2011. This commitment and all obligations of Lender hereunder will terminate if a final financing order has not been entered and the Loan has not closed by April 18, 2011.

Sincerely,

Thomas Caruso
Senior Vice President

The undersigned hereby accept this commitment and agree to be bound by its terms and conditions:

MUNCE'S SUPERIOR PETROLEUM PRODUCTS, INC.


By: _____
Name:
Title:

BMRA REAL ESTATE VENTURES, LLC


By: _____
Name:
Title:


GORHAM OIL, INC.


By: _____
Name:
Title:


SUPERIOR TRUCKING, INC.


By: _____
Name:
Title:


MUNCE'S REAL ESTATE VENTURES, LLC


By: _____
Name:
Title:

_____
Harold P. Munce


_____
Marilyn J. Munce