IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | CHAPTER 11 |
| MUNCE'S SUPERIOR PETROLEUM | ) | |
| PRODUCTS, INC., ET AL. | ) | |
| | ) | NO. 11-10975-JMD |
| Debtors | ) | JOINTLY ADMINISTERED |

**OBJECTION OF THE STATE OF NEW HAMPSHIRE DEPARTMENT OF ENVIRONMENTAL SERVICES TO THE DEBTOR'S MOTION FOR ORDER AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING**

The State of New Hampshire Department of Environmental Services, by its attorneys the Office of the Attorney General objects to the Debtor's Motion for Order Authorizing the Debtor to Obtain Post-Petition Financing (and other relief) (the "DIP Motion"). As grounds for this objection the State says that the Debtor should not be authorized to incur additional debt without meeting its environmental compliance obligations with respect to bulk petroleum product storage and distribution facilities required by law and a binding state court injunction. In support hereof, the State respectfully represents as follows:

1. The State brought an action for civil penalties, and preliminary and permanent injunctive relief under the authority of RSA chapter 146-A against the Debtor and Harold P. Munce, for violations of New Hampshire's oil discharge or spillage laws on July 19, 2010. Specifically, the Debtor and Munce are alleged to have violated the New Hampshire Oil Discharge or Spillage in Surface Water or Groundwater Act, RSA chapter 146-A (the "Oil Spillage Act") and New Hampshire's groundwater protection laws, RSA c. 485 and 485-C, and rules adopted under those

chapters, by causing or suffering the discharge of oil from their facilities and by failing to comply with law.

2. On August 23, 2010, a hearing was held in the Coos County Superior Court. At the hearing the parties presented an agreed upon Order for a Preliminary Injunction that the Superior Court entered. A copy of that order is submitted herewith as Exhibit "A".

3. Under the Preliminary Injunction, the Debtor and Munce were required to remove from service above ground oil storage tanks at 615 Main Street, Gorham (Facility 1) within 30 days or provide secondary containment for that facility. The secondary containment was required to be "certified by a professional engineer." The Facility 1 tanks have not been removed from service, and the Debtor and Munce have asserted that the tanks have secondary containment, but to date have not provided the certification from a professional engineer to the NHDES. In addition, under the Preliminary Injunction ¶ (D), the Debtor and Munce were required to submit a plan to the State to avoid stormwater contamination from two loading rack areas, and either close the tanks or implement the plan. The plan approved by the State required closing the 8 lube-oil tanks and constructing the secondary containment for the outdoor tanks. The Debtor has alleged that the lube-oil tanks have been taken out of service and secondary containments done but his engineering reports were to the contrary. A question of whether the containment was adequate in light of the fact that the tanks had been previously manifolded together arose at the contempt hearing. The State was not able to conclude that the secondary containments and the

prevention of stormwater contamination required by the Preliminary Injunction for Facility 1are satisfactory and safe.

4. Under the Preliminary Injunction, the Debtor and Munce were required to remove from service an above ground oil storage tank at 443 Main Street, Gorham (Facility 3) within 60 days or provide secondary containment for that facility. The secondary containment was required by the Preliminary Injunction to include double walled piping and containment sumps monitored for leaks. The secondary containment was required to be "certified by a professional engineer." The containment sumps and double walled piping have not been installed and the Debtor's engineer recommended substantial changes to the facility once the winter weather cleared and that in the meantime the tank had been taken out of service.

5. The Preliminary Injunction also required the Debtor and Munce to take out of service a number of intermediate bulk storage containers, totes, drums, and other containers from 620 Main Street, Gorham (Facility 2) or provide secondary containment for those remaining.

6. On January 5, 2011, the State filed a Motion for Order of Contempt with the Coos County Superior Court and served an order of notice upon the Debtor and Munce on January 11, 2011.

7. On March 7, 2011, a hearing was held on the State's Contempt Motion at the Grafton County Superior Court to address the issues of non-compliance with the Preliminary Injunction. At the close of the hearing the Superior Court, Vaughn, J., took the matter under advisement. Before a ruling could be made, however, the

Debtor filed its Chapter 11 proceeding. On March 22, 2011, the Superior Court stayed the proceedings because of the bankruptcy filing.

      8.      The State Court Proceedings against the Debtor are not subject to the automatic stay pursuant to 11 U.S.C. § 362(b)(4). *See, e.g., Penn Terra, Ltd. v. Department of Envtl. Res.*, 733 F.2d 267 (3rd Cir. 1984); *United States v. LTV Steel Co.*, 269 B.R. 576 (W.D. Pa. 2001). The Debtor is required to comply with the State's environmental laws and court orders enforcing them. 28 U.S.C. § 959(b); *Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protect.*, 474 U.S. 494, 501 (1986) (bankruptcy does not provide general exemption from state environmental laws); *Cumberland Farms, Inc. v. Florida Dept. of Envtl. Protection*, 116 F.3d 16 (1st Cir. 1997) ("It is by now abundantly clear that in state-regulated areas such as protection of the environment, a bankruptcy court must comply with the laws of the state involved. Debtors in possession . . . do not have carte blanche to ignore state and local laws protecting the environment against pollution."). The Preliminary Injunction is not a claim subject to discharge. *U.S. v. Apex Oil Co.*, 579 F.3d 734 (7th Cir. 2009), *cert. den*. 131 S. Ct. 67 (2010); *In re Mark IV Indus., Inc.*, 438 B.R. 460 (Bankr. S.D.N.Y. 2010).

      9.      Under the Preliminary Injunction and possibly the order to be issued by the Superior Court on the State's Contempt Motion, the Debtor will be required to spend additional amounts of money, as determined by the Superior Court and the Preliminary Injunction, to bring the Gorham above ground storage tank facilities into compliance. Such expenditures would constitute administrative claims of the estate. *See, e.g., In re H.L.S. Energy Co.*, 151 F.3d 434 (5th Cir. 1998) (environmental costs

administrative expenses even if trustee never operated facility for estate's benefit); *Pennsylvania Dept. of Envtl. Res. v. Conroy*, 24 F.3d 568 (3d Cir. 1994) (state's costs cleaning up post-petition pollution properly administrative expense claims); *Alabama Surface Mining Comm. v. N.P. Mining Co. (In re N.P Mining Co.)*, 963 F.2d 1449 (11th Cir. 1992); *accord Juniper Devel. Group v. Kahn (In re Hemingway Transport, Inc.)*, 993 F.2d 915 (1st Cir. 1993) (purchaser from estate has administrative claim for cleanup costs).

10. While the Debtor may assert that it has achieved "substantial" compliance, that matter was argued to the Superior Court on March 7, 2011, and the parties are awaiting a ruling from that Court addressing the Debtor's contention. The factual matters should be addressed to the Superior Court in the State Court Proceedings, not reargued here.

11. The DIP Motion, however, does not make any provision for environmental issues associated with the Debtor's facility whether routine compliance issues or those involved in the Superior Court proceedings.

12. Under the terms of the Order that the Debtor seeks, no funds other than those provided in the budget may be spent by the Debtor. The budget does not provide any funds for complying with the preliminary injunction. As a result, the Debtor is seeking this Court's authorization to operate its business out of compliance with law and the Superior Court's injunction, a request the Court should not abide. *See Cumberland Farms*, 116 F.3d 16; *In re Stevens*, 68 B.R. 774, 783 (D. Me. 1987)(Cyr, J.) (bankruptcy's priorities give way to environmental laws designed to protect public health and safety).

5

13. The Court should not grant the DIP Motion unless it contains adequate funding for the Debtor to meet its obligations under the Preliminary Injunction and the contempt order that may be forthcoming.

Wherefore, the State prays that this Court enter an order denying the DIP Motion, or alternatively, only grant it upon the condition that the Debtor provide sufficient budgeting for its environmental compliance obligations, and grant such other and further relief as may be just.

Respectfully submitted,

STATE OF NEW HAMPSHIRE
DEPARTMENT OF
ENVIRONMENTAL SERVICES

By its attorneys,

MICHAEL A. DELANEY
ATTORNEY GENERAL

Date: April 1, 2011

/s/ Peter C.L. Roth
Peter C.L. Roth
Senior Assistant Attorney General
Environmental Protection Bureau
33 Capitol Street
Concord, New Hampshire 03301-6397
(603) 271-3679

Certificate of Service

I, Peter C.L. Roth, do hereby certify that the foregoing was served on April 1, 2011, by the court's ECF system upon those parties requesting ECF service.

Dated: April 1, 2011

/s/ Peter C.L. Roth
Peter C.L. Roth