# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:

| | |
|---|---|
| Munce's Superior Petroleum Products, Inc., | Bk. No. 11-10975-JMD |
| Gorham Oil, Inc., | Bk. No. 11-10977-JMD |
| Superior Trucking, Inc., | Bk. No. 11-10978-JMD |
| Munce's Real Estate Ventures, LLC,   and | Bk. No. 11-10979-JMD |
| BMRA Real Estate Ventures, LLC, | Bk. No. 11-10980-JMD |
| Debtors. | Jointly Administered. |

### FINAL ORDER: (A) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING; (B) GRANTING TO NORTHWAY BANK POST-PETITION SECURITY INTERESTS; (C) AUTHORIZING THE USE OF CASH COLLATERAL; (D) GRANTING ADEQUATE PROTECTION IN THE FORM OF REPLACEMENT LIENS; AND (E) SETTING A FINAL HEARING

Upon the March 16, 2011 Motion For Order: (A) Authorizing the Debtor to Obtain Post-Petition Financing; (B) Granting to Northway Bank Post-Petition Security Interests; (C) Authorizing the Use of Cash Collateral; (D) Granting Adequate Protection in the Form of Replacement Liens; and (E) Setting A Final Hearing (the "Motion"), pursuant to sections 105(a), 363, 364 and 552 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rules 2002 and 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the District of New Hampshire (the "Local Rules"), filed by Munce's Superior Petroleum Products, Inc. ("MSPP"), Gorham Oil, Inc. ("Gorham Oil"), Superior Trucking, Inc. ("Superior Trucking"), Munce's Real Estate Ventures, LLC ("MREV") and BMRA Real Estate Ventures, LLC ("BMRA") (collectively, the "Debtors") requesting, *inter alia*, entry of an order:

(i) Authorizing the Debtors, pursuant to section 364(c)(2) and (3) of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014, to obtain post-petition loans, advances and other financial accommodations on a final basis from Northway Bank ("Northway"), in accordance with the budget attached hereto as **Exhibit A** (the "Budget") and other terms and conditions set forth in the loan documents (collectively, the "Loan Documents") to be executed in connection with the Interim Order and the Commitment Letter attached to the

Motion as Exhibit A, as amended by this Final Order, and secured by security interests in

all of the Debtors' assets pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code;

(ii) authorizing the use of Cash Collateral (as hereinafter defined); and

(iii) granting Northway and Passumpsic Savings Bank ("Passumpsic") replacement liens.

Upon such notice as the Court determined to be appropriate in the circumstances, and upon

record of hearing held on April 8, 2011 (the "Hearing"), and Northway and Passumpsic having

consented to the relief set forth in this Final Order, and this Court having considered the Motion and

the exhibits attached thereto, as well as the sworn declaration of Harold Munce, and good and

sufficient cause appearing therefor,

**THE COURT HEREBY FINDS:** [1]

A.    On March 16, 2011 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of

the Bankruptcy Code, the Debtors have retained possession of their property and are authorized

thereby, as debtors-in-possession, to continue to operate and manage their businesses. No request

has been made for appointment of a trustee or examiner.

B.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.

This is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicates

for relief sought herein are sections 105, 363, 364 and 552 of the Bankruptcy Code, Bankruptcy

Rules 2002, 4001 and 9014, and Local Rules 2002-1 and 4001-2. Venue of the Debtors' chapter 11

cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    MSPP is a family-owned and operated business that has served northern New

England for more than forty years. The company began as a garage, gas station and fuel company,

and has grown steadily over the years. As of the Petition Date, MSPP operated eight convenience

---

[1] The Court makes these findings of fact and conclusions of law applicable to the financing sought by the Debtors from Northway (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and vice versa) pursuant to Bankruptcy Rule 7052.

stores and truck stops located throughout New Hampshire on property it leases from real estate holding companies BMRA and MREV and, in some instances, from Harold Munce and his wife, Marilyn Munce.

D.     MSPP also delivers heating oil and propane to residential and commercial customers, and supplies various lubricant products to service garages, car dealerships and municipalities all over northern New England, from Bangor, Maine, to Burlington, Vermont, and almost as far south as Boston, Massachusetts. To deliver these products, MSPP leases box trucks and tanker trucks from Superior Trucking, which is primarily a holding company in the business of purchasing, maintaining and leasing a fleet of trucks.

E.     In addition, MSPP operates a 24-hour burner maintenance and repair service, and distributes fuel to some wholesale customers. Finally, MSPP operates a campground located on property adjacent to one of its convenience stores in Lancaster, New Hampshire. The campground consists of approximately ninety camping spaces.

F.     Gorham Oil operates two additional convenience stores and also makes some home heating oil deliveries.

G.     An immediate and ongoing need exists for the Debtors to obtain financing in order to preserve the value of their businesses and assets as debtors-in-possession under chapter 11 of the Bankruptcy Code. Despite a diligent search for financing by the Debtors and their advisors, the Debtors are unable to obtain financing on terms more favorable than the terms offered by Northway and as set forth in detail in the Motion.

H.     The Budget prepared by the debtors and attached to this order as **Exhibit A** sets forth, *inter alia*, the Debtors' projected cash expenditures on a weekly basis for the period beginning on April 2, 2011, and ending on ~~June~~ July 30, 2011. The Budget was prepared by the Debtors and their management and is being relied upon by Northway in providing (or extending) post-petition financing to the Debtors.

3

I.     The Debtors have requested that Northway extend credit to be used for the purposes set forth in the Budget, and Northway is willing to provide such credit upon the terms and conditions set forth in the Loan Documents, as ratified and amended by the terms of this Final Order. Northway's willingness to extend post-petition credit to the Debtors is conditioned upon, among other things, the Debtors obtaining authority from this Court to grant Northway liens on all of the Debtors' assets, all such liens being junior to any prior existing encumbrances.

J.     Based on the record before the Court, which establishes that Northway is not affiliated with the Debtors and that the loans have been negotiated at arm's length with both sides being fully informed, all loans and other extensions of credit made by Northway to the Debtors pursuant to this Final Order and any extension hereof, shall be deemed to have been made in good faith within the meaning of section 364(e) of the Bankruptcy Code.

K.     The Debtors represent, and it appears, that the post-petition financing and security arrangements authorized hereunder have been negotiated in good faith and at arm's length, and that the terms of such financing and security arrangements are fair and reasonable under the circumstances and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

L.     The permission granted in this Final Order to enter into the post-petition financing and adequate protection arrangements set forth herein is vital to avoid irreparable harm to the Debtors and their estates, and to provide the Debtors with a reasonable opportunity to reorganize or to sell their assets at going concern value.

M.     This Court concludes that entry of this Final Order is in the best interests of the Debtors, their estates and their creditors as implementation will, among other things, allow for the preservation of the going concern value of the assets of the Debtors' estates.

N.     The Debtors have certified that a copy of the Motion, the Interim Order issued on March 17, 2011, and notice of the final hearing scheduled for April 8, 2011 have been served on the

United States Trustee, Northway, the Debtors' other secured creditors, the Debtors' twenty largest unsecured creditors, and all taxing authorities in accordance with the provisions of the Interim Order.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.      The Motion is granted upon the terms and conditions provided in this Order.

2.      The Debtor is hereby authorized and directed to obtain, on a final basis, a post-petition loan with Northway in accordance with the terms of the Commitment Letter, Loan Documents, the Interim Order and this Final Order.  The Loan Documents, as amended by this Final Order, are incorporated into this Final Order by reference and are attached hereto as **Exhibit B**.

3.      To the extent required, the Debtors are authorized and directed to: (a) execute and deliver to Northway loan documents reflecting the terms set forth in the Commitment Letter attached to the Motion as Exhibit A; (b) obtain a post-petition credit facility (the "DIP Loan") from Northway pursuant to the terms set forth in the Commitment Letter; and (c) pay and perform all obligations, covenants and agreements in accordance with the terms of the Commitment Letter.

4.      Northway is hereby granted relief from the automatic stay provided in section 362 of the Bankruptcy Code only to implement the terms of this Final Order, including, without limitation, to record mortgages and to otherwise perfect the liens and security interests granted to Northway.

5.      Northway shall not have any obligation or responsibility to monitor the Debtors' use of the DIP Loan, and Northway may rely on any of the Debtors' representations that the amount of the DIP Loan requested at any time, and the use thereof, is in accordance with this Interim Order.

6.      The DIP Loan made by Northway under this Final Order shall be, and hereby is, secured by valid, binding and enforceable mortgages, security interests in and liens upon all of the Debtors' assets, as they existed as of the Petition Date, which security interests, mortgages and liens shall be junior to all other liens, security interests and claims (the "Collateral").

7.      The Debtors are authorized to use inventory and accounts receivable, as they existed on the Petition Date, and in which Northway and Passumpsic have pre-petition security interests, and

the proceeds thereof, including, without limitation, cash (the "Cash Collateral"), for the purposes, and to make the payments, shown in the Budget attached hereto as **Exhibit A**.  As adequate protection for any diminution in value arising out of the Debtors' use of the Cash Collateral, Northway and Passumpsic are hereby granted replacement liens in the Cash Collateral and the proceeds thereof, to the same nature and extent as the pre-petition liens held by the Lenders in the Debtors' inventory and accounts receivable, to the extent the Cash Collateral is used by the Debtors. In addition to the foregoing adequate protection, the Debtors shall pay to Northway and Passumpsic the amounts shown in the attached Budget.

8.      The Debtors are authorized to use the Cash Collateral and the proceeds of the DIP Loan solely for payment of costs and expenses in accordance with the Budget.

9.      The Debtors are specifically authorized to use Cash Collateral and DIP Loan proceeds to purchase products, goods, and/or inventory from vendors, including, without limitation, Irving Oil Terminals Inc., in the ordinary course, with any purchases of any products, goods, and/or inventory made from the Petition Date forward retroactively authorized, to the extent necessary.

10.      The Debtors shall concurrently herewith or thereafter, as requested by Northway, execute and deliver to Northway all such documents as Northway may request to effectuate, evidence, confirm, validate or perfect Northway's liens on and security interests in the Collateral as provided for herein or granted pursuant to this Final Order.  Such documents may include, without limitation, UCC-1 financing statements, mortgages, continuation statements, amendments, etc. Northway shall not be required to file any mortgages, UCC-1 financing statements, or any other document, or take any other action (including possession of any collateral) in order to validate or perfect the liens and security interests granted to Northway under this Final Order, as all such liens and security interests shall be deemed automatically granted and perfected by, and upon entry of, this Final Order.  If Northway shall choose, in its discretion, to file such mortgages, UCC-1 financing statements (or amendments to or continuations of any existing financing statements) and otherwise

confirm perfection of such liens and security interests, all mortgages, financing statements or similar instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Final Order. Northway may, in its discretion, file a certified copy of this Final Order and any subsequent financing order in any filing or recording office in any appropriate jurisdiction, including, without limitation, any jurisdiction in which the Debtors have or maintain any Collateral or any office.

11.   Notwithstanding anything to the contrary in the Loan Documents, or in any document executed pursuant to the Loan Documents or this Final Order:

(a)   Local Rule 9071-1(a) shall govern the procedure to be followed by Northway in the event of a default under the Loan Documents or this Final Order;

(b)   "Default" as used in the Loan Documents or this Final Order shall refer to a new default by the Debtors that occurs after the date of the entry of this Final Order (and shall specifically exclude any continuing pre-petition default);

(c)   Northway, by its agreement, shall not have a lien on any avoidance actions arising under sections 544, 547, 548, 549, 550 or 553 of the Bankruptcy Code;

(d)   As to Northway's claims for attorneys' fees or other fees, costs or charges, within the meaning of section 506(b), Northway shall file and serve on the Debtors and the United States Trustee a written statement of such charges as it intends to pay from the proceeds of the loan or cash collateral; in the event that no objection to such fees, costs and charges is filed and served on Northway within ten (10) days of the service of such notice, such fees, costs and/or charges may be paid and/or charge to the loan balance and any future challenge to such fees, costs and charges shall be forever barred;

(e)   In the event of the appointment of either (i) a creditors committee; (ii) a chapter 11 trustee; or (iii) a chapter 7 trustee, the first of such entities or individuals to be

appointed shall have a period of sixty (60) days to bring an action challenging the prepetition claims of Northway, or characterization thereof, or the validity, extent, perfection or priority of any lien securing or purporting to secure such prepetition claims, and in the event no such action is timely filed, any such action, from any person or party, shall be forever barred. Nothing herein shall affect any post-petition loan or advance, or any security therefore, which such loans and advances, and security, shall be fully vested and protected from challenge by the terms of this Final Order;

(f) The prepetition claim of Northway shall not be secured by the liens granted to Northway to secure the new post-petition loans provided pursuant to the Loan Documents, provided, however, that the first priority security interest granted to Northway in post-petition inventory and the proceeds thereof shall also secure the prepetition claims of Northway;

(g) Each of the representations or warranties, or covenants, provided by the Debtors to Northway, including in Articles III and IV of the loan agreement, shall be expressly conditioned with the term "Except as otherwise disclosed to Northway Bank as of the date of this agreement…".

(h) Whenever the Loan Documents or this Final Order permit an action to be done with the bank's consent, such consent shall not be unreasonably withheld by Northway, and, further no provision of the Loan Documents shall require the Debtors to breach their respective fiduciary duties as debtors-in-possession; to the extent that the Debtors contend, in good faith, that compliance with any term or condition of the Loan Documents would require the Debtors to breach their fiduciary duties as debtors-in-possession and so notify Northway in writing, such default shall not result in enforceable remedies by Northway until the Court, upon

an expedited hearing, has determined whether or not such fiduciary duty would be breached and whether or not, therefore, such default is or is not enforceable;

(i) In section 8.4 of the loan agreement attached hereto (and in any Loan Document containing a like or similar provision), the waiver shall apply to all claims ~~of~~ except gross negligence or willful misconduct of the Bank, its agents, and employees, in which case the waiver will not apply; and

(j) To the extent that Northway declares an enforceable default under the Loan Documents, otherwise complies with this Final Order, and is as a result thereof entitled to cease lending under the Loan Documents, and elects, as a result thereof, to cease lending, Northway shall nonetheless make additional loans and advances to the Debtors sufficient to cover any amounts accrued for payroll and payroll-related expenses, including, without limitation, any withholdings or payroll-related taxes accrued, as of the date that Northway notifies the Debtors of its decision to cease lending, and any reasonable period thereafter (not to exceed one week) as is reasonably required to cease operations and to protect the assets of the estates; the Debtors shall use such additional loans or advances solely to pay such payroll and payroll-related expenses.

12.     To the extent the terms and conditions of this Final Order are in direct conflict with the Commitment Letter or the Loan Documents to be executed in connection with the Commitment Letter, the terms and conditions of this Final Order shall control.

13.     The provisions of this Final Order shall be effective immediately upon entry by the Court of this Final Order pursuant to Bankruptcy Rules 6004(h) and 7062, and any actions taken or rights obtained pursuant to this Final Order shall survive entry of, and shall govern with respect to, any conflict with any order and shall supersede any such later order which may enter modifying the

Final Order, confirming any plan(s) of reorganization, dismissing any or all of the Debtors'

bankruptcy cases, or converting one or more of those cases from chapter 11 to chapter 7.  Any

advances made pursuant to this Final Financing Order shall be governed by the terms and conditions

of the Final Financing Order, irrespective of any modifications or changes in any further order.  The

duties, obligations and benefits of this Final Order shall be binding on any subsequently appointed

trustee or creditors committee, irrespective of conversion, except to the extent that this Final Order

expressly preserves the rights of any such trustee or committee.

14.     The term of the DIP Loan made pursuant to this Final Order shall be for a period

commencing on the date hereof and ending on July 30, 2011, unless otherwise ordered by this Court.

The Debtors shall serve, on or before July 14, notice of a hearing to be held on July 28, 2011 with

respect to extending the Debtors' authority to borrow and use cash collateral in accordance with the

Loan Documents and this Final Order,  and providing for objections to be filed and served no later

than 5:00 p.m. prevailing Eastern Time on July 21, 2011.  In the event of a timely-filed objection, the

Court will hold a hearing at 9:00 a.m. on July 28, 2011 at the United States Bankruptcy Court, 1000

Elm Street, Suite 1001, Manchester, NH; if no objection is timely-filed, the Court may enter the

relief sought without a hearing.

Dated:  April 14, 2011

/s/   J. Michael Deasy
_____
Honorable J. Michael Deasy
UNITED STATES BANKRUPTCY JUDGE

**Munces Superior Petroleum Products and Affiliates**
**Cash Projection**
**April 9, 2011 to July 30, 2011**



EXHIBIT
A

| Week Ending | Proj 4/9/2011 | Proj 4/16/2011 | Proj 4/23/2011 | Proj 4/30/2011 | Proj 5/7/2011 | Proj 5/14/2011 | Proj 5/21/2011 | Proj 5/28/2011 | Proj 6/4/2011 | Proj 6/11/2011 | Proj 6/18/2011 | Proj 6/25/2011 | Proj 7/2/2011 | Proj 7/9/2011 | Proj 7/16/2011 | Proj 7/23/2011 | Proj 7/30/2011 | Proj Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Receipts-Misc | 11,000 | 11,000 | 11,000 | 12,000 | 12,000 | 9,000 | 6,083 | 6,083 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 168,167 |
| Prepayments For #2 Fuel | (8,000) | (8,000) | (4,000) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (20,000) |
| Heating #2 | 192,500 | 192,500 | 192,500 | 192,500 | 192,500 | 144,000 | 144,000 | 144,000 | 96,000 | 96,000 | 96,000 | 96,000 | 96,000 | 48,000 | 48,000 | 48,000 | 48,000 | 2,066,500 |
| Propane | 79,380 | 79,380 | 79,380 | 79,380 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 1,019,520 |
| Kerosene | 3,938 | 3,938 | 3,938 | 3,938 | 3,938 | 3,938 | 3,938 | 3,938 | | | | | | | | | | 31,503 |
| Western Union | 13,837 | 13,837 | 13,837 | 13,837 | 14,039 | 14,039 | 14,039 | 14,039 | 14,039 | 14,039 | 14,039 | 14,039 | 14,039 | 14,039 | 14,039 | 14,039 | 14,039 | 237,855 |
| Inside Store | 136,200 | 136,200 | 136,200 | 136,200 | 157,200 | 157,200 | 157,200 | 157,200 | 165,000 | 165,000 | 165,000 | 165,000 | 170,000 | 180,000 | 180,000 | 180,000 | 180,000 | 2,723,600 |
| Fuel Sales | 162,500 | 162,500 | 162,500 | 162,500 | 195,000 | 195,000 | 195,000 | 195,000 | 260,000 | 260,000 | 260,000 | 260,000 | 260,000 | 286,000 | 273,000 | 273,000 | 273,000 | 3,835,000 |
| Evans Group | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 25,500 |
| Change in AR | 50,000 | 25,000 | 21,805 | 21,805 | 39,138 | 39,138 | 39,138 | 39,138 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 653,164 |
| Total Cash Receipts | 642,855 | 617,855 | 618,660 | 623,660 | 669,315 | 617,815 | 614,898 | 614,898 | 642,539 | 642,539 | 642,539 | 642,539 | 647,539 | 635,539 | 622,539 | 622,539 | 622,539 | 10,740,808 |
| **Disbursements** | | | | | | | | | | | | | | | | | | |
| Amoskeag Beverages Inc. | 6,500 | 7,500 | 6,500 | 6,500 | 6,500 | 7,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 7,500 | 7,500 | 7,500 | 116,500 |
| Bank Fees - Wires | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 8,500 |
| Irving Oil Fuel Purchase | 120,313 | 120,313 | 120,313 | 120,313 | 120,313 | 90,000 | 90,000 | 90,000 | 60,000 | 60,000 | 60,000 | 60,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 1,291,563 |
| Fuel Purchases - Gas | 155,000 | 125,000 | 125,000 | 125,000 | 150,000 | 150,000 | 150,000 | 150,000 | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 220,000 | 210,000 | 210,000 | 210,000 | 2,980,000 |
| Propane Purchases Osterman | 44,100 | 44,100 | 44,100 | 44,100 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 566,400 |
| Fuel Purchases - Vehicles | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 102,000 |
| Insurance | 10,380 | 13,962 | - | - | - | 23,962 | - | - | - | 23,962 | - | - | - | 23,962 | - | - | - | 96,228 |
| Lakes Region Coca-Cola | 9,725 | 4,000 | 3,000 | 3,515 | 4,225 | 6,000 | 7,200 | 2,815 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 4,000 | 4,000 | 4,000 | 4,000 | 71,480 |
| Lottery | 14,506 | 14,506 | 14,506 | 14,506 | 17,038 | 17,038 | 17,038 | 17,038 | 17,038 | 17,038 | 17,038 | 17,038 | 17,038 | 17,038 | 17,038 | 17,038 | 17,038 | 279,517 |
| Miscellaneous Expense | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 850,000 |
| NH Business Taxes | - | - | - | - | - | - | - | 30,000 | - | - | - | - | - | - | - | - | - | 30,000 |
| NH Distributors | 10,300 | 9,000 | 10,300 | 9,000 | 11,300 | 9,500 | 11,300 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 10,000 | 10,000 | 10,000 | 10,000 | 167,700 |
| NH Fish and Game | 5,000 | - | - | - | - | 5,000 | - | - | - | - | - | 5,000 | - | - | 5,000 | - | - | 20,000 |
| NH Motor Transport Assn | - | - | - | - | 8,000 | - | - | - | 8,000 | - | - | - | 8,000 | - | - | - | - | 24,000 |
| Other | 92,000 | 77,336 | 89,054 | 81,646 | 73,361 | 75,416 | 87,472 | 82,898 | 76,398 | 79,986 | 78,000 | 83,598 | 77,898 | 80,000 | 80,000 | 80,000 | 80,000 | 1,375,061 |
| Payroll and Payroll Taxes | 53,689 | 55,689 | 55,689 | 55,689 | 55,689 | 55,689 | 55,689 | 55,689 | 55,689 | 55,689 | 55,689 | 55,689 | 55,689 | 55,689 | 55,689 | 55,689 | 55,689 | 944,711 |
| Pine State | 45,000 | 45,000 | 45,100 | 45,900 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 48,000 | 50,000 | 50,000 | 50,000 | 50,000 | 813,000 |
| Critical Vendor Payments | - | 10,500 | - | - | 10,000 | - | - | - | 10,000 | - | - | - | 10,000 | - | 2,000 | - | - | 50,500 |
| Poultry Products Northeast | - | 1,685 | - | - | - | 1,685 | - | - | - | 1,685 | - | - | - | 2,000 | - | - | - | 7,055 |
| Property Taxes and Expenses | - | - | - | - | 25,000 | - | - | - | 25,000 | - | - | - | 25,000 | - | - | - | - | 75,000 |
| Professional Fees | - | - | - | - | - | - | - | - | - | - | 200,000 | - | - | - | - | - | - | 200,000 |
| Northway Pmts | - | - | - | - | 18,447 | - | - | - | 18,447 | - | - | - | 18,447 | - | - | - | 18,447 | 73,789 |
| Passumpic Pmts | - | - | - | - | 15,519 | - | - | - | 15,519 | - | - | - | 15,519 | - | - | - | 15,519 | 62,075 |
| Sysco of Northern NE | 5,450 | 6,100 | 5,450 | 6,100 | 5,850 | 6,500 | 5,850 | 6,500 | 6,100 | 6,100 | 6,100 | 6,100 | 6,100 | 7,000 | 7,000 | 7,000 | 7,000 | 106,300 |
| Western Union | 13,560 | 13,560 | 13,560 | 13,560 | 13,758 | 13,758 | 13,758 | 13,758 | 13,758 | 13,758 | 13,758 | 13,758 | 13,758 | 13,758 | 13,758 | 13,758 | 13,758 | 233,098 |
| Windward Petroleum | 16,000 | - | - | - | 16,000 | - | - | 16,000 | - | - | 16,000 | - | - | 16,000 | - | - | 16,000 | 128,000 |
| Total Disbursements | 658,023 | 604,751 | 589,072 | 598,329 | 669,499 | 596,547 | 595,306 | 599,197 | 675,449 | 611,718 | 805,085 | 589,683 | 676,949 | 607,447 | 592,485 | 571,485 | 631,451 | 10,672,477 |
| Change in Cash | (15,168) | 13,104 | 29,588 | 25,331 | (184) | 21,268 | 19,592 | 15,701 | (32,910) | 30,821 | (162,546) | 52,856 | (29,410) | 28,092 | 30,054 | 51,054 | (8,912) | 68,331 |
| Beginning Cash | 22,310 | 7,142 | 20,246 | 49,834 | 25,166 | 24,982 | 21,250 | 15,842 | 31,543 | 23,633 | 54,454 | 16,907 | 44,764 | 15,353 | 18,445 | 23,499 | 24,553 | 22,310 |
| Draw (Pay Down) on DIP Loan | - | - | - | (50,000) | - | (25,000) | (25,000) | - | 25,000 | - | 125,000 | (25,000) | - | (25,000) | (25,000) | (50,000) | - | (75,000) |
| Cash at the End | 7,142 | 20,246 | 49,834 | 25,166 | 24,982 | 21,250 | 15,842 | 31,543 | 23,633 | 54,454 | 16,907 | 44,764 | 15,353 | 18,445 | 23,499 | 24,553 | 15,641 | 15,641 |
| DIP Balance | 150,000 | 150,000 | 150,000 | 100,000 | 100,000 | 75,000 | 50,000 | 50,000 | 75,000 | 75,000 | 200,000 | 175,000 | 175,000 | 150,000 | 125,000 | 75,000 | 75,000 | |

\* The "misc category" includes costs related to environmental compliance



## DEBTOR IN POSSESSION LOAN AGREEMENT

This DEBTOR IN POSSESSION LOAN AGREEMENT (the "Agreement") is dated as of this __ day of _____, 2011 and made effective as of March 18, 2011, by and among MUNCE'S SUPERIOR PETROLEUM PRODUCTS, INC., a New Hampshire corporation with a principal place of business at 453 Alpine Street, Berlin, New Hampshire 03570 ("Munce"), BMRA REAL ESTATE VENTURES, LLC, a New Hampshire liability company with a principal place of business at 453 Alpine Street, Berlin, New Hampshire 03570 ("BMRA"), GORHAM OIL, INC., a New Hampshire corporation with a principal place of business at 443 Main Street, Gorham, New Hampshire 03581 ("Gorham"), SUPERIOR TRUCKING, INC., a New Hampshire corporation with a principal place of business at 620 Main Street, Gorham, New Hampshire 03581 ("Superior Trucking"), MUNCE'S REAL ESTATE VENTURES, LLC, a New Hampshire liability company with a principal place of business at 453 Alpine Street, Berlin, New Hampshire 03570 ("Munce RE"), HAROLD P. MUNCE, an individual with a principal address of 453 Alpine Street, Berlin, New Hampshire 03570 ("Harold Munce"), and MARILYN J. MUNCE, an individual with a principal address of 453 Alpine Street, Berlin, New Hampshire 03570 ("Marilyn Munce") (Munce, BMRA, Gorham, Superior Trucking, Munce RE, Harold Munce and Marilyn Munce are on occasion referred to individually as a "Borrower" and collectively as the "Borrowers") and NORTHWAY BANK, a bank incorporated under the laws of the State of New Hampshire with a principal place of business at 9 Main Street, Berlin, New Hampshire 03570 (the "Bank").

W I T N E S S E T H :

WHEREAS, Munce, BMRA, Gorham, Superior Trucking and Munce RE are debtors-in-possession under Chapter 11 of the Bankruptcy Code in cases docketed as In Re: Munce's Superior Petroleum Products, Docket No. 11-10975-JMD (Jointly Administered) ("Chapter 11 Cases") pending in the United States Bankruptcy Court for the District of New Hampshire (the "Court");

WHEREAS, the Borrowers have requested that the Bank extend financing on a secured basis to the Borrowers in connection with the Chapter 11 Cases in accordance with the provisions of this Agreement; and

WHEREAS, the Bank is willing to make a revolving line of credit loan to the Borrowers, subject to the terms and conditions of this Agreement and subject to the terms and conditions set forth in the Interim Financing Order dated March 17, 2011, and any Final Financing Order entered by the Court (collectively, the "Financing Orders").

NOW, THEREFORE, in consideration of the foregoing, the receipt and adequacy of which is hereby acknowledged, and the mutual covenants and agreements herein contained, the parties covenant, stipulate and agree as follows:

**ARTICLE I.  DESCRIPTION OF LOAN.**  Subject to and upon the following terms and conditions, the Bank agrees to make a certain revolving line of credit loan up to the maximum

principal amount of Three Hundred Thousand Dollars ($300,000) to the Borrowers (the "RLOC Loan" or the "Loan").

**ARTICLE II.  LOAN TERMS.**  The Bank agrees to make, and the Borrowers agree to take, the RLOC Loan subject to and upon the following terms and conditions:

2.1     Borrowers.     The Borrowers under the RLOC Loan shall be MUNCE'S SUPERIOR PETROLEUM PRODUCTS, INC., BMRA REAL ESTATE VENTURES, LLC, GORHAM OIL, INC., SUPERIOR TRUCKING, INC., MUNCE'S REAL ESTATE VENTURES, LLC, HAROLD P. MUNCE and MARILYN J. MUNCE and the Borrowers shall sign a promissory note (the "Note") evidencing their joint and several obligation to pay and perform the RLOC Loan.

2.2     Amount.  The principal amount to be advanced to the Borrowers under the RLOC Loan shall be up to Three Hundred Thousand Dollars ($300,000). All advances shall be made in accordance with the Budget (as hereinafter defined).

2.3     Use of Proceeds.  The proceeds of the RLOC Loan shall be used by the Borrowers for working capital needs for the Borrowers' commercial and business operations during the pendency of the Chapter 11 Cases.

2.4     Interest Rate.  The RLOC Loan shall bear interest at the fixed per annum rate equal to six percent (6.00%).  All computations of interest shall be made on the basis of a three hundred sixty (360) day year and the actual number of days elapsed.

2.5     Repayment.  Commencing April 18, 2011, through and until March 18, 2012 (the "Maturity Date"), advances under the RLOC Loan shall be repaid by the Borrower on a monthly basis at interest only.  The entire principal balance of the Loan, together with all interest and other charges accrued hereunder shall be due and indefeasibly payable in full upon the Maturity Date.

2.6     Security.  The Borrowers' payment and performance of the RLOC Loan shall be secured with the following:

(a)     Mortgage deed and security agreements from each Borrower (collectively, the "Mortgages") on such Borrower's fee interest in the real estate and the improvements now or hereafter constructed thereon on all real estate is more particularly described in Schedule 2.6(a) attached hereto (collectively the "Real Estate");

(b)     A collateral assignment of all leases, rents and revenues relating to the Real Estate (the "Collateral Assignment");

(c)     A perfected security interest in all of the Borrowers' tangible and intangible business assets; including a first priority perfected security interest and lien upon the Borrowers' vehicles identified on Schedule 2.6(d) hereto, pursuant to a security agreement of even or near date herewith (the "Security Agreement"); and

(d)     A collateral assignment of that certain Mortgage Deed by Sovereignty Family Investments LLC in favor of Munce's Superior Petroleum Products, Inc., recorded at the Stafford County Registry of Deeds at Book 3396, Page 19.

In addition to the items of property referred to in this Section 2.6, the Loan shall also be secured by all of the other items of property from time to time described in the Financing Orders. Promptly after the Bank's request therefor, the Borrowers shall execute or cause to be executed and delivered to the Bank such instruments, assignments, title certificates or other documents as are necessary under the UCC or other applicable law to perfect (or continue the perfection of) the Bank's lien upon the Collateral (as hereinafter defined), and shall take such other action as may be requested by the Bank to give effect to or carry out the intent and purposes of this Agreement. Collateral subject to the Bank's security interest shall be insulated from statutory charges for its preservation or disposition under Section 506(c) of the Bankruptcy Code. The Bank does not agree in advance to the use of "cash collateral" (as defined in 11 U.S.C. Section 363(a)). The Bank must consent to any proposed cash collateral order, such consent not to be unreasonably withheld.

2.7     Bank Fee.  In connection with the RLOC Loan, the Borrowers agree to pay the Bank a non-refundable fee in the amount of Three Thousand Dollars ($3,000) at Closing.

2.8     Cross Default and Cross Collateralization.  The Borrowers' obligations to the Bank with respect to the Loan shall be and hereby are cross defaulted and cross collateralized with all loans or obligations, now existing or hereafter arising, of any Borrower owed to the Bank, as the same may have been and may be hereafter amended, including, but not limited to the prior loans, and any now existing or hereafter arising foreign exchange contracts, interest rate swap, cap, floor or hedging agreements, and all obligations of the Borrowers or any arising out of or in connection with any ACH agreements related to the processing of any ACH transactions.

**ARTICLE III.   REPRESENTATIONS AND WARRANTIES OF BORROWERS.**  To induce the Bank to enter into this Agreement and to make the Loans, the Borrowers warrant and represent to the Bank that:

3.1     Legal Existence.  Each Borrower is a corporation or limited liability company (as applicable) duly organized and validly existing under the laws of the State of New Hampshire with the power to own its property and to carry on its business as it is now being conducted. In addition, each Borrower is duly qualified to do business and is in good standing in each jurisdiction in which the character of the properties owned by it therein or in which the transaction of its business makes such qualification necessary.

3.2     Authority.  Each Borrower has full power and authority to enter into this Agreement and to borrow hereunder, to execute and deliver this Agreement, and any other documents the purpose of which are to evidence or secure any of the Loans (the foregoing, including, without limitation, this Agreement and all other documents the purpose of which are to evidence or secure the Loans and other financial accommodations being hereinafter sometimes collectively referred to as the "Loan Documents" and the security described therein sometimes

hereinafter collectively referred to as the "Collateral") and to incur the obligations provided for herein and in the Loan Documents, all of which have been duly authorized by all proper and necessary corporate, limited liability company or other action. Any consent or approval of stockholders, members or of any agency or of any public authority or of any other party required as a condition to the legal validity of this Agreement or the Loan Documents has been obtained.

3.3     <u>Binding Agreement</u>.  This Agreement and the Loan Documents constitute the valid and legally binding obligations of the Borrowers enforceable in accordance with their terms; <u>provided</u>, that the enforceability of any provisions in the Loan Documents, or of any rights granted to the Bank pursuant thereto may be subject to and affected by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the rights of creditors generally and that the right of the Bank to specifically enforce any provisions of the Loan Documents is subject to general principles of equity.

3.4     <u>Litigation</u>.  There are no suits pending or, to the knowledge of any Borrower, threatened, against or affecting any Borrower or any Borrower's assets which, if adversely determined, would have a material adverse effect on the condition, financial or otherwise, or business of any Borrower and which have not been disclosed in writing to the Bank.  There are no proceedings by or before any governmental commission, board, bureau or other administrative agency pending, or, to the knowledge of any Borrower, threatened against any Borrower, which, if adversely determined, would have a material adverse effect on the condition, financial or otherwise, or business of any Borrower and which have not been disclosed in writing to the Bank.  Notwithstanding the above, there are certain suits pending or threatened which are listed on <u>Schedule 3.4</u> and which have been disclosed by the Borrowers to Bank ("Disclosed Suits").

3.5     <u>Conflicting Agreements</u>.  There is no charter provision or bylaw of any Borrower, and no provision(s) of any existing mortgage, indenture, contract or agreement binding on any Borrower or affecting any Borrower's property, which would conflict with, be in contravention hereof, have a material adverse effect upon, or in any way prevent the execution, delivery, or performance of the terms of this Agreement or the Loan Documents, except those disclosed in the aforementioned financial statements and liens permitted under this Agreement.

3.6     <u>Financial Condition</u>.  The annual financial statements heretofore delivered to the Bank by the Borrowers have been prepared in accordance with generally accepted accounting principles, consistently applied, are complete and correct, and fairly present the financial condition and results of the Borrowers.  There are no material liabilities, direct or indirect, fixed or contingent, of the Borrowers which are not reflected therein or in the notes thereto which would be required to be disclosed therein and there has been no material adverse change in the financial condition or operations of the Borrowers since the date of such financial statements.  The Borrowers' assets are free of encumbrances of any nature, except those disclosed in the aforementioned financial statements and liens permitted under this Agreement.

3.7     <u>Taxes</u>.  The Borrowers have filed all federal, state and local tax returns required to be filed by the Borrowers and have paid all taxes shown by such returns to be due and payable on or before the due dates thereof.  There are no unpaid taxes in any material amount claimed to

be due by the taxing authority of any jurisdiction and the Borrowers know of no basis for any such claim.

3.8    Licenses, Franchises, Etc.  The Borrowers possess all material permits, approvals, licenses, franchises, patents, trademarks, service marks, trademark and service mark rights, trade names, trade name rights and copyrights necessary to conduct its business substantially as now conducted, and as proposed to be conducted, in each case subject to no mortgage, pledge, lien, lease, encumbrance, charge, security interest, title retention agreement or option which is not permitted by this Agreement to exist, and, without any known conflict with any such rights or assets of others.

3.9    No Purchase of Margin Stock.  No part of the proceeds received by the Borrowers from the Loans will be used directly or indirectly for the purpose of purchasing or carrying, or for payment in full or in part of indebtedness which was incurred for the purposes of purchasing or carrying any margin stock, as such term is used and defined in Regulation U of the Board of Governors of the Federal Reserve System.

3.10    Not a Successor.  No Borrower has, within the six (6) year period immediately preceding the date of this Agreement, changed its name, been the surviving corporation of a merger or consolidation, or acquired all or substantially all of the assets of any person, corporation, partnership or entity.

3.11    Brokerage.  There are no claims against any Borrower for brokerage commissions, finder's fees or similar compensation arising out of or due to any act of any Borrower in connection with the transactions contemplated by this Agreement; and the Borrowers will defend, indemnify and hold the Bank harmless against any liability or expenses arising out of any such claim.

3.12    Employee Benefit Plans.  The Borrowers have not incurred any material accumulated funding deficiency within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), has not incurred any material liability to the Pension Benefit Guaranty Corporation established under ERISA (or any successor thereto) in connection with any profit sharing, group insurance, bonus, deferred compensation, percentage compensation, stock option, severance pay, insurance, pension or retirement plan or other oral or written agreement or commitment relating to employment or fringe benefits or perquisites for employees, officers or directors of any Borrowers (an "Employee Benefit Plan"), and no Employee Benefit Plan which is subject to ERISA had, as of its latest valuation date, accrued benefits (whether or not vested) the present value of which exceeded the value of the assets of such Employee Benefit Plan, based upon actuarial assumptions utilized for such Plan.

3.13    Subsidiaries.  The Borrowers do not have any subsidiaries.

3.14    Ownership and Liens.  The Borrowers have title to, or valid leasehold interests in, all of its properties and assets, real and personal, including the properties and assets and leasehold interest reflected in the financial statements referred to in Section 3.6 (other than any properties or assets disposed of in the ordinary course of business), and none of the properties

and assets owned by the Borrowers and none of their leasehold interests are subject to any lien, except such as may be permitted pursuant to Section 5.6 of this Agreement or as disclosed to the Bank.

3.15    Statutory Compliance.  Each Borrower is in compliance, in all material respects, with all statutes, regulations, ordinances, directives, and orders of every federal, state, municipal or other governmental authority which has or claims jurisdiction over them, any of its assets, or any person in any capacity under which it would be responsible for the conduct of such person and does not use any of its assets in violation of any insurance policy carried by it.

3.16    Full Disclosure.  None of the information with respect to any Borrower which has been prepared and furnished by any Borrower to the Bank in connection with the transactions contemplated hereby is false or misleading with respect to any material fact, or omits to state any material fact necessary in order to make the statements therein not misleading.

**ARTICLE IV.  AFFIRMATIVE COVENANTS OF BORROWERS.**  Until payment in full of the indebtedness now existing or hereafter incurred under this Agreement and the performance of all its obligations hereunder, the Borrowers agree that, unless the Bank shall otherwise consent in writing, the Borrowers shall:

4.1    Prompt Payment.  Pay promptly when due all amounts due and owing to the Bank under this Agreement.

4.2    Use of Proceeds.  Use the proceeds of the Loans only for the purposes set forth herein and will furnish the Bank such evidence as it may reasonably require with respect to such use.

4.3    Financial Statements.  (a) Furnish the Bank prior to execution of this Agreement an operating budget for the succeeding 12-month period (the "Budget"), which shall be updated as set forth in sub-paragraph (c) below.

(b)    As soon as available, and in any event within thirty (30) days after the end of each month during the Borrowers' fiscal year, furnish the Bank with internally prepared monthly (including year to date) financial statements of the Borrowers and its affiliates on a consolidated basis, including, but not limited to, a balance sheet and an income statement.  All such statements shall be prepared in the format approved by the Bank.

(c)    Furnish the Bank, on or before the third (3rd) business day of each week, (i) a report in form acceptable to the Bank setting forth any variances in actual cash receipts and expenditures from those projected in the Budget and (ii) an update to the Budget setting forth changes therein reasonably anticipated by Borrowers (it being understood that no such changes shall become part of the Budget unless approved by the Bank in writing, such approval not to be unreasonably withheld).  The Borrowers shall not be allowed to use any Loan proceeds to make payments not scheduled on the Borrowers' Budget without the prior consent of the Lender, such consent not to be unreasonably withheld.

(d)     As soon as available, and in any event within eighteen (18) days after the end of each month during the Borrowers' fiscal year, furnish the Bank, in form acceptable to Lender, with a detailed aged trial balance of all customer accounts ("Accounts") existing as of the last day of the preceding month, specifying the names, addresses, face value, dates of invoices and due dates for each Account Debtor obligated on an Account so listed ("Schedule of Accounts"), and, upon the Bank's request therefore, copies of proof of delivery and a copy of all documents, including repayment histories and present status reports relating to the Accounts so scheduled and such other matters and information relating to the status of then existing Accounts as the Bank shall reasonably request.

(e)     Prior to the execution of this Agreement, Borrowers shall have delivered updated personal financial statements from Harold Munce and Marilyn Munce detailing all assets and their locations sworn to under oath.

(f)     Promptly deliver to the Bank upon receipt thereof, copies of any reports submitted to any Borrowers by the Borrowers' accountants in connection with any examination of the financial statements of the Borrowers made by such accountants.

(g)     Furnish the Bank with such additional financial information or reports as the Bank may reasonably request.

4.4     <u>Maintenance of Existence</u>.  Take all necessary action to maintain each Borrower's existence, including the filing of required reports and tax returns with the Secretary of State of the State of New Hampshire and with the appropriate authorities in any other state where required.

4.5     <u>Maintenance of Property, Plant, Equipment and Collateral</u>.  Maintain each Borrower's property, plant and equipment, including, without limitation, the Collateral, in good working order, subject only to reasonable wear and tear and make all necessary repairs thereto and replacements therefor so that operations may be properly conducted in accordance with prudent business management.

4.6     <u>Maintenance of Insurance</u>.  During the term of this Agreement, the Loan Documents and any modifications, amendments, extensions, replacements or renewals thereof, the Borrowers will maintain insurance as follows:

(a)     The Borrowers will provide and maintain insurance in full force and effect and will deposit evidence of insurance with the Bank for the following:

(i)     Public liability insurance in such amount and with such coverage as is required by the Bank, including, liability insurance on vehicles owned or operated by any Borrower;

(ii)     Worker's compensation insurance as required by statute; and

(iii)    Fire and broad form extended coverage in an amount reasonably acceptable to the Bank and such other hazard insurance as the Bank may reasonably request including, but not limited to, flood insurance (if required), and business interruption insurance.

(b)    All such insurance:

(i)    Shall be issued in such amounts and by such companies satisfactory to the Bank and authorized to do business in the State of New Hampshire;

(ii)    Shall show the Borrowers and the Bank as insureds, as their interests may appear, or, where appropriate, showing the Bank as an additional named loss-payee and/or named insured; and

(iii)    Shall contain provisions providing for ten (10) days prior written notice to the Bank of any intended cancellation.

(c)    All premiums for insurance policies required hereunder shall be fully paid when due by the Borrowers. The Bank may, at its option, require the Borrowers to pay such sums to the Bank on a monthly basis as would permit the Bank to pay such premiums in full when due out of such funds.

4.7    <u>Inspection by the Bank</u>. Upon prior reasonable notice, permit any person designated by the Bank to inspect any of its properties, including its books, records and accounts (and including the making of copies thereof and extracts therefrom).

4.8    <u>Prompt Payment of Taxes</u>. Accrue the Borrowers' tax liability in accordance with usual accounting practice and pay or discharge (or cause to be paid or discharged) as they become due all taxes, assessments and government charges upon its property, operations, income and products (as well as all claims for labor, materials or supplies), which, if unpaid might become a lien upon any of its property; <u>provided</u>, that the Borrowers shall, prior to payment thereof, have the right to contest such taxes, assessments and charges in good faith by appropriate proceedings so long as the Bank's interests are protected by bond, letter of credit, escrowed funds or other appropriate security or adequate reserves have been established therefor.

4.9    <u>Notification of Default Under This and Other Loan or Financing Arrangements</u>. Promptly notify the Bank in writing of the occurrence of any Event of Default under this Agreement (or any occurrence that would, with the passage of time, constitute an Event of Default) or any other loan or financing arrangement.

4.10    <u>Notification of Litigation</u>. Promptly notify the Bank in writing of any litigation that has been instituted or is pending or threatened involving aggregate amounts of Twenty Thousand Dollars ($20,000) or more or the outcome of which might have a material adverse effect on any Borrowers' continued operations or condition, financial or otherwise.

4.11    Notification of Governmental Action.  Promptly notify the Bank in writing of any material governmental investigation or proceeding that has been instituted or is pending or threatened and the outcome thereof, including without limitation, material matters relating to the federal or state tax returns of any Borrowers, compliance with the Occupational Safety and Health Act, or proceedings by the Treasury Department, Labor Department, or Pension Benefit Guaranty Corporation with respect to matters affecting employee welfare, benefit or retirement programs.

4.12    Notification of Material Adverse Change.  Promptly notify the Bank in writing of (a) any material adverse changes in the business prospects or financial condition of any Borrowers; and (b) any accounting rule change that would have a material adverse effect on the business or financial condition of any Borrower.

4.13    Preservation of the Collateral.  Take all reasonably necessary steps to keep the Collateral in good operating condition and repair (reasonable wear and tear excepted) and free of unpermitted liens.

4.14    Maintenance of Records.  Keep adequate records and books of account, in which appropriate entries will be made in a manner reasonably acceptable to the Bank and consistently applied, reflecting all financial transactions of the Borrowers required to be stated therein.

4.15    Compliance With Laws; Environmental Matters.  Comply in all material respects with all applicable material laws, rules, regulations, and orders; provided, however, that Borrowers shall be entitled to contest the same in good faith so long as such action does not have an adverse effect upon the Bank's rights hereunder or the security furnished therefor.  Without limiting in any manner the scope or generality of the foregoing, each Borrower agrees to (i) comply with all federal, state and other laws and regulations regarding the generation, treatment, storage, disposal or transportation of hazardous waste or materials, as defined under applicable federal and state laws and regulations; (ii) cause all operators, tenants, subtenants, licensees and occupants of the Real Estate to comply with, all applicable environmental laws, and all orders, decrees, or directives by federal, state, or local courts or government agencies relating thereto, and shall obtain and comply with, and shall cause all operators, tenants, subtenants, licensees and occupants of the Real Estate to obtain and comply with all environmental permits; (iii) undertake and complete all investigations, studies, sampling and testing and all removal and other remedial actions necessary to contain, remove and clean up all hazardous substances that are determined to be present at the Real Estate in accordance with all applicable environmental aaws and all environmental permits; (iv) allow the Bank and its officers, employees, agents, representatives, contractors and subcontractors reasonable access to the Real Estate for inspection and testing and to relevant books and records, for any items related to compliance with environmental laws and environmental permits, environmental reporting, record-keeping, notices or violations; and (v) agrees to defend, indemnify and hold the Bank harmless from and against any and all liabilities, costs and expenses (including reasonable attorneys' fees) attributable to or in any way connected with the past, present or future (1) presence of any hazardous Substances or a release or the threat of a release on, at or from the Real Estate, (2) appropriate investigative, containment, removal, clean-up and other remedial actions with respect to a release or the threat of any release on, at or from the Real Estate, (3) human exposure to any hazardous substance or nuisances of

whatever, (5) violation of any applicable environmental law, (5) non-compliance with any environmental permit, or (7) material breach of or failure to perform any covenant made by the Borrower in this Section 4.15, to the extent such liabilities, costs or expenses arise from or are attributable to actions occurring during ownership of the Real Estate by the Borrower(s).

4.16    Composition of Management.    Maintain the current role of the senior management of the Borrowers, including the Chief Restructuring Officer, as listed on Schedule 4.16 hereof, unless a change in management is consented to, in advance, by the Bank.

4.17    Accounts and Deposits.    Each Borrower hereby agrees to maintain all of its operating, deposit, disbursement and cash managements accounts with the Bank during the term of this Agreement until the Loans are indefeasibly paid in full.  Each Borrower hereby authorizes the Bank to charge such accounts directly for payments of principal, interest and fees due under the Loan Documents.  The Borrowers shall also compensate the Bank for certain services to be provided to the Borrowers by the Bank through the payment of the Bank's standard service charges, such services to include monthly checking account activity, cash management services and electronic funds transfers.

4.18    Appraisals.  The Bank shall have the right to appraise all of the Borrowers' assets at reasonable times and upon reasonable notice and at reasonable frequency at the expense of the Borrowers; provided, however, that unless there is an Event of Default which has occurred and is continuing under the Loan Documents or the Bank's regulators require an appraisal, the Borrowers shall not be required to pay for more than one such appraisal per year.

4.19    Subordination of Sums Payable.  All of the Borrowers' obligations, if any, to any members, shareholders, officers or directors of any Borrower for borrowed money, shall be subordinated to the Borrowers' performance of their obligations to the Bank with respect to the Loans pursuant to a Subordination Agreement in form and substance acceptable to the Bank.

4.20    Special Covenants Relating to Inventory, Accounts and Equipment.  (a) At such intervals as the Bank may reasonably request in writing, the Borrowers shall notify the Bank of all Collateral which has come into existence or material changes in Collateral since the date of the last such notification and shall provide the Bank with schedules of the Collateral (which notification and schedules shall be in such forms as the Bank may specify).

(b)    Upon the request of the Bank, the Borrowers will (i) give the assignments, in form acceptable to the Bank, of all accounts and of the monies due or to become due on specific contracts related to the accounts; and (ii) notify the Bank immediately in writing if any of its accounts arise out of contracts between any Borrowers and the United States or any department, agency or instrumentality thereof, or any other governmental body and, if requested by the Bank, take any and all steps necessary or required by the Bank to protect the Bank under the Federal Assignment of Claims Act or other applicable state or local statutes or ordinances.

(c)    The Borrowers shall afford the Bank and the Bank's representatives with access from time to time (including periodic audits performed at the Bank's reasonable discretion) as the Bank and such representatives may require) upon reasonable prior notice to all properties owned

by or over which any Borrower has control, for the purposes of auditing the Borrowers' books and records pursuant to field examinations.  The Borrowers shall pay the Bank such reasonable fees and expenses as it customarily charges in connection with such audits, during the term of this Agreement.  The Bank and the Bank's representatives, shall have the right, and the Borrowers will permit the Bank and such representatives to examine, inspect, copy and make extracts from any and all of the Collateral, and any and all of the Borrowers' books, records, electronically stored data, papers and files, and to verify the Collateral or any portion thereof (such verification, including, without limitation, through contact with account debtors).

(d)     The Borrowers may grant such allowances or other adjustments to the Borrowers' account debtors as the Borrowers may reasonably deem to be in accord with sound business practice; provided, however, the authority granted the Borrowers pursuant to this paragraph may be limited or terminated by the Bank upon the occurrence of an Event of Default.

(e)     At such intervals as the Bank may reasonably request, the Borrowers shall promptly furnish the Bank with detailed reports in such form as the Bank may prescribe of all allowances, adjustments, returns, and repossessions concerning the Borrowers' accounts and accounts receivable and/or its inventory, and of any downgrading in the quality of any of the inventory or event affecting the marketability of the inventory, and of all inventory detained from, refused entry into, or required to be removed from the United States by the appropriate governmental authorities.

(f)     Following the occurrence and during the continuance of an Event of Default, the Bank shall have the right to notify any of the Borrowers' account or contract debtors, either in the name of the Bank or any Borrower, to make payments directly to the Bank, and to advise any person of the Bank's security interest in and to any of the Collateral, and to collect all amounts due on account of the Collateral.  Upon request by the Bank, the Borrowers agree to provide written notification to any or all of the Borrowers' account or contract debtors regarding the Bank's security interest in the receivables Collateral and will request that such account or contract debtors forward payment thereof to the Bank.  The within obligations on the part of the Borrowers directly, being unique, shall be specifically enforceable by the Bank.

(g)     Following the occurrence and during the continuance of an Event of Default, the Borrowers hereby irrevocably constitute and appoint the Bank as the Borrowers' true and lawful attorney, with full power of substitution, to convert the Collateral into cash at the cost and expense of the Borrowers.  The rights and powers granted the Bank by the within appointment include, but are not limited to, the right and power to compromise, settle, or execute releases with any of Borrowers' account debtors, and to prosecute, defend, compromise, or release any action relating to the Collateral; to receive and open all mail addressed to the Borrowers and to take therefrom any remittances on or proceeds of any Collateral in which the Bank has a security interest, immediately following which the Bank shall release said mail, less any remittances or proceeds, to the Borrowers; to notify Post Office authorities to change the address to which the Borrowers' mail is to be sent as the Bank shall designate; to endorse the name of the Borrowers in favor of the Bank upon all checks, drafts, money orders, notes, acceptances, or other instruments of the same or different nature; to sign and endorse, as attorney in fact, the name of the Borrowers on, and to receive as a secured party, any of the Collateral, invoices, schedules of

Collateral, freight or express receipts, or bills of lading, storage receipts, warehouse receipts, or other documents to title of a same or different nature relating to the Collateral; to sign the name of the Borrowers, as attorney in fact, on any notice to the Borrowers' account debtors for verification of the receivables Collateral; and to authorize, sign and file or record on behalf of the Borrowers, as attorney in fact, any filing or notice of assignment under the Federal Assignment of Claims Act and any financing or other statement in order to perfect or protect the Bank's security interest. The Bank shall not be obligated to do any of the acts or to exercise any of the powers authorized herein, but if the Bank elects to do any such act or to exercise any such power, it shall not be accountable for more than it actually receives as a result of such exercise of power, and shall not be responsible to the Borrowers except for the Bank's gross negligence or willful misconduct. All powers conferred upon the Bank by this Agreement, being coupled with an interest, shall be irrevocable until the within Agreement is terminated as provided herein.

4.21    New Subsidiaries. The Borrowers shall immediately notify the Bank if it creates or acquires any new subsidiaries. Upon the Bank's request, the Borrowers shall cause any such new subsidiaries to become a co-borrower hereunder or execute a guaranty of the Borrowers' obligations hereunder and grant to the Bank as security therefore, a first priority security interest in all assets of such subsidiary, pursuant to agreements acceptable to the Bank. The Borrowers shall deliver to the Bank all such financial statements, information and reports regarding the subsidiaries as the Bank may request.

4.22    Fiscal Year End 2010 Financial Statements. The Borrowers hereby covenant and agree that they will furnish the Bank on or before June 30, 2011 with their annual financial statements for the Borrowers' fiscal year ending December 31, 2010.

4.23    Compliance with Orders. To the extent applicable to any Borrower, the Borrowers shall comply with the Financing Orders and all other orders by the Court in the Chapter 11 Cases. The terms and conditions of the Financing Orders shall be binding upon the Borrowers' successors, including any subsequently appointed trustee.

4.24    Release of Claims. The Borrowers hereby agree to release any and all claims against the Bank relating in any way to previous or contemplated financing transactions as between them and to release any claims under Section 506(c) of the Bankruptcy Code.

4.25    Removal of Nonconsensual Liens. The Borrowers agree to take reasonably appropriate action to cause to be released all nonconsensual liens on any assets of the Borrowers.

**ARTICLE V. NEGATIVE COVENANTS OF BORROWERS.** Until payment in full of the indebtedness now existing or hereafter incurred under this Agreement and the performance of all obligations hereunder, the Borrowers will not, without the express prior written consent of the Bank, engage in the following:

5.1    Nature and Scope of Business. The Borrowers shall not enter into any type of business other than that in which it is presently engaged, or otherwise significantly change the scope, nature or form of its business.

5.2    Merger, Consolidation or Acquisitions.  The Borrowers shall not, without the prior written consent of the Bank, be a party to any merger, consolidation or any other reorganization, or acquire by purchase, lease or otherwise all or substantially all of the assets or capital stock of any person, partnership, corporation or entity.

5.3    Sale or Disposition of Assets.  The Borrowers shall not sell, lease, transfer or otherwise dispose of all or, in the opinion of the Bank, a substantial portion of any Borrowers' assets and properties, except in the ordinary course of business, without the prior written approval of the Bank (such approval not to be unreasonably withheld).

5.4    Additional Indebtedness.  The Borrowers shall not incur indebtedness for borrowed money (or lease expense or issue or sell any of its bonds, debentures, notes or similar obligations) except:

(a)    Borrowings under this Agreement;

(b)    Other obligations to the Bank;

(c)    Borrowings used to prepay in full borrowing under this Agreement;

(d)    Trade debt incurred in the ordinary course of business; and

(e)    Borrowings disclosed to the Bank in the financial statements previously delivered to the Bank described in Section 3.6.

5.5    Guaranties, Endorsement and Contingent Liabilities.  The Borrowers shall not guarantee, endorse or otherwise become absolutely or contingently liable for the obligations of any other person, partnership, corporation or other entity.

5.6    Liens and Mortgages.  The Borrowers shall not incur, create, assume or suffer to exist any mortgage, pledge, lien, charge or other encumbrance of any nature whatsoever on any of their respective assets, now or hereafter owned, other than (a) the security interests, liens or mortgages, granted to the Bank pursuant to the Loan Documents; (b) deposits under Workmen's Compensation, Unemployment Insurance and Social Security laws; (c) liens imposed by law, such as carriers, warehousemen's or mechanic's liens and other liens incurred in good faith in the ordinary course of business; nor shall any Borrowers enter into any agreement with any third party not to incur or permit any lien, pledge or security interest in any of its assets such as a negative pledge agreement with a third party; or (d) those presently existing liens and encumbrances permitted by the Borrowers' Security Agreement.

5.7    Loan and Advances.  The Borrowers shall not make any loans or advances to any individual, firm or corporation, including, without limitation, any parent, affiliate, subsidiaries, members, shareholders, directors, officers and employees; provided, however, that the Borrowers may make advances to its employees, including its officers, with respect to reasonable expenses incurred by such employees, which expenses are reimbursable by the Borrowers and directly related to the conduct of such Borrowers' business.

5.8     Dividends and Distributions.  The Borrowers shall not declare or pay dividends, or make any other payment or distribution on account of its capital stock or membership interest without the prior written consent of the Bank; provided, however, that the Borrowers' shall be permitted, if no Event of Default shall have occurred or would result therefrom, to make distributions to its shareholders and members (as applicable) sufficient for such parties to pay federal and state taxes relating to the Borrowers' tax treatment as an S corporation or partnership for federal and state income tax purposes.

5.9     Conversion; Capital Structure; Acquisition of Stock, Corporate Changes.  The Borrowers shall not alter, change, amend or convert any Borrowers' corporate or entity name, form or state of organization or capital structure or purchase, obligate itself to purchase, redeem or otherwise acquire for value any of its outstanding capital stock or membership interests.

5.10    Investments.  The Borrowers shall not invest in or purchase any stock or securities of any individual, firm, or corporation; provided, however, that the Borrowers may invest in direct obligations of the United States of America or in certificates of deposit in the Bank.

5.11    Filing of Motions and Applications.  The Bank reserves the right to object to all budget and fee applications.  The Borrowers shall not apply to the Court for authority to (i) take any action that is prohibited by the terms of any of the Loan Documents except to the extent Borrowers claim such provision of the Loan Documents is inconsistent with the Financing Orders, or (ii) refrain from taking any action that is required to be taken by the terms of any of the Loan Documents except to the extent Borrowers claim such provision of the Loan Documents is inconsistent with the Financing Orders.

5.12    Modifications to Orders.  The Borrowers shall not seek or consent to any amendment or any other modification of any of the terms of the Financing Orders.

## ARTICLE VI.  CONDITIONS PRECEDENT TO MAKING OF LOAN.

6.1     Conditions Precedent to Disbursement.  (a) The obligation of the Bank to make the Loan and make disbursements of the proceeds of the same to the Borrowers is subject to the satisfaction by the Borrowers or their representatives of the following conditions precedent:

(i)     The Borrowers' warranties and representations as contained herein shall be accurate and complete, in all material respects, as of the date of Closing and as of the date of each subsequent disbursement (if any).

(ii)    The Borrowers shall not be in default under any of the covenants contained herein as of the date of Closing and as of the date of each disbursement.

(iii)   There shall have been no material adverse change (in the Bank's reasonable judgment) in the Borrowers' financial condition as evidenced by the financial information submitted to the Bank.

(iv)     The Borrowers shall have executed and delivered all of the Loan Documents as described herein.  Without limiting the foregoing, the Borrowers shall have delivered to the Bank all of those items identified as "Borrowers' Documents" on the Closing Agenda attached hereto as <u>Schedule 6.1(a)(iv)</u> and made a part hereof, all of which must be reasonably acceptable, in form and substance, to the Bank.

(v)      The Interim Financing Order shall have been entered, shall be in full force and effect and shall not have been vacated, reversed, modified or stayed in any respect (and if such order is the subject of a pending appeal, no performance of any obligation of any party shall have been stayed pending such appeal).

(vi)     The Bank shall have been able to fully perfect its security interest in the Borrowers' vehicles to secure a certain term loan made on March 16, 2010 and such security interest shall not have been challenged as part of the Chapter 11 Cases.

(b)      Without limiting in any manner the scope or generality of the foregoing, certain of said items are more particularly described as follows:

(i)      All of the Borrowers' obligations shall have been subordinated to the Borrowers' performance of its obligations to the Bank with respect to the Loans in accordance with Section 4.19 hereof.

(ii)     The Bank shall have received:

(A)     acknowledgment copies of proper financing statements (Form UCC-1) duly filed under the Uniform Commercial Code of all jurisdictions as may be necessary or, in the opinion of the Bank, desirable to perfect the Bank's security interest in the Collateral contemplated under the Loan Documents;

(B)     certified copies of Requests for Information or Copies (Form UCC-11) listing the financing statements referred to in paragraph (A) above and all other effective financing statements which name the Borrowers as debtor and which are filed in the jurisdictions referred to in said paragraph (A), together with copies of such other financing statements; and

(C)     original titles to those motor vehicles as set forth on <u>Schedule 2.6</u> evidencing the Bank's first priority security interest in such vehicles.

(iii)    The Borrowers shall pay the costs and fees of the Bank hereinbefore described herein.

(iv)     Counsel to the Borrowers shall deliver an opinion to the Bank, in form and substance acceptable to the Bank, to the effect that (A) each Borrower is a business corporation or limited liability company duly organized and validly

existing under the laws of the State of New Hampshire and is duly qualified to do business in such other jurisdictions in which the nature of its business or assets make such qualification necessary; (B) each Borrower has duly authorized the execution, delivery and performance of the Loan Documents; (C) that the Borrowers' entrance into the obligations evidenced by the Loan Documents does not constitute a breach of the articles of incorporation or bylaws, certificate of formation or limited liability company agreement of any Borrower or, to such counsel's knowledge, any other arrangements or agreements by which any Borrower is bound and that the Borrowers' entrance into and performance of the loan obligations will not require any further approvals or consents; (D) there is neither pending nor, to such counsel's knowledge, threatened any litigation, administrative proceedings or investigations that would have a material adverse effect on any Borrower or any Borrower's condition, financial or otherwise other than disclosed in the Loan Documents; and (E) addressing such other matters as deemed appropriate by the Bank.

(vi)     The Bank shall have received certificates evidencing the insurance as required by the Loan Agreement.

(v)      Prior to the initial disbursement under the Loan, the Bank shall have received a copy of the Budget, in form deemed acceptable to the Bank.

(c)      The Borrowers shall furnish the Bank with such other documents, opinions, certificates, evidence and other matters as may be requested by the Bank.

6.2      <u>Subsequent Borrowing</u>.  The obligation of the Bank to make advances, pursuant to the Loan to be made by it hereunder, is subject to the following conditions precedent (in addition to any conditions precedent set forth in Section 6.1 of this Agreement):

(a)      At the time of each advance (as evidenced by a certificate executed on behalf of the Borrowers if the Bank shall so require):

(i)      The Borrowers shall have complied and shall then be in compliance with all the terms, covenants and conditions of this Agreement which are binding on them.

(ii)     There shall exist no default in this Agreement or no event (including an event caused by such Loan) which would be a default under this Agreement but for the requirement that notice be given or time elapse or both.

(iii)    The representations and warranties contained in this Agreement shall be true and correct as of the date of such advance.

(iv)     There shall have been no material adverse change (in the Bank's reasonable judgment) in the Borrowers' financial condition as evidenced by the financial information (whether now or hereafter) submitted to the Bank pursuant to this Agreement.

(b)     All of the Loan Documents shall remain in full force and effect and the validity of any Loan Document shall not have been contested.

6.3     Disbursement of the Loans.  The Bank shall credit the proceeds of the Loans as set forth under a controlled disbursement agreement or other cash management agreement with such Borrowers or to the deposit accounts of the Borrowers with the Bank for the benefit of the Borrowers or as otherwise directed in writing by the Borrowers, including payments to third parties through electronic funds transfers.

## ARTICLE VII. EVENTS OF DEFAULT; ACCELERATION; REMEDIES.

7.1     The occurrence of any one or more of the following events shall constitute an event of default (an "Event of Default") after the expiration of applicable notice and cure periods, if any, under this Agreement:

(a)     If any statement, representation or warranty made by any Borrower herein or in the Loan Documents shall prove to have been false or misleading when made, or subsequently becomes false or misleading, in any materially adverse respect, except to the extent the Bank had actual knowledge of the falsity of said statement, representation or warranty when made.

(b)     Default by the Borrowers in payment on its due date of any principal or interest called for under its payment obligations with respect to any of the Loans or under any of the other Loan Documents.

(c)     Default by any Borrower, in any material respect, in the performance or observance of any of the other provisions, terms, conditions, warranties or covenants of the Loan Documents, but excluding any Default otherwise provided for in this Section 7.1.

(d)     The dissolution, termination of existence, merger or consolidation of any Borrowers or a sale of any Borrowers' business or the assets of any Borrower out of the ordinary course of business other than as permitted or contemplated under this Agreement.

(e)     The transfer of any of the voting capital stock or membership interest of any Borrower in excess of ten percent (10%) of the total issued and outstanding voting capital stock or membership interests of such Borrower without the prior written consent of the Bank, and excluding a transfer occurring by operation of law or pursuant to an existing plan of distribution upon the death of a holder of such stock or interest.

(f)     A final and unappealable judgment for the payment of money, not covered by insurance, in excess of Twenty Thousand Dollars ($20,000) shall be rendered against any Borrower and the same shall remain undischarged for a period of thirty (30) days, during which period execution shall not be effectively stayed.

(g)     Any default by any Borrower in the payment of any liability for borrowed money (other than that evidenced by the Loan Documents or under any lease), which is not cured within any applicable grace period, if any, as may be afforded with respect thereto in the document, instrument or other writing evidencing such liability, and the obligation to pay is not stayed or otherwise the subject of a proceeding in a court of competent jurisdiction.

(h)     Any Borrower assigns this Agreement (or its rights or duties hereunder) or if the Collateral is conveyed or transferred in any way or encumbered in any way without the prior written consent of the Bank, or as permitted or contemplated under this Agreement.

(i)     The Collateral is materially injured or destroyed by fire or otherwise which casualty is not insured, or any material portion is taken by eminent domain.

(j)     Any attachment or mechanic's, laborer's, materialman's, architect's, artisan's or similar statutory liens or any notice thereof shall be filed against Collateral and shall not be discharged within forty five (45) days of such filing, unless the Bank's interests in the Collateral shall have been protected by bond, letter of credit, escrowed funds or other appropriate security or adequate reserves have been established therefor in the event of a final judgment adverse to the Borrower(s).

(k)     Any Borrower shall fail to comply with any of the provisions of the Financing Orders in any material respect; a trustee shall be appointed in any Chapter 11 Case; an examiner shall be appointed in any Chapter 11 Case with enlarged powers (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code; any Chapter 11 Case shall be dismissed or converted to a case under Chapter 7; an order is entered confirming a plan of reorganization or a sale of all or substantially all of the assets or capital stock of the Borrowers that does not contain a provision for repayment in full in cash of all of the obligations under this Agreement on or before the effective date of such plan; there shall be filed by Borrowers any motion to sell all or a substantial part of the Collateral that does not pay the Bank in full, or if not paying the Bank in full, on terms that are not reasonably acceptable to the Bank; the Final Financing Order is not entered immediately following the expiration of the Interim Financing Order and, in any event, within thirty (30) days of the entry of the Interim Financing Order; *provided* that if the Court is not available to issue such Final Financing Order within such 20-day period, then such date shall be extended by a reasonable period of time to accommodate the Court's schedule, not to exceed 14 days; any Borrower shall file any motion to alter, amend, vacate, supplement, modify, or reconsider, in any respect, either of the Financing Orders or, without the Bank's prior written consent, either of the Financing Orders is amended, vacated, stayed, reversed or otherwise modified; the Court shall enter an order granting to any person (other than the Bank) relief from the automatic stay to foreclose upon a lien with respect to any Collateral of any Borrower that has an aggregate book value in excess of $100,000 or to terminate or otherwise exercise remedies under any material agreement, document or instrument which is entered into after the petition date, whether or not it relates to any debt; any Borrower shall file a motion or other request with the Court seeking authority to use any cash proceeds of the Collateral or to obtain any financing under Section 364(c) or Section 364(d) of the Bankruptcy Code or otherwise secured by a lien upon any Collateral (in each case (i) without the Bank's prior written consent or (ii) if such motion fails to contemplate

payment in full of the Borrowers' obligations under this Agreement); or, without the Bank's consent, any Borrower shall discontinue or suspend all or any material part of its business operations or commence an orderly wind-down or liquidation of any material part of the Collateral.

7.2    Upon the occurrence of any Event of Default (which, in the case of an event of default listed in Sections 7.1(a) or 7.1(c) above remains unremedied for a period of ten (10) days after the date of notice thereof to the Borrowers by the Bank), the Bank's commitment to make further advances under this Agreement or any other agreement with any Borrowers will immediately cease and terminate and, at the election of the Bank, all of the obligations of the Borrowers to the Bank under this Agreement will immediately become due and payable without further demand, notice or protest, all of which are hereby expressly waived. Without limiting the generality of the foregoing, the Borrowers' nonconsensual use of the Bank's cash collateral after an Event of Default or other termination of the Loan is strictly prohibited. Thereafter, the Bank may proceed to protect and enforce its rights, at law, in equity, or otherwise, against the Borrowers, and any other endorser or guarantor of the Borrowers' obligations, either jointly or severally, and may proceed to liquidate and realize upon any of its security in accordance with the rights of a secured party under the Uniform Commercial Code, or any Loan Document, any agreement between any Borrowers and the Bank relating to the Loan, or any other agreement between any guarantor or endorser of the Borrowers' obligations to the Bank hereunder.

## ARTICLE VIII. <u>MISCELLANEOUS PROVISIONS</u>

8.1    <u>Entire Agreement; Waivers</u>. This Agreement and the Loan Documents together are intended by the parties as the final, complete and exclusive statement of the transactions evidenced by this Agreement and the other Loan Documents. All prior or contemporaneous promises, agreements and understandings, whether oral or written, are deemed to be superceded by the Loan Documents, and no party is relying on any promise, agreement or understanding not set forth in the Loan Documents. The Loan Documents may not be amended or modified except by a written instrument describing such amendment or modification executed by the Borrowers and Bank. The Bank's failure to exercise or enforce any of its rights, powers or privileges under this Agreement or the Loan Documents shall not operate as a waiver thereof. In the event of any conflict between the terms, covenants, conditions and restrictions contained in the Loan Documents, the term, covenant, condition or restriction which confers the greatest benefit upon the Bank shall control. The determination as to which term, covenant, condition or restriction is more beneficial shall be made by the Bank in its reasonable discretion.

8.2    <u>Remedies Cumulative</u>. All remedies provided under this Agreement and the Loan Documents or afforded by law shall be cumulative and available to the Bank until all of the Borrowers' obligations to the Bank have been paid in full.

8.3    <u>Survival of Covenants, Etc.</u>    All covenants, agreements, representations and warranties made herein and in certificates delivered in connection herewith shall be deemed to have been relied on by the Bank, notwithstanding any investigation made by the Bank or in its behalf, except to the extent of the Bank's actual knowledge of the falsity of a representation when made, and shall survive the execution and delivery of this Agreement and the Loan

Documents until payment in full of the Loans. All such covenants, agreements, representations and warranties shall be joint and several obligations of the Borrowers and bind and inure to the benefit of the Borrowers' and the Bank's successors and assigns, whether so expressed or not.

8.4     <u>Governing Law; Jurisdiction</u>.  This Agreement and the Loan Documents shall be construed and their provisions interpreted under and in accordance with the laws of the State of New Hampshire.  The Borrowers, to the extent they may legally do so, hereby consent to the jurisdiction of the courts of the State of New Hampshire and the United States District Court for the State of New Hampshire, as well as to the jurisdiction of all courts from which an appeal may be taken from such courts for the purpose of any suit, action or other proceeding arising out of any of their obligations hereunder or with respect to the transactions contemplated hereby, and expressly waive any and all objections they may have to venue in any such courts.  THE BORROWERS AND THE BANK MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF BANK RELATING TO THE ADMINISTRATION OF THE LOANS OR ENFORCEMENT OF THE LOAN DOCUMENTS, AND AGREE THAT NEITHER PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  EXCEPT AS PROHIBITED BY LAW, OR PROVIDED OTHERWISE IN THE LOAN DOCUMENTS, THE BORROWERS AND THE GUARANTOR HEREBY WAIVE ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, ENHANCED COMPENSATORY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES, AND REASONABLE ATTORNEYS FEES IN THE EVENT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE BANK, ITS AGENTS AND EMPLOYEES.  THE BORROWERS CERTIFY THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE BANK HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE BANK WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER.  THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR THE BANK TO ACCEPT THIS AGREEMENT AND MAKE THE LOAN.

8.5     <u>Assurance of Execution and Delivery of Additional Instruments</u>.  Each Borrower agrees to execute and deliver, or to cause to be executed and delivered, to the Bank all such further instruments, and to do or cause to be done all such further acts and things, as the Bank may reasonably request or as may be necessary or desirable to effect further the purposes of this Agreement and the Loan Documents.  Without limiting the foregoing, given the fact that certain of the permits and licenses are not transferable without the consent of certain public authorities, each Borrower agrees to fully cooperate in facilitating the transfer of the same to the Bank or its successors upon an Event of Default hereunder.  Upon receipt of an affidavit of an officer of the Bank as to the loss, theft, destruction or mutilation of the Note or any other security document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon surrender and cancellation of such Note or other security document, the Borrowers will

issue, in lieu thereof, a replacement Note or other security document in the same principal amount thereof and otherwise of like tenor.

8.6    Waivers and Assents by the Borrowers.  With the exception of specific notices provided in the Loan Documents (if any), the Borrowers and any guarantor or endorser of any Borrowers' obligations to the Bank hereunder hereby waive, to the fullest extent permitted by law, demand, notice, protest, notice of acceptance of this Agreement, notice of loans made, credit extended, collateral received or delivered or other action taken in reliance hereon and all other demands and notices of any description with respect both to the Loan Documents and Collateral. The Borrowers assent to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of Collateral, to the addition or release of any party or person primarily or secondarily liable, to the acceptance of partial payments thereon and the settlement, compromising or adjusting of any thereof, all in such manner and at such time or times as the Bank may deem advisable.  Any demand upon or notice to the Borrowers that the Bank may be required or may elect to give shall be mailed by registered or certified mail, return receipt requested, postage prepaid and shall be effective on the date of the first attempted delivery thereof by the U.S. Postal Service, as shown on the registered or certified mail return receipt for such notice addressed to the Borrowers at their address as set forth at the beginning of the Agreement.

8.7    No Duty of the Bank With Respect to the Collateral.  The Bank shall have no duty as to the collection or protection of Collateral security furnished to it hereunder or any income thereon, nor as to the preservation of rights against prior parties, nor as to the preservation of any rights pertaining thereto, beyond the safe custody thereof.

8.8    Election of the Bank.  The Bank may exercise its rights with respect to the Collateral without resorting or regard to other collateral or sources of reimbursement for the liabilities.

8.9    Assignment by the Bank.  The Bank shall have the unrestricted right at any time or from time to time, and without the Borrowers' consent, to assign all or any portion of its rights and obligations hereunder to one or more banks or other financial institutions (each, an "Assignee"), and the Borrowers agree that they shall execute, or cause to be executed, such documents, including without limitation, amendments to this Agreement and to any other documents, instruments and agreements executed in connection herewith as the Bank shall deem reasonably necessary to effect the foregoing.  In addition, at the request of the Bank and any such Assignee, the Borrowers shall issue one or more new promissory notes, as applicable, to any such Assignee and, if the Bank has retained any of its rights and obligations hereunder following such assignment, to the Bank, which new promissory notes shall be issued in replacement of, but not in discharge of, or addition to, the liability evidenced by the promissory note held by the Bank prior to such assignment, and on the same terms, and shall reflect the amount of the respective commitments and loans held by such Assignee and bank after giving effect to such assignment.  Upon the execution and delivery of appropriate assignment documentation, amendments and any other documentation required by the Bank in connection with such assignment, and the payment by Assignee of the purchase price agreed to by the Bank, and such Assignee, such Assignee shall be a party to this Agreement and shall have all of the rights and

obligations of the Bank hereunder (and under any and all other guaranties, documents, instruments and agreements executed in connection herewith) to the extent that such rights and obligations have been assigned by the Bank pursuant to the assignment documentation between the Bank and such Assignee, and the Bank shall be released from its obligations hereunder and thereunder to a corresponding extent.  The Bank may furnish any information concerning the Borrowers in its possession from time to time to prospective Assignees, provided that the Bank shall require any such prospective Assignees to agree in writing to maintain the confidentiality of such information.  The Bank shall remain liable to the Borrowers for the unauthorized release of any such confidential information by such prospective Assignee(s).

The Bank shall have the unrestricted right at any time and from time to time, and without the consent of or notice to the Borrowers to grant to one or more banks or other financial institutions (each, a "Participant") participating interests in the Bank's obligation to lend hereunder and/or any or all of the Loans held by the Bank hereunder.  In the event of any such grant by the Bank of a participating interest to a Participant, whether or not upon notice to the Borrowers, the Bank shall remain responsible for the performance of its obligations hereunder and the Borrowers shall continue to deal solely and directly with the Bank in connection with the Bank's rights and obligations hereunder.  The Bank may furnish any information concerning the Borrowers in its possession from time to time to prospective assignees and Participants, provided that the Bank shall require any such prospective assignee or Participant to agree in writing to maintain the confidentiality of such information.  The Bank shall remain liable to the Borrowers for the unauthorized release of any such confidential information by such prospective Participant(s).

8.10    Expenses; Proceeds of Collateral.    The Borrowers shall pay on demand all reasonable expenses of the Bank in connection with the preparation, administration, default, collection, waiver or amendment of loan terms, or in connection with Bank's exercise, preservation or enforcement of any of its rights, remedies or options hereunder, including, without limitation, fees of outside legal counsel or the allocated costs of in-house legal counsel, accounting, consulting, brokerage or other similar professional fees or expenses and any fees or expenses associated with travel or other costs relating to any appraisals or examinations conducted in connection with the loan or any collateral therefor, but excluding the exercise of rights or options described in Section 8.9 above, and the amount of all such expenses shall, until paid, bear interest at the rate applicable to principal hereunder (including any default rate) and be an obligation secured by any collateral.  After deducting all of said expenses and the reasonable expenses of retaking, holding, preparing for sale, selling and the like, the residue of any proceeds of collections of sale of the Collateral shall be applied to the payment of principal of or interest on the Loan in such order or preference as the Bank may determine, and any excess shall be returned to the Borrowers (subject to the provisions of the Uniform Commercial Code) and the Borrowers and the Guarantor shall remain liable for any deficiency.

8.11    The Bank's Right of Setoff.    The Borrowers hereby grant to the Bank, a continuing lien, security interest and right of setoff as security for all liabilities and obligations to the Bank, whether now existing or hereafter arising, upon and against all deposits, credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of the Bank or any entity under the control of the Bank (and their successors and assigns), or in transit

to any of them. Upon the occurrence of an Event of Default or upon notice of issue of any legal process by which process any of any Borrowers' assets in the possession or control of the Bank, any affiliate thereof (and their successors and assigns) may be trusteed, attached or levied upon, without demand or notice (any such notice being expressly waived by the Borrowers), the Bank may set off the same or any part thereof and apply the same to any liability or obligation of the Borrowers even though unmatured and regardless of the adequacy of any other collateral securing the Loans. ANY AND ALL RIGHTS TO REQUIRE THE BANK TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES ANY LOAN, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF THE BORROWER OR THE GUARANTOR, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.

8.12    Pledge. The Bank may at any time pledge all or any portion of its rights under the Loan Documents including any portion of the promissory note to any of the twelve (12) Federal Reserve Banks organized under Section 4 of the Federal Reserve Act, 12 U.S.C. Section 341. No such pledge or enforcement thereof shall release the Bank from its obligations under any of the Loan Documents.

8.13    Payments.

(a)    All payments required under this Agreement, the Note or any other Loan Documents shall be made by the Borrowers to the Bank at 9 Main Street, Berlin, New Hampshire or such other place as the Bank may from time to time specify in writing in lawful currency of the United States of America in immediately available funds, without counterclaim, or setoff and free and clear of, and without any deduction or withholding for any taxes or other payments.

(b)    The Following Business Day Convention shall be used to adjust any relevant date if that date would otherwise fall on a day that is not a Business Day. For the purposes herein, the term Following Business Day Convention shall mean that an adjustment will be made if any relevant date would otherwise fall on a day that is not a Business Day so that the date will be the first following day that is a Business Day. All payments or under any Loan Documents hereunder shall be adjusted in accordance with the Following Business Day Convention.

(c)    All payments under the Loan Documents shall be applied first to the payment of all fees, expenses and other amounts due to the Bank (excluding principal and interest), then to accrued interest, and the balance on account of outstanding principal; provided, however, that after default with regard to any Loan, payments will be applied to the obligations of the Borrowers to Bank as Bank determines in its reasonable discretion.

8.14    Notices. All written notices, consents, approvals, statements, requests, reports, demands, instruments or other communications to be made, given or furnished pursuant to or under this Agreement or the Loan Documents (each, a "Notice") shall be deemed given or furnished if addressed to the party intended to receive the same at the address of such party as set forth below (1) upon receipt when personally delivered at such address, (2) four (4) business

days after the same is deposited in the United States mail as first class registered or certified mail, return receipt requested, postage prepiaid, or (3) one business day after the date of delivery of such Notice to a nationwide, reputable commercial courier service specifying next day deliver:

If to the Borrowers:

Munce's Superior Petroleum Products, Inc.
453 Alpine Street
Berlin, NH  03570
Attention:  President

With a copy to:

Roy W. Tilsley Jr., Esq.
Bernstein Shur Sawyer & Nelson PA

If by hand or courier deliver:

670 N. Commercial Street, Suite 108
Manchester, NH  03101

If by United State mail:

P.O. Box 1120
Manchester, NH 03105-1120

BMRA Real Estate Ventures, LLC
453 Alpine Street
Berline, NH  03570
Attention:  Manager

Gorham Oil, Inc.
443 Main Street
Gorham, NH  03581
Attention:  President

Superior Trucking, Inc.
620 Main Street
Gorham, NH  03581
Attention:  President

Munce's Real Estate Ventures, LLC
453 Alpine Street
Berlin, NH  03570
Attention:  Manager

Harold P. Munce
453 Alpine Street
Berlin, NH  03570

Marilyn J. Munce
453 Alpine Street
Berlin, NH  03570

If to the Bank:                                      With a copy to:

Northway Bank                                        Matthew R. Johnson, Esq.
9 Main Street                                        Devine, Millimet & Branch, Professional
Berlin, NH  03570                                    Association
Attn:  Thomas Caruso, Senior Vice President          111 Amherst Street
                                                     Manchester, NH  03101


Any party may change the address to which any Notice is to be delivered to any other address within the United States of America by furnishing written Notice of such change in the manner set forth above.   If a Notice is received by an entity, the fact that the individual to whoe attention it is directed is no longer at such address or associated with such entity shall not affect the effectiveness of such Notice.  Notices may be given on behalf of any party by such party's attorneys.

      8.15   <u>Conflicts with Interim Financing Order</u>.  The parties acknowledge and agree that this Loan is being made pursuant to terms and conditions set forth in the Financing Orders.  To the extent the terms and conditions of the Financing Orders are in direct conflict with this Agreement, the terms and conditions of the Financing Orders shall control.


[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the BANK and the BORROWERS have executed this Agreement by their duly authorized officers as of the day and year first above written.

MUNCE'S SUPERIOR PETROLEUM PRODUCTS, INC.

_____        By:_____
Witness                                Name:
                                       Title:

BMRA REAL ESTATE VENTURES, LLC

_____        By:_____
Witness                                Name:
                                       Title:

GORHAM OIL, INC.

_____        By:_____
Witness                                Name:
                                       Title:

SUPERIOR TRUCKING, INC.

_____        By:_____
Witness                                Name:
                                       Title:

MUNCE'S REAL ESTATE VENTURES, LLC

_____        By:_____
Witness                                Name:
                                       Title:

_____        _____
Witness                                Harold P. Munce

_____      _____
Witness                                   Marilyn J. Munce

NORTHWAY BANK

_____   By:_____
Witness                                   Thomas Caruso, Its Duly
                                              Authorized Senior Vice President

J:\WDOX\DOCS\CLIENTS\020746\093343\M1811057.DOC

## SCHEDULE 2.6 (a)

## Real Estate Collateral

1.  447 Main Street, Gorham

2.  443 Main Street, Gorham

3.  435 Main Street, Gorham

4.  437 Main Street, Gorham

5.  580 Main Street, Gorham

6.  584 Main Street, Gorham

7.  611 Main Street, Gorham

8.  614 Main Street, Gorham

9.  615 Main Street, Gorham

10.  616 Main Street, Gorham

11.  619 Main Street, Gorham

12.  620 Main Street, Gorham

13.  624 Main Street, Gorham

14.  79 Pleasant Street, Berlin

15.  Denmark Street, Berlin

16.  Campground on Bridge Street, Lancaster

17.  Bridge Street, Lancaster (50.77 acres)

18.  Rt 3, a/k/a DW Hgwy, Groveton (Northumberland)

19.  Alpine Street and 453 Alpine Street, Berlin

20.  148 Jericho Road, Berlin

21.  Route 25, "Warren Village Market", Warren

22.  36 Main Street, Lincoln

23.     33 South Main Street, Plymouth

24.     494 Tenney Mountain Highway, a/k/a Route 25/3-A, Plymouth – 2392-798.

25.     Route 104, New Hampton

26.     Old Lake Shore Road, Gilford

27.     Any and all other interests in real estate in the Counties of Coos, Grafton, Belknap and
        Carroll.

## SCHEDULE 2.6 (d)

## Motor Vehicle Collateral

Original title to the following motor vehicles (listing the Bank as first lienholder) shall be delivered to the Bank at closing:

| Vehicle Description | Vehicle Identification Number |
|---|---|
| 2006 FTL CL120 | 1FUJA6AV86LV95517 |
| 2007 Freightliner | 1FUJA6AVX7LY61198 |

<u>**SCHEDULE 3.4**</u>

<u>**Litigation**</u>

State of New Hampshire Department of Environmental Services v. Munce's Superior Petroleum Products, Inc. and Harold Munce
Coos County Superior Court  - 214-201-CV-121


State of New Hampshire v. Munce's Superior Petroleum Products, Inc.
Merrimack County Superior Court – 217-2010-CV-481


Associated Grocers of New England, Inc. v. Munce's Superior Petroleum Products, Inc. and Harold Munce
Merrimack County Superior Court – 217-2010-CV-770


NGM Insurance Company and NGM Insurance Company as Subrogee for The State of New Hampshire v. Munce's Superior Petroleum Products, Inc., Gorham Oil, Inc., G & T Tire Alignment, Inc., Superior Trucking, Inc., Munce's Real Estate Ventures, LLC, BMRA Real Estate Ventures, LLC, Harold P. Munce and Marilyn J. Munce
Coos County Superior of Court -

## SCHEDULE 4.16

### Senior Management of Borrowers

| Name | Title | Company |
|------|-------|---------|

**[To Be Completed by Borrowers]**

**SCHEDULE 6.1(a)(iv)**

**Closing Agenda**

**[See Attached]**

*For recorder's use:*
***Tax Stamp****: $ _____*
***Recording Fee****: $ _____*
***Return to****: Account # _____*
*Devine, Millimet & Branch - Attn: mrj*
*111 Amherst Street, Manchester, NH  03101*

_____
**(Property Located in Gilford, Belknap County, New Hampshire)**

## MORTGAGE, SECURITY AGREEMENT AND
## COLLATERAL ASSIGNMENT OF LEASES AND RENTS

THIS MORTGAGE, SECURITY AGREEMENT AND COLLATERAL ASSIGNMENT OF LEASES AND RENTS (hereinafter referred to as this "Mortgage") is made and entered into as of this _____ day of _____, 2011, by **BMRA REAL ESTATE VENTURES, LLC**, a New Hampshire liability company with a principal place of business at 453 Alpine Street, Berlin, New Hampshire  03570 (the "Mortgagor"), in favor of **NORTHWAY BANK**, a bank incorporated under the laws of the State of New Hampshire with a principal place of business at 9 Main Street, Berlin, New Hampshire 03570 (the "Mortgagee") with MORTGAGE COVENANTS, to secure:

A.      the payment of and performance of a certain promissory note of even date payable by the Mortgagor, Munce's Superior Petroleum Products, Inc., Gorham Oil, Inc., Superior Trucking, Inc., Munce's Real Estate Ventures, LLC, Harold P. Munce and Marilyn J. Munce as "Borrowers" to the Mortgagee as the "Bank" (as the same may be amended or modified, the "Note") with interest thereon, pursuant to which Mortgagor has promised to repay a certain loan in the principal amount of up to THREE HUNDRED THOUSAND DOLLARS ($300,000) (the "Loan") made by Mortgagee to the Borrowers for the purpose of financing the restructuring of the Borrowers' commercial and business operations;

B.      the payment of all other sums with interest thereon advanced in accordance herewith to protect the security and priority of this Mortgage Deed (the "Mortgage"), including the costs of collection; and

C.      the payment, performance and satisfaction of the financial liabilities and other obligations under the terms, conditions, representations, warranties and covenants contained in the Note, a certain Loan Agreement by and among the Borrowers, the Mortgagee and others of even date, as the same may be amended, (the "Loan Agreement"), the documents defined therein as the Loan Documents, all loans or obligations, now existing or hereafter arising, of any Borrower owed to the Bank (or any affiliate thereof), as the same may have been and may be hereafter amended, including, but not limited to the prior loans, and any obligations arising under

any foreign exchange contracts, interest rate swap, cap, floor or hedging agreements, or similar agreements and all obligations of Mortgagor to Mortgagee arising out of or in connection with any Automated Clearing House ("ACH") Agreements relating to the procession of ACH transactions, together with all fees, expenses, charges and other amounts outstanding and chargeable to the Mortgagor under the ACH Agreements, all as they may be amended, renewed, extended or restated from time to time (the foregoing including, without limitation, the Note and the Loan Agreement are collectively referred to herein as the "Loan Documents").

The following described premises (the "Premises"):

Certain tracts or parcels of land, together with all buildings, fixtures and improvements thereon, whether now affixed or to be affixed, located in Gilford, Belknap County, New Hampshire, more particularly described in Schedule A attached hereto and made a part hereof.

As further security for payment of the indebtedness and performance of the obligations, covenants and agreements secured hereby, the Mortgagor hereby grants, transfers, sets over and assigns, with MORTGAGE COVENANTS, to the Mortgagee:

D.      Any and all tenants, hereditaments, easements, rights of way, licenses, profits, privileges and other appurtenances belonging, relating or pertaining to the Premises;

E.      All rents, security deposits, issues and profits, revenues, royalties, bonuses, rights and benefits under any and all leases or tenancies now existing or hereafter created of the Premises or any part thereof, with the right to receive and apply the same to said indebtedness, and the Mortgagee may demand, sue for and recover such payments, but shall not be required to do so; provided, however, that so long as the Mortgagor is not in default hereunder, the right to receive and retain such rents, issues and profits is reserved to the Mortgagor.  To carry out the foregoing, the Mortgagor agrees (1) to execute and deliver to the Mortgagee such collateral assignments of leases and rents applicable to the Premises as the Mortgagee may from time to time request, while this Mortgage and the debt secured hereby are outstanding, and further (2) not to cancel, accept a surrender of, reduce the rentals under, anticipate any rentals under, or modify any such leases or tenancies, or consent to an assignment or subletting thereof, in whole or in part, without the Mortgagee's written consent.  Nothing herein shall obligate the Mortgagee to perform the duties of the Mortgagor as landlord or lessor under any such leases or tenancies, which duties the Mortgagor hereby covenants and agrees to well and punctually per-form; and

F.      All judgments, awards of damages and settlements hereafter made as a result or in lieu of any taking of the Premises or any interest therein or part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Premises or the improvements thereon or any part thereof, including any award for change of grade of streets.  In the event that any such damage cannot, in the reasonable opinion of Mortgagee, be repaired within a period of ninety (90) days, or in the event such damage materially interferes with Mortgagor's ability to operate the Premises for their intended purposes, the Mortgagee may apply all such sums or any part thereof so received on the indebtedness secured hereby in such manner as it elects, or, at its option, the entire amount or any part thereof so received may be released.  If an Event of Default has occurred under the Loan Documents the

Mortgagor hereby irrevocably authorizes and appoints the Mortgagee its attorney-in-fact to collect and receive any such judgments, awards and settlements from the authorities or entities making the same, to appear in any proceeding therefor, to give receipts and acquittances therefor, and to apply the same to payment on account of the debt secured hereby, whether then matured or not.  The Mortgagor will execute and deliver to the Mortgagee on demand such assignments and other instruments as the Mortgagee may require for said purposes and, after the occurrence of an Event of Default, will reimburse the Mortgagee for its cost (including reasonable counsel fees) in the collection of such judgments and settlements.

The Mortgagor also grants the Mortgagee a security interest in the following to secure the obligations of the Mortgagor to the Mortgagee set forth herein:

(1)     All fixtures, machinery, equipment, building materials and components whether or not incorporated into the Premises and all other tangible personal property intended for the construction, use or operation of the Premises or for use in or with the building or other improvements on the Premises, whether now or hereafter owned by the Mortgagor and now affixed or to be affixed, or now or hereafter located upon the Premises, including all appurtenant easements.  The foregoing shall include without limitation all construction materials, plumbing, heating, lighting, refrigerating, ventilating and air conditioning apparatus and equipment, elevators and elevator machinery, boilers, tanks, motors, sprinkler and fire extinguishing systems, alarm systems, screens, awnings, screen doors, storm and other detachable awnings, storm and other detachable windows and doors, and other equipment, machinery, furniture and furnishings, fixtures, and articles of personal property now and hereafter owned by the Mortgagor and now and hereafter affixed to, placed upon or used in connection with the construction or operation of the Premises, and all other purposes whether or not included in the foregoing enumeration, together with cash proceeds and non-cash proceeds of all of the foregoing, all of which are covered by this Mortgage, whether or not such property is subject to prior conditional sales agreements, chattel mortgages or other liens, excepting inventory and personal property to be consumed or sold in the normal course of business of the Mortgagor.

(2)     All "Assigned Contracts and Permits" meaning all of the contracts, declarant's rights, development rights, licenses, permits, plans, specifications, approvals, agreements and warranties, and all of Mortgagor's right, title and interest therein, whether now owned or hereafter acquired, and all proceeds and products thereof, and all accounts, deposit accounts, contract rights and general intangibles related thereto, which are in any manner related to the Premises and the improvements on or to be constructed on the Premises.

(3)     Any and all additions, accessions, substitutions or replacements to or for any of the foregoing.

(4)     Any and all products and proceeds of any or all of the foregoing, including, without limitation, cash and cash equivalents, tax refunds, and the proceeds of

insurance policies providing coverage against the loss or destruction of or damage to any of such collateral.

(5)     All of the Mortgagor's after-acquired property of the kinds and types described in the foregoing paragraphs.

1.     <u>Representation, Warranties and Covenants of the Mortgagor</u>.  In addition to the MORTGAGE COVENANTS, the Mortgagor further represents, warrants, covenants and agrees, as appropriate, with the Mortgagee, its successors and assigns, as follows:

1.1     <u>Title</u>.  The Mortgagor, for itself and its successors and assigns, does hereby covenant, grant and agree to and with the Mortgagee and its successors and assigns, that until the delivery hereof it is the lawful owner of the Premises seized and possessed thereof in its own right in fee simple, has full power and lawful authority to grant and convey the same in manner aforesaid that the Premises are free and clear from any encumbrance whatsoever, that except as otherwise recited in <u>Schedule A</u>, it and its successors shall warrant and defend the same to the Mortgagee and its successors and assigns against the lawful claims and demands of any person or persons whatsoever, except as otherwise herein recited; and that, except as otherwise recited in Schedule A, it will not cause or permit any lien to arise against the Premises which is superior to the lien of this Mortgage ("Permitted Encumbrances").

1.2     <u>Payment and Performance</u>.  To pay and perform the Note secured hereby and interest thereon as the same shall become due and payable, and also any other indebtedness that may accrue to the Mortgagee under the terms of this Mortgage, and to perform all other agreements set forth herein and in the Loan Documents.

1.3     <u>Insurance</u>.  That the Mortgagor will keep the buildings, improvements and personal property now existing or hereafter erected or located on the Premises and the interests and liabilities incident to the ownership thereof insured against loss by fire and such other hazards, casualties and contingencies, and in manner, form and companies in the manner set forth in the Loan Agreement; and will escrow payments on account of such insurance premiums with Mortgagee to the extent provided in the Loan Agreement.

1.4     <u>Taxes and Assessments</u>.  That the Mortgagor will pay, before the same become delinquent or any penalty attaches thereto for nonpayment, all taxes, assessments and charges of every nature that may now or hereafter be levied or assessed, upon the Premises or any part thereof, or upon the rents, issues, income or profits thereof, whether any or all of said taxes, assessments or charges be levied directly or indirectly, and will pay, before the same become delinquent or any penalty attached thereto for the nonpayment, all taxes which by reason of nonpayment create a lien prior to the lien of the Mortgage and will thereupon submit to the Mortgagee such evidence of the due and punctual payment of such taxes, etc. as the Mortgagee may reasonably require; and will escrow payments on account of real estate taxes with Mortgagee, in an account bearing interest, upon Mortgagee's request or upon the occurrence of an Event of Default under the Loan Agreement.

1.5     Maintenance of the Premises.  That the Mortgagor will keep protected in good order, repair and condition (reasonable wear and tear and casualty insured against excepted) at all times the buildings and improvements (including the Mortgagor's fixtures) now standing or hereafter erected or placed upon the Premises and any and all of the Mortgagor's appurtenances, apparatus and articles of personal property, including, but not limited to, furniture, furnishings and equipment, now or hereafter in or attached to or used in connection with said buildings or improvements, promptly replacing any of the aforesaid which may become lost, destroyed or unsuitable for use; will always maintain in good order and condition all the facilities, easements, works, and ways set forth in the description of the Premises, whether located upon the Premises hereby mortgaged or elsewhere; and will not commit or suffer any strip or waste of the Premises, or any violation of any law, regulation, ordinance or contract affecting the Premises, and will not commit or suffer any demolition, removal or material alteration of any buildings or improvements (including fixtures) on the Premises without the written consent of the Mortgagee.  The Mortgagor shall maintain and preserve the parking areas, passageways and drives, now or hereafter existing on the Premises.

1.6     Books and Records.  That the Mortgagor shall maintain full and correct books and records showing in detail the earnings and expenses of the Premises and will permit the Mortgagee and its representatives to examine said books and records and all supporting vouchers and data at any reasonable time, during business hours, from time to time upon prior request by the Mortgagee.

1.7     Other Proceedings.  That if any action or proceeding be commenced, excepting an action by the Mortgagor against the Mortgagee, to which action or proceeding the Mortgagee is made a party by reason of the execution of the Mortgage or the Note which it secures, or in which it becomes necessary to defend or uphold the lien of the Mortgage, all reasonable sums paid by the Mortgagee for the expense of any litigation to prosecute or defend the rights and lien created hereby including reasonable attorneys' fees, shall be paid by the Mortgagor, together with interest thereon from date of payment at the highest rate specified in the Note secured hereby, and any such sum, and the interest thereon, shall be immediately due and payable and be secured hereby, having the benefit of the lien hereby created, as a part thereof and of its priority.  The Mortgagee shall give the Mortgagor prompt notice of the initiation of any such action or proceeding.

1.8     Consent to Release, Etc.  Without affecting the liability of the Mortgagor or, any other person (except any person expressly released in writing) for payment of any indebtedness secured hereby or for performance of any obligation contained herein, and without affecting the rights of the Mortgagee with respect to any security not expressly released in writing, the Mortgagee may at any time and from time to time, either before or after the maturity of the Note and without notice or consent:

(a)     Release any person liable for payment of all or any part of the indebtedness or for performance of any obligation;

(b)     Make any agreement extending the time or otherwise altering the terms of payment of all or any part of the indebtedness, or modifying or waiving any obligation, or

subordinating, modifying or otherwise dealing with the lien or charge hereof; provided, however, that nothing herein shall entitle Mortgagee to increase Mortgagor's payment or obligations hereunder without Mortgagor's consent.

(c)      Exercise or refrain from exercising or waive any right the Mortgagee may have;

(d)      Accept additional security of any kind; or

(e)      Release or otherwise deal with any property, real or personal, securing the indebtedness, including all or any part of the property mortgaged hereby.

1.9    <u>Zoning, Etc</u>.  If at any time the then-existing use or occupancy of the Premises shall, pursuant to any zoning or other law, ordinance or regulation, be permitted only so long as such use or occupancy shall continue, that the Mortgagor shall not cause or permit such use or occupancy to be discontinued without the prior written consent of the Mortgagee.

1.10    <u>Leases</u>.  To enter into leases of the Premises only in such terms and conditions as are reasonably approved by the Mortgagee such approval not to be unreasonably delayed or withheld; all of such leases to be subordinated to the Mortgage and the lien hereof.

1.11    <u>Due on Sale</u>.  This Mortgage is not assignable or assumable and if all or any part of the Premises is sold or conveyed, or if there are transfers of any interests in the Mortgagor prohibited by the Loan Agreement, then the Mortgagee may, at its option, require immediate payment in full of all sums secured by this Mortgage.

1.12    <u>Underground Tanks</u>.  The Mortgagor will comply with all applicable federal and state laws and regulations, as the same may be amended from time to time, relating to the inspection and replacement of underground fuel storage tanks located on the Premises.

1.13    <u>Hazardous Waste</u>.   The Mortgagor represents that the Premises do not contain any hazardous wastes, hazardous substances (including, without limitation, medical or infectious waste), hazardous materials, toxic substances or toxic pollutants, as those terms are used in the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Hazardous Materials Transportation Act and the Toxic Substances Control Act, the Clean Air Act, the Clean Water-Act, or any similar state or local law, or in any regulations promulgated pursuant thereto, or in any other applicable law as the same may be amended from time to time.  The Mortgagor covenants to strictly comply with the requirements of all such laws and to promptly notify the Mortgagee of the presence in or on the Premises of any materials, the use, storage, transportation or disposal of which is regulated by such laws, unless Mortgagor is using or storing such materials in accordance with applicable law. The Mortgagor hereby covenants to defend, indemnify, and hold the Mortgagee harmless from and against all loss, cost, damage and liability, including reasonable attorneys' fees and costs of litigation, suffered or incurred by the Mortgagee on account of the presence of any such materials in or on the Premises, including, without limitation, any such loss, cost, damage or liability arising from a violation of any of such laws.

1.14    Future Advances . Future advances from the Mortgagee shall be secured by this Mortgage as evidenced by the Note secured hereby.

1.15    Compliance with Laws, Etc.  The Mortgagor will comply with all regulations, condominium documentation, covenants, rules, ordinances, statutes, codes, permits, orders and decrees applicable to the Mortgagor, or to the Premises, the use, occupancy or condition thereof or any part thereof.  The Mortgagor, if an entity other than a natural person, will, so long as it is owner of the Premises, do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges as such an entity under the laws of the state of its incorporation including without limitation the payment of all fees and other charges required in connection therewith.  The Mortgagor shall have the right to contest by appropriate legal proceedings, but without cost or expense to the Mortgagee, the validity of any laws, ordinances, order, rules and regulations affecting the Premises if compliance therewith may legally be held in abeyance without the sufferance of any charge, lien or liability against the Premises, and the Mortgagor may postpone compliance therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay compliance, provided the Mortgagee s furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such noncompliance or delay.

1.16    Mechanics Liens, Etc.  The Mortgagor will pay, as such shall become due, all lawful claims and demands of mechanics, materialmen, laborers and other which, if unpaid, might result in, or permit the creation of, a lien on the Premises or any part thereof, or on the revenues, rents, issues, income and profits arising therefrom.  Except as permitted under the Loan Agreement, the Mortgagor will not create or permit to be created and will promptly discharge any mortgage, lien, or charge on the Premises or any part thereof or on the interest of the Mortgagor or the Mortgagee therein, and the Mortgagor will do or cause to be done everything reasonably necessary so that the lien hereof shall be fully preserved, at the cost of the Mortgagor, without expense to the Mortgagee.  The Mortgagor shall have the right to contest such claims or demands by appropriate legal proceedings, but without cost or expense to the Mortgagee, if such claim or demand may legally be held in abeyance without the sufferance of any charge, lien or liability against the Mortgaged Property, and the Mortgagor may postpone satisfaction therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay satisfaction, provided the Mortgagee is furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such contest and refusal to satisfy pending contest.

1.17    Commercial Purpose.  The Mortgagor warrants that this Mortgage is given primarily for business, commercial or agricultural purpose.  The Premises subject to this Mortgage are not used exclusively for residential purposes and are not the primary residence of the Mortgagor.

2.    Payments, Etc. by the Mortgagee.  If the Mortgagor shall neglect or refuse to keep in good repair the property conveyed by this Mortgage, to replace the same as herein agreed, to maintain and pay the premiums for insurance which may be required under Paragraph l.3 or to

pay and discharge all taxes, assessments, charges and liens of every nature and to whomever assessed, as provided for in Paragraphs l.4 and l.16, the Mortgagee may, at its election, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments, charges and liens and any amounts paid as a result thereof, together with interest thereon at the highest rate of interest specified in the Note secured hereby from the date of payment, shall be immediately due and payable by the Mortgagor to the Mortgagee, and until paid shall be added and become part of the principal debt secured hereby, and the same may be collected as a part of said principal debt in any suit herein or upon the Note; or the Mortgagee, by the payment of any tax, assessment or charge, may, if it sees fit if allowed by law, be thereby subrogated to the rights of the state, county, village and all political or governmental subdivisions.  No such advances shall be deemed to relieve the Mortgagor of any default hereunder or impair any right or remedy consequent thereon, and the exercise of the rights to make advances granted in this paragraph shall be optional with the Mortgagee and not obligatory, and the Mortgagee shall not in any case be liable to the Mortgagor for a failure to exercise any such right.  The Mortgagee shall have no responsibility with respect to the legality, validity and priority of any such claim, lien, encumbrance, tax, assessment and premium, and of the amount necessary to be paid in satisfaction thereof.

3.  Default; Remedies.

3.1    The Mortgagor shall be in default under this Mortgage upon the occurrence of an event of default under *any* of the Loan Documents, including the Loan Agreement and the expiration of the grace periods, if any, as specified in the Loan Agreement (herein called the "Events of Default").  Such Events of Default shall include without limitation, the following:

(a)    Default in the due and punctual payment of any payment of principal of or premium, if any, or interest on the Note and such default shall continue beyond the expiration of the applicable period of grace, if any; or

(b)    Default in payment or performance under any of the obligations under the Loan Documents, and such default shall continue beyond the expiration of the applicable period of grace, if any; or

(c)    Default in the due performance or observance of any covenant or provision of this Mortgage and such default shall continue beyond the expiration of the applicable period of grace, if any.

3.2    Upon the occurrence of an Event of Default which has not been cured within any applicable remedy period or demand under any demand instrument, and at the option of the Mortgagee, (a) the Mortgagee may declare the obligations of the Mortgagor to the Mortgagee to be immediately due and payable, (b) the Mortgagee may immediately take possession of the Premises, and (c) the Mortgagee may forthwith exercise all other rights and remedies provided herein, or in any of the other Loan Documents, or which may be available to the Mortgagee by law, including without limitation, the STATUTORY POWER OF SALE.

3.3    Notwithstanding any other provision set forth herein and not in limitation thereof, this Mortgage is upon the STATUTORY CONDITIONS as well as the other terms and conditions hereof, for any breach of which the Mortgagee shall have the STATUTORY POWER OF SALE.

3.4    All rights and remedies set forth herein shall be cumulative and concurrent, and may be pursued singly, successively, or together, at the Mortgagee's sole discretion, and may be exercised as often as occasion thereof shall occur.

3.5    If the Mortgagor, its successors or assigns, pays the Mortgagee, all amounts under the Loan Documents, complies with and performs all terms and obligations as set forth in the Note and the Loan Documents, then the Mortgage shall be void; otherwise it shall remain in full force and effect.

4.    <u>Possession by Mortgagee</u>.

4.1    If the Mortgagee shall take possession of the Premises as permitted hereby, then in addition to, and not in limitation of, the Mortgagee's STATUTORY POWER OF SALE, the Mortgagee may:

(a)    hold, manage, operate, and lease the Premises to the Mortgagor or to any other entity on such terms and for such period(s) of time as the Mortgagee may deem proper, and the provisions of any lease made by the Mortgagee pursuant hereto shall be valid and binding upon the Mortgagor notwithstanding the fact that the Mortgagee's right of possession may terminate or this Mortgage may be satisfied of record prior to the expiration of the term of such lease;

(b)    make such alterations, additions, improvements, renovations, repairs, and replacements to the Premises as the Mortgagee may reasonably deem proper;

(c)    remodel such improvements so as to make the same available in whole or in part for business purposes;

(d)    collect the rents, issues, and profits arising from the Premises, past due and thereafter becoming due, and apply the same, in such order of priority as the Mortgagee may determine, to the payment of all charges and commissions incidental to the collection of rents, the management of the Premises, and the obligations and all sums or charges required to be paid by the Mortgagor hereunder;

(e)    take any other action the Mortgagee deems necessary or appropriate in its sole discretion to preserve, protect, or improve the Premises.

4.2    All monies advanced by the Mortgagee for the above purposes and not repaid out of the rents collected shall immediately and without demand be repaid by the Mortgagor to the Mortgagee, together with interest thereon at the same rate as provided in the Note, and shall be added to the- principal indebtedness secured hereby.

4.3     The taking of possession and the collection of rents by the Mortgagee as described above shall not be construed to be an affirmation of any lease of the Premises or any part thereof, and the Mortgagee, or any purchaser at any foreclosure sale, may terminate any such lease at any time, whether or not such taking of possession and collection of rents has occurred.

5.     <u>Foreclosure Pursuant to Power of Sale</u>.

5.1     Upon default, the Mortgagee or its legal representatives or assigns may on such terms and conditions as the Mortgagee deems appropriate in its sole discretion and pursuant to the STATUTORY POWER OF SALE, sell the Premises by public sale to the highest bidder as provided herein and in NH RSA 479, et al., as such statutes may be amended from time to time.

5.2     If the Mortgagee invokes the STATUTORY POWER OF SALE, the Mortgagee may, without further demand upon the Mortgagor, sell the Premises or any estate therein, in one or more parcels, to the highest bidder for cash or other consideration acceptable to the Mortgagee at public sale to be held upon the Premises.

5.3     In the event that the Mortgagee seeks to enforce its rights and remedies hereunder, the Mortgagor shall fully cooperate with the Mortgagee in any foreclosure of the Premises scheduled by the Mortgagee, including without limitation; (i) providing the Mortgagee with any information concerning the Premises reasonably requested by the Mortgagee, such as rental income information, taxes, water assessment charges and any maintenance costs associated with the Premises; (ii) arranging with the Mortgagee two (2) preview dates, each three hours in length, prior to the dates of any foreclosure sale; and (iii) granting the Mortgagee unlimited access to the Premises on the date of the foreclosure sale for one hour before and one hour after the foreclosure sale, except that Mortgagee shall not interfere with the conduct of Mortgagor's business operations on such Premises.  In addition, the Mortgagor shall, without waiving its right to enjoin a foreclosure under NH RSA 479, under no circumstances and in no event in any way interfere with, any foreclosure sale of the Premises scheduled by the Mortgagee.

5.4     The deed given by reason of such sale shall convey to the purchaser an indefeasible title to the Premises, discharged of all rights of redemption with respect to this mortgage by the Mortgagor and its successors or assigns, or any person claiming from or under it or them.  The Mortgagee shall apply the proceeds of such sale first to all costs of notice and sale of the Premises including reasonable attorneys', accountants' and appraisers' fees, then to any and all accrued but unpaid interest due to the Mortgagee, and thereafter to the principal indebtedness evidenced by the Note and secured hereby, and to the other indebtedness secured hereby.  Any excess may be paid to others having a lien on the Premises not having priority over this Mortgage and if none, then to the Mortgagor.  The Mortgagor shall be liable for any deficiency.

5.5     In the event of foreclosure, at the option of the Mortgagee, the interest of each of the Mortgagor and the Mortgagee herein may be sold as a single unit together with such personal property, furniture, furnishings, fixtures, machinery, and equipment as may secure the Note or be secured by the Loan Documents.

5.6     If the provisions of the Uniform Commercial Code apply, any property or security given to secure the indebtedness secured hereby may be sold with or as a part of the Premises, or any part thereof, at one or more foreclosure sales, and any notice required under such provisions shall be fully satisfied by the notice provided to be given hereby in execution of the STATUTORY POWER OF SALE.

6.     Security Agreement.  The Mortgage is among other things intended to be a security agreement and financing statement with respect to the personal property and fixtures described and included in the Mortgage, and all additions, accessions, substitutions and replacements thereto and therefor, together with the proceeds thereof, and all of which are hereinafter referred to as the collateral and the Mortgagor hereby grants and conveys to Mortgagee, its successors and assigns, a security interest therein.  That upon default of any material term, condition or covenant of the Mortgage and acceleration of any indebtedness hereby secured, the Mortgagee may, at its discretion, require the Mortgagor to assemble the collateral and make it available to the Mortgagee at a place reasonably convenient to both parties to be designated by the Mortgagee.  That the Mortgagee shall give the Mortgagor notice, by registered mail, postage prepaid, of the time and place of any public sale of any of the collateral or of the time any private sale or other intended disposition thereof is to be made by sending notice to the Mortgagor at least ten (10) days before the time of the sale or other disposition, which provisions for notice the Mortgagor and the Mortgagee agree are reasonable; provided, however, that nothing herein shall preclude the Mortgagee from proceeding as to both real and personal property in accordance with the Mortgagee's rights and remedies in respect of the real property.  The Mortgagee shall have all of the remedies of a secured party under the Uniform Commercial Code as now in effect in the state of New Hampshire, and such further remedies as may from time to time hereafter be provided in New Hampshire for a secured party.  The Mortgagor agrees that all rights of the Mortgagee as to said collateral and as to said real estate, and rights and interest appurtenant thereto, may have exercised together or separately and further agrees that in exercising its power of sale as to said collateral and as to said real estate, and rights and interest appurtenant thereto, the Mortgagee may sell the collateral or any part thereof, either separately from or together with the sale real estate, rights and interests appurtenant thereto, or any part thereof, all as the Mortgagee may in its discretion elect.

For the purpose of this Mortgage constituting a financing statement under the Uniform Commercial Code the addresses of the parties are:

| | |
|---|---|
| The Mortgagor (Debtor) | BMRA REAL ESTATE VENTURES, LLC |
| | 453 Alpine Street |
| | Berlin, New Hampshire 03570 |
| | |
| | and |
| | |
| The Mortgagee (Secured Party) | NORTHWAY BANK |
| | 9 Main Street |
| | Berlin, New Hampshire 03570 |

7.    Appointment of Receiver.  The Mortgagee may, at any time following an Event of Default hereunder which has not been cured within any applicable remedy period or demand under any demand instrument (subject to any limitations in the Loan Documents), apply to any court having jurisdiction for appointment of receiver.  That court shall promptly appoint a receiver of the Premises, who shall be authorized to receive and apply the income, profits, issues, rents and revenues from whatever source derived.  The rents, profits, income, issues, and residues shall be applied by the receiver according to the lien of this Mortgage and the practice of the court.  The appointment of the receiver shall be made by such court as an admitted equity in a matter of absolute right to the Mortgagee, and without references to the adequacy or inadequacy of the value of the Premises or to the solvency or insolvency of the Mortgagor or any co-borrower or guarantor of the obligations secured hereby.

8.    General Provisions.  The Mortgagor and the Mortgagee further agree that:

8.1    Homestead.  There is no homestead interest in the Premises.

8.2    Waivers.  (a) Except as otherwise specifically provided in this Mortgage, the Note and the other Loan Documents, the Mortgagor waives demand, notice of any action taken in reliance on this Mortgage, and all other demands and notices of any description.

(b)    No delay or omission on the part of the Mortgagee in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or of any other right or remedy under this Mortgage.  A waiver on any one occasion shall not be construed as a bar to or waiver of any such right and/or remedy on any future occasion.  No single or partial exercise of any power hereunder shall preclude other or future exercise thereof or the exercise of any other right; and

(c)    That receipt and disposition of rents, income of the Premises, insurance proceeds, eminent domain awards, or any other sums under the provisions of the Loan Documents by the Mortgagee shall not be a waiver or release of any rights of the Mortgagee, including but not limited to, the right of foreclosure or acceleration of the Note, whether such receipt or disposition shall be before or after exercise of any such rights.

8.3    Binding Agreement.  This Mortgage shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, legal representatives, successors, and assigns; provided, however, that any assumption of any obligations of Mortgagor hereunder shall not constitute a release of the party whose obligation is being assumed without the Mortgagee's prior written consent.

8.4    Amendment.  This Mortgage shall not be changed in any respect except by written instrument signed by the parties hereto.

8.5    Governing Law.  This Mortgage and all rights and obligations hereunder, including matters of construction, validity, and performance, shall be governed by the laws of the State of New Hampshire.

8.6    Severability.  If any term, condition, or provision of this Mortgage or the application thereof to any person or circumstance shall, to any extent, be held invalid or unenforceable according to law, then the remaining terms, conditions, and provisions of this Mortgage, or the application of any such invalid or unenforceable term, condition or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby, and each term, condition, and provision of this Mortgage shall be valid and enforced to the fullest extent permitted by law.

8.7    Headings.  The descriptive headings of the sections of this Mortgage have been inserted for convenience and reference only and shall not control or affect the meaning or construction of any of the contents hereof.

8.8    Estoppel Certificate.  The Mortgagor, within five (5) days after being given notice as provided below, will furnish to the Mortgagee a written statement duly acknowledged by the Mortgagor or its representative certifying the principal amount then outstanding on the Note and certifying that no offsets or defenses exist against the Mortgage indebtedness (or explaining such offsets or defenses to the extent they exist).

8.9    Notice.  Any demand or notice required or permitted hereunder shall be effective if either: (a) hand-delivered to the addressee, or (b) deposited in the mail, registered or certified, return receipt requested and postage prepaid, or delivered to a private express company addressed to the addressee: (i) at the address shown at the beginning of this Mortgage, or (ii) if such party has provided the other in writing with a change of address, at the last address so provided.  Any notice or demand mailed as provided in this paragraph shall be deemed given and received on the earlier of:

> (A)    the date received; or

> (B)    the date of delivery, refusal or non-delivery as indicated on the return receipt, if sent by mail or private express as provided above.

8.10    Gender and Number.  All words denoting gender or number shall be construed to include any other gender or number as the context and facts require.

8.11    Conflict with other Loan Documents.  In the event of any conflict between the terms, covenants, conditions and restrictions contained in the Loan Documents, the term, covenant and condition or restriction which grants the greater benefit upon the Mortgagee shall control.  The determination as to which term, covenant, condition or restriction is the more beneficial shall be made by the Mortgagee in its reasonable discretion.

8.12    Waiver of Right of Exemption.  The Mortgagor, for the consideration aforesaid, hereby waives all rights of exemption in the Premises as the same are now or here after provided of the provisions of any federal or state law, including, without limitation, 11 U.S.C. §522.

8.13    Replacement of Security Documents.  Upon receipt of an affidavit of an officer of the Mortgagee as to the loss, theft, destruction or mutilation of the Note or any other security

document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon cancellation of such Note or other security document, the Mortgagor will issue, in lieu thereof, a replacement note or other security document in the same principal amount thereof and otherwise of like tenor.

8.14   Waiver of Jury Trial.  THE MORTGAGOR AND THE MORTGAGEE MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF MORTGAGEE RELATING TO THE ADMINISTRATION OF THE LOANS OR ENFORCEMENT OF THE LOAN DOCUMENTS, AND AGREE THAT NEITHER PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  EXCEPT AS PROHIBITED BY LAW OR OTHERWISE PROVIDED IN THE LOAN DOCUMENTS, THE MORTGAGOR HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, ENHANCED COMPENSATORY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES, AND REASONABLE ATTORNEYS FEES IN THE EVENT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE BANK, ITS AGENTS AND EMPLOYEES. THE MORTGAGOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF MORTGAGEE HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT MORTGAGEE WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER.  THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR MORTGAGEE TO ACCEPT THIS MORTGAGE AND MAKE THE LOAN.

[Signature page follows]

IN WITNESS WHEREOF, the Mortgagor has executed this Mortgage, Security Agreement and Collateral Assignment of Leases and Rents as of the ___ day of _____, 2011.

MORTGAGOR:

BMRA REAL ESTATE VENTURES, LLC

_____          By:_____
Witness                                   Name:
                                          Title:

MORTGAGEE:

NORTHWAY BANK

_____       By:_____
Witness                                      Thomas Caruso, Its Duly
                                             Authorized Senior Vice President


STATE OF NEW HAMPSHIRE
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by _____, duly authorized _____ of BMRA REAL ESTATE VENTURES, LLC, a New Hampshire limited liability company, on behalf of the same.


STATE OF NEW HAMPSHIRE
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by Thomas Caruso, duly authorized Senior Vice President of NORTHWAY BANK, a bank organized under the laws of the State of New Hampshire, on behalf of the same.

_____
Justice of the Peace/Notary Public
My Commission Expires:
Notary Seal

J:\WDOX\DOCS\CLIENTS\020746\093343\M1806008.DOC

## SCHEDULE A

### Legal Description

The following tracts of land, with the buildings, improvements and fixtures thereon, and interests in real estate, situated in Gilford, Belknap County, New Hampshire, more particularly described as follows:

[To be completed]

*For recorder's use:*
***Tax Stamp****: $ _____*
***Recording Fee****: $ _____*
***Return to****: Account # _____*
*Devine, Millimet & Branch - Attn: mrj*
*111 Amherst Street, Manchester, NH 03101*

_____
**(Property Located in New Hampton, Belknap County, New Hampshire)**

## MORTGAGE, SECURITY AGREEMENT AND
## COLLATERAL ASSIGNMENT OF LEASES AND RENTS

THIS MORTGAGE, SECURITY AGREEMENT AND COLLATERAL ASSIGNMENT OF LEASES AND RENTS (hereinafter referred to as this "Mortgage") is made and entered into as of this _____ day of _____, 2011, by **MUNCE'S REAL ESTATE VENTURES, LLC**, a New Hampshire liability company with a principal place of business at 453 Alpine Street, Berlin, New Hampshire 03570 (the "Mortgagor"), in favor of **NORTHWAY BANK**, a bank incorporated under the laws of the State of New Hampshire with a principal place of business at 9 Main Street, Berlin, New Hampshire 03570 (the "Mortgagee") with MORTGAGE COVENANTS, to secure:

  A.  the payment of and performance of a certain promissory note of even date payable by the Mortgagor, Munce's Superior Petroleum Products, Inc., Gorham Oil, Inc., Superior Trucking, Inc., BMRA Real Estate Ventures, LLC, Harold P. Munce and Marilyn J. Munce as "Borrowers" to the Mortgagee as the "Bank" (as the same may be amended or modified, the "Note") with interest thereon, pursuant to which Mortgagor has promised to repay a certain loan in the principal amount of up to THREE HUNDRED THOUSAND DOLLARS ($300,000) (the "Loan") made by Mortgagee to the Borrowers for the purpose of financing the restructuring of the Borrowers' commercial and business operations;

  B.  the payment of all other sums with interest thereon advanced in accordance herewith to protect the security and priority of this Mortgage Deed (the "Mortgage"), including the costs of collection; and

  C.  the payment, performance and satisfaction of the financial liabilities and other obligations under the terms, conditions, representations, warranties and covenants contained in the Note, a certain Loan Agreement by and among the Borrowers, the Mortgagee and others of even date, as the same may be amended, (the "Loan Agreement"), the documents defined therein as the Loan Documents, all loans or obligations, now existing or hereafter arising, of any Borrower owed to the Bank (or any affiliate thereof), as the same may have been and may be hereafter amended, including, but not limited to the prior loans, and any obligations arising under

any foreign exchange contracts, interest rate swap, cap, floor or hedging agreements, or similar agreements and all obligations of Mortgagor to Mortgagee arising out of or in connection with any Automated Clearing House ("ACH") Agreements relating to the procession of ACH transactions, together with all fees, expenses, charges and other amounts outstanding and chargeable to the Mortgagor under the ACH Agreements, all as they may be amended, renewed, extended or restated from time to time (the foregoing including, without limitation, the Note and the Loan Agreement are collectively referred to herein as the "Loan Documents").

The following described premises (the "Premises"):

Certain tracts or parcels of land, together with all buildings, fixtures and improvements thereon, whether now affixed or to be affixed, located in New Hampton, Belknap County, New Hampshire, more particularly described in <u>Schedule A</u> attached hereto and made a part hereof.

As further security for payment of the indebtedness and performance of the obligations, covenants and agreements secured hereby, the Mortgagor hereby grants, transfers, sets over and assigns, with MORTGAGE COVENANTS, to the Mortgagee:

D.    Any and all tenants, hereditaments, easements, rights of way, licenses, profits, privileges and other appurtenances belonging, relating or pertaining to the Premises;

E.    All rents, security deposits, issues and profits, revenues, royalties, bonuses, rights and benefits under any and all leases or tenancies now existing or hereafter created of the Premises or any part thereof, with the right to receive and apply the same to said indebtedness, and the Mortgagee may demand, sue for and recover such payments, but shall not be required to do so; <u>provided</u>, <u>however</u>, that so long as the Mortgagor is not in default hereunder, the right to receive and retain such rents, issues and profits is reserved to the Mortgagor.  To carry out the foregoing, the Mortgagor agrees (1) to execute and deliver to the Mortgagee such collateral assignments of leases and rents applicable to the Premises as the Mortgagee may from time to time request, while this Mortgage and the debt secured hereby are outstanding, and further (2) not to cancel, accept a surrender of, reduce the rentals under, anticipate any rentals under, or modify any such leases or tenancies, or consent to an assignment or subletting thereof, in whole or in part, without the Mortgagee's written consent.  Nothing herein shall obligate the Mortgagee to perform the duties of the Mortgagor as landlord or lessor under any such leases or tenancies, which duties the Mortgagor hereby covenants and agrees to well and punctually per-form; and

F.    All judgments, awards of damages and settlements hereafter made as a result or in lieu of any taking of the Premises or any interest therein or part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Premises or the improvements thereon or any part thereof, including any award for change of grade of streets.  In the event that any such damage cannot, in the reasonable opinion of Mortgagee, be repaired within a period of ninety (90) days, or in the event such damage materially interferes with Mortgagor's ability to operate the Premises for their intended purposes, the Mortgagee may apply all such sums or any part thereof so received on the indebtedness secured hereby in such manner as it elects, or, at its option, the entire amount or any part thereof so received may be released.  If an Event of Default has occurred under the Loan Documents the

Mortgagor hereby irrevocably authorizes and appoints the Mortgagee its attorney-in-fact to collect and receive any such judgments, awards and settlements from the authorities or entities making the same, to appear in any proceeding therefor, to give receipts and acquittances therefor, and to apply the same to payment on account of the debt secured hereby, whether then matured or not. The Mortgagor will execute and deliver to the Mortgagee on demand such assignments and other instruments as the Mortgagee may require for said purposes and, after the occurrence of an Event of Default, will reimburse the Mortgagee for its cost (including reasonable counsel fees) in the collection of such judgments and settlements.

The Mortgagor also grants the Mortgagee a security interest in the following to secure the obligations of the Mortgagor to the Mortgagee set forth herein:

(1)     All fixtures, machinery, equipment, building materials and components whether or not incorporated into the Premises and all other tangible personal property intended for the construction, use or operation of the Premises or for use in or with the building or other improvements on the Premises, whether now or hereafter owned by the Mortgagor and now affixed or to be affixed, or now or hereafter located upon the Premises, including all appurtenant easements. The foregoing shall include without limitation all construction materials, plumbing, heating, lighting, refrigerating, ventilating and air conditioning apparatus and equipment, elevators and elevator machinery, boilers, tanks, motors, sprinkler and fire extinguishing systems, alarm systems, screens, awnings, screen doors, storm and other detachable awnings, storm and other detachable windows and doors, and other equipment, machinery, furniture and furnishings, fixtures, and articles of personal property now and hereafter owned by the Mortgagor and now and hereafter affixed to, placed upon or used in connection with the construction or operation of the Premises, and all other purposes whether or not included in the foregoing enumeration, together with cash proceeds and non-cash proceeds of all of the foregoing, all of which are covered by this Mortgage, whether or not such property is subject to prior conditional sales agreements, chattel mortgages or other liens, excepting inventory and personal property to be consumed or sold in the normal course of business of the Mortgagor.

(2)     All "Assigned Contracts and Permits" meaning all of the contracts, declarant's rights, development rights, licenses, permits, plans, specifications, approvals, agreements and warranties, and all of Mortgagor's right, title and interest therein, whether now owned or hereafter acquired, and all proceeds and products thereof, and all accounts, deposit accounts, contract rights and general intangibles related thereto, which are in any manner related to the Premises and the improvements on or to be constructed on the Premises.

(3)     Any and all additions, accessions, substitutions or replacements to or for any of the foregoing.

(4)     Any and all products and proceeds of any or all of the foregoing, including, without limitation, cash and cash equivalents, tax refunds, and the proceeds of

insurance policies providing coverage against the loss or destruction of or damage to any of such collateral.

(5)     All of the Mortgagor's after-acquired property of the kinds and types described in the foregoing paragraphs.

1.     <u>Representation, Warranties and Covenants of the Mortgagor</u>.  In addition to the MORTGAGE COVENANTS, the Mortgagor further represents, warrants, covenants and agrees, as appropriate, with the Mortgagee, its successors and assigns, as follows:

1.1     <u>Title</u>.  The Mortgagor, for itself and its successors and assigns, does hereby covenant, grant and agree to and with the Mortgagee and its successors and assigns, that until the delivery hereof it is the lawful owner of the Premises seized and possessed thereof in its own right in fee simple, has full power and lawful authority to grant and convey the same in manner aforesaid that the Premises are free and clear from any encumbrance whatsoever, that except as otherwise recited in <u>Schedule A</u>, it and its successors shall warrant and defend the same to the Mortgagee and its successors and assigns against the lawful claims and demands of any person or persons whatsoever, except as otherwise herein recited; and that, except as otherwise recited in Schedule A, it will not cause or permit any lien to arise against the Premises which is superior to the lien of this Mortgage ("Permitted Encumbrances").

1.2     <u>Payment and Performance</u>.  To pay and perform the Note secured hereby and interest thereon as the same shall become due and payable, and also any other indebtedness that may accrue to the Mortgagee under the terms of this Mortgage, and to perform all other agreements set forth herein and in the Loan Documents.

1.3     <u>Insurance</u>.  That the Mortgagor will keep the buildings, improvements and personal property now existing or hereafter erected or located on the Premises and the interests and liabilities incident to the ownership thereof insured against loss by fire and such other hazards, casualties and contingencies, and in manner, form and companies in the manner set forth in the Loan Agreement; and will escrow payments on account of such insurance premiums with Mortgagee to the extent provided in the Loan Agreement.

1.4     <u>Taxes and Assessments</u>.  That the Mortgagor will pay, before the same become delinquent or any penalty attaches thereto for nonpayment, all taxes, assessments and charges of every nature that may now or hereafter be levied or assessed, upon the Premises or any part thereof, or upon the rents, issues, income or profits thereof, whether any or all of said taxes, assessments or charges be levied directly or indirectly, and will pay, before the same become delinquent or any penalty attached thereto for the nonpayment, all taxes which by reason of nonpayment create a lien prior to the lien of the Mortgage and will thereupon submit to the Mortgagee such evidence of the due and punctual payment of such taxes, etc. as the Mortgagee may reasonably require; and will escrow payments on account of real estate taxes with Mortgagee, in an account bearing interest, upon Mortgagee's request or upon the occurrence of an Event of Default under the Loan Agreement.

1.5    <u>Maintenance of the Premises</u>.  That the Mortgagor will keep protected in good order, repair and condition (reasonable wear and tear and casualty insured against excepted) at all times the buildings and improvements (including the Mortgagor's fixtures) now standing or hereafter erected or placed upon the Premises and any and all of the Mortgagor's appurtenances, apparatus and articles of personal property, including, but not limited to, furniture, furnishings and equipment, now or hereafter in or attached to or used in connection with said buildings or improvements, promptly replacing any of the aforesaid which may become lost, destroyed or unsuitable for use; will always maintain in good order and condition all the facilities, easements, works, and ways set forth in the description of the Premises, whether located upon the Premises hereby mortgaged or elsewhere; and will not commit or suffer any strip or waste of the Premises, or any violation of any law, regulation, ordinance or contract affecting the Premises, and will not commit or suffer any demolition, removal or material alteration of any buildings or improvements (including fixtures) on the Premises without the written consent of the Mortgagee. The Mortgagor shall maintain and preserve the parking areas, passageways and drives, now or hereafter existing on the Premises.

1.6    <u>Books and Records</u>.  That the Mortgagor shall maintain full and correct books and records showing in detail the earnings and expenses of the Premises and will permit the Mortgagee and its representatives to examine said books and records and all supporting vouchers and data at any reasonable time, during business hours, from time to time upon prior request by the Mortgagee.

1.7    <u>Other Proceedings</u>.  That if any action or proceeding be commenced, excepting an action by the Mortgagor against the Mortgagee, to which action or proceeding the Mortgagee is made a party by reason of the execution of the Mortgage or the Note which it secures, or in which it becomes necessary to defend or uphold the lien of the Mortgage, all reasonable sums paid by the Mortgagee for the expense of any litigation to prosecute or defend the rights and lien created hereby including reasonable attorneys' fees, shall be paid by the Mortgagor, together with interest thereon from date of payment at the highest rate specified in the Note secured hereby, and any such sum, and the interest thereon, shall be immediately due and payable and be secured hereby, having the benefit of the lien hereby created, as a part thereof and of its priority.  The Mortgagee shall give the Mortgagor prompt notice of the initiation of any such action or proceeding.

1.8    <u>Consent to Release, Etc</u>.  Without affecting the liability of the Mortgagor or, any other person (except any person expressly released in writing) for payment of any indebtedness secured hereby or for performance of any obligation contained herein, and without affecting the rights of the Mortgagee with respect to any security not expressly released in writing, the Mortgagee may at any time and from time to time, either before or after the maturity of the Note and without notice or consent:

(a)    Release any person liable for payment of all or any part of the indebtedness or for performance of any obligation;

(b)    Make any agreement extending the time or otherwise altering the terms of payment of all or any part of the indebtedness, or modifying or waiving any obligation, or

subordinating, modifying or otherwise dealing with the lien or charge hereof; provided, however, that nothing herein shall entitle Mortgagee to increase Mortgagor's payment or obligations hereunder without Mortgagor's consent.

(c)     Exercise or refrain from exercising or waive any right the Mortgagee may have;

(d)     Accept additional security of any kind; or

(e)     Release or otherwise deal with any property, real or personal, securing the indebtedness, including all or any part of the property mortgaged hereby.

1.9     Zoning, Etc.  If at any time the then-existing use or occupancy of the Premises shall, pursuant to any zoning or other law, ordinance or regulation, be permitted only so long as such use or occupancy shall continue, that the Mortgagor shall not cause or permit such use or occupancy to be discontinued without the prior written consent of the Mortgagee.

1.10     Leases.  To enter into leases of the Premises only in such terms and conditions as are reasonably approved by the Mortgagee such approval not to be unreasonably delayed or withheld; all of such leases to be subordinated to the Mortgage and the lien hereof.

1.11     Due on Sale.  This Mortgage is not assignable or assumable and if all or any part of the Premises is sold or conveyed, or if there are transfers of any interests in the Mortgagor prohibited by the Loan Agreement, then the Mortgagee may, at its option, require immediate payment in full of all sums secured by this Mortgage.

1.12     Underground Tanks.  The Mortgagor will comply with all applicable federal and state laws and regulations, as the same may be amended from time to time, relating to the inspection and replacement of underground fuel storage tanks located on the Premises.

1.13     Hazardous Waste.   The Mortgagor represents that the Premises do not contain any hazardous wastes, hazardous substances (including, without limitation, medical or infectious waste), hazardous materials, toxic substances or toxic pollutants, as those terms are used in the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Hazardous Materials Transportation Act and the Toxic Substances Control Act, the Clean Air Act, the Clean Water-Act, or any similar state or local law, or in any regulations promulgated pursuant thereto, or in any other applicable law as the same may be amended from time to time.  The Mortgagor covenants to strictly comply with the requirements of all such laws and to promptly notify the Mortgagee of the presence in or on the Premises of any materials, the use, storage, transportation or disposal of which is regulated by such laws, unless Mortgagor is using or storing such materials in accordance with applicable law.  The Mortgagor hereby covenants to defend, indemnify, and hold the Mortgagee harmless from and against all loss, cost, damage and liability, including reasonable attorneys' fees and costs of litigation, suffered or incurred by the Mortgagee on account of the presence of any such materials in or on the Premises, including, without limitation, any such loss, cost, damage or liability arising from a violation of any of such laws.

1.14   Future Advances .  Future advances from the Mortgagee shall be secured by this Mortgage as evidenced by the Note secured hereby.

1.15   Compliance with Laws, Etc.  The Mortgagor will comply with all regulations, condominium documentation, covenants, rules, ordinances, statutes, codes, permits, orders and decrees applicable to the Mortgagor, or to the Premises, the use, occupancy or condition thereof or any part thereof.  The Mortgagor, if an entity other than a natural person, will, so long as it is owner of the Premises, do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges as such an entity under the laws of the state of its incorporation including without limitation the payment of all fees and other charges required in connection therewith.  The Mortgagor shall have the right to contest by appropriate legal proceedings, but without cost or expense to the Mortgagee, the validity of any laws, ordinances, order, rules and regulations affecting the Premises if compliance therewith may legally be held in abeyance without the sufferance of any charge, lien or liability against the Premises, and the Mortgagor may postpone compliance therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay compliance, provided the Mortgagee s furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such noncompliance or delay.

1.16   Mechanics Liens, Etc.  The Mortgagor will pay, as such shall become due, all lawful claims and demands of mechanics, materialmen, laborers and other which, if unpaid, might result in, or permit the creation of, a lien on the Premises or any part thereof, or on the revenues, rents, issues, income and profits arising therefrom.  Except as permitted under the Loan Agreement, the Mortgagor will not create or permit to be created and will promptly discharge any mortgage, lien, or charge on the Premises or any part thereof or on the interest of the Mortgagor or the Mortgagee therein, and the Mortgagor will do or cause to be done everything reasonably necessary so that the lien hereof shall be fully preserved, at the cost of the Mortgagor, without expense to the Mortgagee.  The Mortgagor shall have the right to contest such claims or demands by appropriate legal proceedings, but without cost or expense to the Mortgagee, if such claim or demand may legally be held in abeyance without the sufferance of any charge, lien or liability against the Mortgaged Property, and the Mortgagor may postpone satisfaction therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay satisfaction, provided the Mortgagee is furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such contest and refusal to satisfy pending contest.

1.17   Commercial Purpose.  The Mortgagor warrants that this Mortgage is given primarily for business, commercial or agricultural purpose.  The Premises subject to this Mortgage are not used exclusively for residential purposes and are not the primary residence of the Mortgagor.

2.   Payments, Etc. by the Mortgagee.  If the Mortgagor shall neglect or refuse to keep in good repair the property conveyed by this Mortgage, to replace the same as herein agreed, to maintain and pay the premiums for insurance which may be required under Paragraph l.3 or to

pay and discharge all taxes, assessments, charges and liens of every nature and to whomever assessed, as provided for in Paragraphs l.4 and l.16, the Mortgagee may, at its election, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments, charges and liens and any amounts paid as a result thereof, together with interest thereon at the highest rate of interest specified in the Note secured hereby from the date of payment, shall be immediately due and payable by the Mortgagor to the Mortgagee, and until paid shall be added and become part of the principal debt secured hereby, and the same may be collected as a part of said principal debt in any suit herein or upon the Note; or the Mortgagee, by the payment of any tax, assessment or charge, may, if it sees fit if allowed by law, be thereby subrogated to the rights of the state, county, village and all political or governmental subdivisions. No such advances shall be deemed to relieve the Mortgagor of any default hereunder or impair any right or remedy consequent thereon, and the exercise of the rights to make advances granted in this paragraph shall be optional with the Mortgagee and not obligatory, and the Mortgagee shall not in any case be liable to the Mortgagor for a failure to exercise any such right. The Mortgagee shall have no responsibility with respect to the legality, validity and priority of any such claim, lien, encumbrance, tax, assessment and premium, and of the amount necessary to be paid in satisfaction thereof.

3.    Default; Remedies.

3.1    The Mortgagor shall be in default under this Mortgage upon the occurrence of an event of default under *any* of the Loan Documents, including the Loan Agreement and the expiration of the grace periods, if any, as specified in the Loan Agreement (herein called the "Events of Default"). Such Events of Default shall include without limitation, the following:

(a)    Default in the due and punctual payment of any payment of principal of or premium, if any, or interest on the Note and such default shall continue beyond the expiration of the applicable period of grace, if any; or

(b)    Default in payment or performance under any of the obligations under the Loan Documents, and such default shall continue beyond the expiration of the applicable period of grace, if any; or

(c)    Default in the due performance or observance of any covenant or provision of this Mortgage and such default shall continue beyond the expiration of the applicable period of grace, if any.

3.2    Upon the occurrence of an Event of Default which has not been cured within any applicable remedy period or demand under any demand instrument, and at the option of the Mortgagee, (a) the Mortgagee may declare the obligations of the Mortgagor to the Mortgagee to be immediately due and payable, (b) the Mortgagee may immediately take possession of the Premises, and (c) the Mortgagee may forthwith exercise all other rights and remedies provided herein, or in any of the other Loan Documents, or which may be available to the Mortgagee by law, including without limitation, the STATUTORY POWER OF SALE.

3.3     Notwithstanding any other provision set forth herein and not in limitation thereof, this Mortgage is upon the STATUTORY CONDITIONS as well as the other terms and conditions hereof, for any breach of which the Mortgagee shall have the STATUTORY POWER OF SALE.

3.4     All rights and remedies set forth herein shall be cumulative and concurrent, and may be pursued singly, successively, or together, at the Mortgagee's sole discretion, and may be exercised as often as occasion thereof shall occur.

3.5     If the Mortgagor, its successors or assigns, pays the Mortgagee, all amounts under the Loan Documents, complies with and performs all terms and obligations as set forth in the Note and the Loan Documents, then the Mortgage shall be void; otherwise it shall remain in full force and effect.

4.     <u>Possession by Mortgagee</u>.

4.1     If the Mortgagee shall take possession of the Premises as permitted hereby, then in addition to, and not in limitation of, the Mortgagee's STATUTORY POWER OF SALE, the Mortgagee may:

(a)     hold, manage, operate, and lease the Premises to the Mortgagor or to any other entity on such terms and for such period(s) of time as the Mortgagee may deem proper, and the provisions of any lease made by the Mortgagee pursuant hereto shall be valid and binding upon the Mortgagor notwithstanding the fact that the Mortgagee's right of possession may terminate or this Mortgage may be satisfied of record prior to the expiration of the term of such lease;

(b)     make such alterations, additions, improvements, renovations, repairs, and replacements to the Premises as the Mortgagee may deem proper;

(c)     remodel such improvements so as to make the same available in whole or in part for business purposes;

(d)     collect the rents, issues, and profits arising from the Premises, past due and thereafter becoming due, and apply the same, in such order of priority as the Mortgagee may determine, to the payment of all charges and commissions incidental to the collection of rents, the management of the Premises, and the obligations and all sums or charges required to be paid by the Mortgagor hereunder;

(e)     take any other action the Mortgagee deems necessary or appropriate in its sole discretion to preserve, protect, or improve the Premises.

4.2     All monies advanced by the Mortgagee for the above purposes and not repaid out of the rents collected shall immediately and without demand be repaid by the Mortgagor to the Mortgagee, together with interest thereon at the same rate as provided in the Note, and shall be added to the- principal indebtedness secured hereby.

4.3    The taking of possession and the collection of rents by the Mortgagee as described above shall not be construed to be an affirmation of any lease of the Premises or any part thereof, and the Mortgagee, or any purchaser at any foreclosure sale, may terminate any such lease at any time, whether or not such taking of possession and collection of rents has occurred.

5.    <u>Foreclosure Pursuant to Power of Sale</u>.

5.1    Upon default, the Mortgagee or its legal representatives or assigns may on such terms and conditions as the Mortgagee deems appropriate in its sole discretion and pursuant to the STATUTORY POWER OF SALE, sell the Premises by public sale to the highest bidder as provided herein and in NH RSA 479, et al., as such statutes may be amended from time to time.

5.2    If the Mortgagee invokes the STATUTORY POWER OF SALE, the Mortgagee may, without further demand upon the Mortgagor, sell the Premises or any estate therein, in one or more parcels, to the highest bidder for cash or other consideration acceptable to the Mortgagee at public sale to be held upon the Premises.

5.3    In the event that the Mortgagee seeks to enforce its rights and remedies hereunder, the Mortgagor shall fully cooperate with the Mortgagee in any foreclosure of the Premises scheduled by the Mortgagee, including without limitation; (i) providing the Mortgagee with any information concerning the Premises reasonably requested by the Mortgagee, such as rental income information, taxes, water assessment charges and any maintenance costs associated with the Premises; (ii) arranging with the Mortgagee two (2) preview dates, each three hours in length, prior to the dates of any foreclosure sale; and (iii) granting the Mortgagee unlimited access to the Premises on the date of the foreclosure sale for one hour before and one hour after the foreclosure sale except that Mortgagee shall not interfere with the conduct of Mortgagor's business operations on such Premises. In addition, the Mortgagor shall, without waiving its right to enjoin a foreclosure under NH RSA 479, under no circumstances and in no event in any way interfere with, any foreclosure sale of the Premises scheduled by the Mortgagee.

5.4    The deed given by reason of such sale shall convey to the purchaser an indefeasible title to the Premises, discharged of all rights of redemption with respect to this mortgage by the Mortgagor and its successors or assigns, or any person claiming from or under it or them. The Mortgagee shall apply the proceeds of such sale first to all costs of notice and sale of the Premises including reasonable attorneys', accountants' and appraisers' fees, then to any and all accrued but unpaid interest due to the Mortgagee, and thereafter to the principal indebtedness evidenced by the Note and secured hereby, and to the other indebtedness secured hereby. Any excess may be paid to others having a lien on the Premises not having priority over this Mortgage and if none, then to the Mortgagor. The Mortgagor shall be liable for any deficiency.

5.5    In the event of foreclosure, at the option of the Mortgagee, the interest of each of the Mortgagor and the Mortgagee herein may be sold as a single unit together with such personal property, furniture, furnishings, fixtures, machinery, and equipment as may secure the Note or be secured by the Loan Documents.

5.6     If the provisions of the Uniform Commercial Code apply, any property or security given to secure the indebtedness secured hereby may be sold with or as a part of the Premises, or any part thereof, at one or more foreclosure sales, and any notice required under such provisions shall be fully satisfied by the notice provided to be given hereby in execution of the STATUTORY POWER OF SALE.

6.     Security Agreement.  The Mortgage is among other things intended to be a security agreement and financing statement with respect to the personal property and fixtures described and included in the Mortgage, and all additions, accessions, substitutions and replacements thereto and therefor, together with the proceeds thereof, and all of which are hereinafter referred to as the collateral and the Mortgagor hereby grants and conveys to Mortgagee, its successors and assigns, a security interest therein.  That upon default of any material term, condition or covenant of the Mortgage and acceleration of any indebtedness hereby secured, the Mortgagee may, at its discretion, require the Mortgagor to assemble the collateral and make it available to the Mortgagee at a place reasonably convenient to both parties to be designated by the Mortgagee.  That the Mortgagee shall give the Mortgagor notice, by registered mail, postage prepaid, of the time and place of any public sale of any of the collateral or of the time any private sale or other intended disposition thereof is to be made by sending notice to the Mortgagor at least ten (10) days before the time of the sale or other disposition, which provisions for notice the Mortgagor and the Mortgagee agree are reasonable; provided, however, that nothing herein shall preclude the Mortgagee from proceeding as to both real and personal property in accordance with the Mortgagee's rights and remedies in respect of the real property.  The Mortgagee shall have all of the remedies of a secured party under the Uniform Commercial Code as now in effect in the state of New Hampshire, and such further remedies as may from time to time hereafter be provided in New Hampshire for a secured party.  The Mortgagor agrees that all rights of the Mortgagee as to said collateral and as to said real estate, and rights and interest appurtenant thereto, may have exercised together or separately and further agrees that in exercising its power of sale as to said collateral and as to said real estate, and rights and interest appurtenant thereto, the Mortgagee may sell the collateral or any part thereof, either separately from or together with the sale real estate, rights and interests appurtenant thereto, or any part thereof, all as the Mortgagee may in its discretion elect.

For the purpose of this Mortgage constituting a financing statement under the Uniform Commercial Code the addresses of the parties are:

| The Mortgagor (Debtor) | MUNCE'S REAL ESTATE VENTURES, LLC |
| | 453 Alpine Street |
| | Berlin, New Hampshire 03570 |
| | |
| | and |
| | |
| The Mortgagee (Secured Party) | NORTHWAY BANK |
| | 9 Main Street |
| | Berlin, New Hampshire 03570 |

7. <u>Appointment of Receiver</u>. The Mortgagee may, at any time following an Event of Default hereunder which has not been cured within any applicable remedy period or demand under any demand instrument (subject to any limitations in the Loan Documents), apply to any court having jurisdiction for appointment of receiver. That court shall promptly appoint a receiver of the Premises, who shall be authorized to receive and apply the income, profits, issues, rents and revenues from whatever source derived. The rents, profits, income, issues, and residues shall be applied by the receiver according to the lien of this Mortgage and the practice of the court. The appointment of the receiver shall be made by such court as an admitted equity in a matter of absolute right to the Mortgagee, and without references to the adequacy or inadequacy of the value of the Premises or to the solvency or insolvency of the Mortgagor or any co-borrower or guarantor of the obligations secured hereby.

8. <u>General Provisions</u>. The Mortgagor and the Mortgagee further agree that:

8.1 <u>Homestead</u>. There is no homestead interest in the Premises.

8.2 <u>Waivers</u>. (a) Except as otherwise specifically provided in this Mortgage, the Note and the other Loan Documents, the Mortgagor waives demand, notice of any action taken in reliance on this Mortgage, and all other demands and notices of any description.

(b) No delay or omission on the part of the Mortgagee in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or of any other right or remedy under this Mortgage. A waiver on any one occasion shall not be construed as a bar to or waiver of any such right and/or remedy on any future occasion. No single or partial exercise of any power hereunder shall preclude other or future exercise thereof or the exercise of any other right; and

(c) That receipt and disposition of rents, income of the Premises, insurance proceeds, eminent domain awards, or any other sums under the provisions of the Loan Documents by the Mortgagee shall not be a waiver or release of any rights of the Mortgagee, including but not limited to, the right of foreclosure or acceleration of the Note, whether such receipt or disposition shall be before or after exercise of any such rights.

8.3 <u>Binding Agreement</u>. This Mortgage shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, legal representatives, successors, and assigns; provided, however, that any assumption of any obligations of Mortgagor hereunder shall not constitute a release of the party whose obligation is being assumed without the Mortgagee's prior written consent.

8.4 <u>Amendment</u>. This Mortgage shall not be changed in any respect except by written instrument signed by the parties hereto.

8.5 <u>Governing Law</u>. This Mortgage and all rights and obligations hereunder, including matters of construction, validity, and performance, shall be governed by the laws of the State of New Hampshire.

8.6     Severability.  If any term, condition, or provision of this Mortgage or the application thereof to any person or circumstance shall, to any extent, be held invalid or unenforceable according to law, then the remaining terms, conditions, and provisions of this Mortgage, or the application of any such invalid or unenforceable term, condition or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby, and each term, condition, and provision of this Mortgage shall be valid and enforced to the fullest extent permitted by law.

8.7     Headings.  The descriptive headings of the sections of this Mortgage have been inserted for convenience and reference only and shall not control or affect the meaning or construction of any of the contents hereof.

8.8     Estoppel Certificate.  The Mortgagor, within five (5) days after being given notice as provided below, will furnish to the Mortgagee a written statement duly acknowledged by the Mortgagor or its representative certifying the principal amount then outstanding on the Note and certifying that no offsets or defenses exist against the Mortgage indebtedness (or explaining such offsets or defenses to the extent they exist).

8.9     Notice.  Any demand or notice required or permitted hereunder shall be effective if either: (a) hand-delivered to the addressee, or (b) deposited in the mail, registered or certified, return receipt requested and postage prepaid, or delivered to a private express company addressed to the addressee: (i) at the address shown at the beginning of this Mortgage, or (ii) if such party has provided the other in writing with a change of address, at the last address so provided.  Any notice or demand mailed as provided in this paragraph shall be deemed given and received on the earlier of:

>           (A)     the date received; or
>
>           (B)     the date of delivery, refusal or non-delivery as indicated on the return receipt, if sent by mail or private express as provided above.

8.10    Gender and Number.  All words denoting gender or number shall be construed to include any other gender or number as the context and facts require.

8.11    Conflict with other Loan Documents.  In the event of any conflict between the terms, covenants, conditions and restrictions contained in the Loan Documents, the term, covenant and condition or restriction which grants the greater benefit upon the Mortgagee shall control.  The determination as to which term, covenant, condition or restriction is the more beneficial shall be made by the Mortgagee in its reasonable discretion.

8.12    Waiver of Right of Exemption.  The Mortgagor, for the consideration aforesaid, hereby waives all rights of exemption in the Premises as the same are now or here after provided of the provisions of any federal or state law, including, without limitation, 11 U.S.C. §522.

8.13    Replacement of Security Documents.  Upon receipt of an affidavit of an officer of the Mortgagee as to the loss, theft, destruction or mutilation of the Note or any other security

document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon cancellation of such Note or other security document, the Mortgagor will issue, in lieu thereof, a replacement note or other security document in the same principal amount thereof and otherwise of like tenor.

8.14    Waiver of Jury Trial.  THE MORTGAGOR AND THE MORTGAGEE MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF MORTGAGEE RELATING TO THE ADMINISTRATION OF THE LOANS OR ENFORCEMENT OF THE LOAN DOCUMENTS, AND AGREE THAT NEITHER PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  EXCEPT AS PROHIBITED BY LAW OR OTHERWISE PROVIDED IN THE LOAN DOCUMENTS, THE MORTGAGOR HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, ENHANCED COMPENSATORY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES, AND REASONABLE ATTORNEYS FEES IN THE EVENT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE BANK, ITS AGENTS AND EMPLOYEES. THE MORTGAGOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF MORTGAGEE HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT MORTGAGEE WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER.  THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR MORTGAGEE TO ACCEPT THIS MORTGAGE AND MAKE THE LOAN.

[Signature page follows]

IN WITNESS WHEREOF, the Mortgagor has executed this Mortgage, Security Agreement and Collateral Assignment of Leases and Rents as of the ___ day of _____, 2011.

MORTGAGOR:

MUNCE'S REAL ESTATE VENTURES, LLC

_____     By:_____
Witness                                  Name:
                                           Title:

MORTGAGEE:

NORTHWAY BANK

_____     By:_____
Witness                                  Thomas Caruso, Its Duly
                                  Authorized Senior Vice President

STATE OF NEW HAMPSHIRE
COUNTY OF _____

     The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by _____, duly authorized _____ of MUNCE'S REAL ESTATE VENTURES, LLC, a New Hampshire limited liability company, on behalf of the same.

STATE OF NEW HAMPSHIRE
COUNTY OF _____

     The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by Thomas Caruso, duly authorized Senior Vice President of NORTHWAY BANK, a bank organized under the laws of the State of New Hampshire, on behalf of the same.

_____
Justice of the Peace/Notary Public
My Commission Expires:
Notary Seal

J:\WDOX\DOCS\CLIENTS\020746\093343\M1811073.DOC

## <u>SCHEDULE A</u>

### <u>Legal Description</u>

The following tracts of land, with the buildings, improvements and fixtures thereon, and interests in real estate, situated in New Hampton, Belknap County, New Hampshire, more particularly described as follows:

[To be completed]

*For recorder's use:*
**Tax Stamp**: $ _____
**Recording Fee**: $ _____
**Return to**: Account # _____
*Devine, Millimet & Branch - Attn: mrj*
*111 Amherst Street, Manchester, NH  03101*

_____
**(Properties Located in Gorham, Berlin, Groveton and Lancaster, New Hampshire)**

## MORTGAGE, SECURITY AGREEMENT AND
## COLLATERAL ASSIGNMENT OF LEASES AND RENTS

THIS MORTGAGE, SECURITY AGREEMENT AND COLLATERAL ASSIGNMENT OF LEASES AND RENTS (hereinafter referred to as this "Mortgage") is made and entered into as of this _____ day of _____, 2011, by **HAROLD P. MUNCE and MARILYN J. MUNCE,** individuals with a principal address of 453 Alpine Street, Berlin, New Hampshire 03570 (the "Mortgagor"), in favor of **NORTHWAY BANK**, a bank incorporated under the laws of the State of New Hampshire with a principal place of business at 9 Main Street, Berlin, New Hampshire 03570 (the "Mortgagee") with MORTGAGE COVENANTS, to secure:

A.      the payment of and performance of a certain promissory note of even date payable by the Mortgagor, Munce's Superior Petroleum Products, Inc., Gorham Oil, Inc., Superior Trucking, Inc., BMRA Real Estate Ventures, LLC, and Munce's Real Estate Ventures, LLC, as "Borrowers" to the Mortgagee as the "Bank" (as the same may be amended or modified, the "Note") with interest thereon, pursuant to which Mortgagor has promised to repay a certain loan in the principal amount of up to THREE HUNDRED THOUSAND DOLLARS ($300,000) (the "Loan") made by Mortgagee to the Borrowers for the purpose of financing the restructuring of the Borrowers' commercial and business operations;

B.      the payment of all other sums with interest thereon advanced in accordance herewith to protect the security and priority of this Mortgage Deed (the "Mortgage"), including the costs of collection; and

C.      the payment, performance and satisfaction of the financial liabilities and other obligations under the terms, conditions, representations, warranties and covenants contained in the Note, a certain Loan Agreement by and among the Borrowers, the Mortgagee and others of even date, as the same may be amended, (the "Loan Agreement"), the documents defined therein as the Loan Documents, all loans or obligations, now existing or hereafter arising, of any Borrower owed to the Bank (or any affiliate thereof), as the same may have been and may be hereafter amended, including, but not limited to the prior loans, and any obligations arising under any foreign exchange contracts, interest rate swap, cap, floor or hedging agreements, or similar

agreements and all obligations of Mortgagor to Mortgagee arising out of or in connection with any Automated Clearing House ("ACH") Agreements relating to the procession of ACH transactions, together with all fees, expenses, charges and other amounts outstanding and chargeable to the Mortgagor under the ACH Agreements, all as they may be amended, renewed, extended or restated from time to time (the foregoing including, without limitation, the Note and the Loan Agreement are collectively referred to herein as the "Loan Documents").

The following described premises (the "Premises"):

Certain tracts or parcels of land, together with all buildings, fixtures and improvements thereon, whether now affixed or to be affixed, located in the Towns of Gorham, Berlin, Groveton and Lancaster, Coos County, New Hampshire, more particularly described in Schedule A attached hereto and made a part hereof.

As further security for payment of the indebtedness and performance of the obligations, covenants and agreements secured hereby, the Mortgagor hereby grants, transfers, sets over and assigns, with MORTGAGE COVENANTS, to the Mortgagee:

D.      Any and all tenants, hereditaments, easements, rights of way, licenses, profits, privileges and other appurtenances belonging, relating or pertaining to the Premises;

E.      All rents, security deposits, issues and profits, revenues, royalties, bonuses, rights and benefits under any and all leases or tenancies now existing or hereafter created of the Premises or any part thereof, with the right to receive and apply the same to said indebtedness, and the Mortgagee may demand, sue for and recover such payments, but shall not be required to do so; provided, however, that so long as the Mortgagor is not in default hereunder, the right to receive and retain such rents, issues and profits is reserved to the Mortgagor.  To carry out the foregoing, the Mortgagor agrees (1) to execute and deliver to the Mortgagee such collateral assignments of leases and rents applicable to the Premises as the Mortgagee may from time to time request, while this Mortgage and the debt secured hereby are outstanding, and further (2) not to cancel, accept a surrender of, reduce the rentals under, anticipate any rentals under, or modify any such leases or tenancies, or consent to an assignment or subletting thereof, in whole or in part, without the Mortgagee's written consent.  Nothing herein shall obligate the Mortgagee to perform the duties of the Mortgagor as landlord or lessor under any such leases or tenancies, which duties the Mortgagor hereby covenants and agrees to well and punctually per-form; and

F.      All judgments, awards of damages and settlements hereafter made as a result or in lieu of any taking of the Premises or any interest therein or part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Premises or the improvements thereon or any part thereof, including any award for change of grade of streets.  In the event that any such damage cannot, in the reasonable opinion of Mortgagee, be repaired within a period of ninety (90) days, or in the event such damage materially interferes with Mortgagor's ability to operate the Premises for their intended purposes, the Mortgagee may apply all such sums or any part thereof so received on the indebtedness secured hereby in such manner as it elects, or, at its option, the entire amount or any part thereof so received may be released.  If an Event of Default has occurred under the Loan Documents the

Mortgagor hereby irrevocably authorizes and appoints the Mortgagee its attorney-in-fact to collect and receive any such judgments, awards and settlements from the authorities or entities making the same, to appear in any proceeding therefor, to give receipts and acquittances therefor, and to apply the same to payment on account of the debt secured hereby, whether then matured or not.  The Mortgagor will execute and deliver to the Mortgagee on demand such assignments and other instruments as the Mortgagee may require for said purposes and, after the occurrence of an Event of Default, will reimburse the Mortgagee for its cost (including reasonable counsel fees) in the collection of such judgments and settlements.

The Mortgagor also grants the Mortgagee a security interest in the following to secure the obligations of the Mortgagor to the Mortgagee set forth herein:

(1)     All fixtures, machinery, equipment, building materials and components whether or not incorporated into the Premises and all other tangible personal property intended for the construction, use or operation of the Premises or for use in or with the building or other improvements on the Premises, whether now or hereafter owned by the Mortgagor and now affixed or to be affixed, or now or hereafter located upon the Premises, including all appurtenant easements.  The foregoing shall include without limitation all construction materials, plumbing, heating, lighting, refrigerating, ventilating and air conditioning apparatus and equipment, elevators and elevator machinery, boilers, tanks, motors, sprinkler and fire extinguishing systems, alarm systems, screens, awnings, screen doors, storm and other detachable awnings, storm and other detachable windows and doors, and other equipment, machinery, furniture and furnishings, fixtures, and articles of personal property now and hereafter owned by the Mortgagor and now and hereafter affixed to, placed upon or used in connection with the construction or operation of the Premises, and all other purposes whether or not included in the foregoing enumeration, together with cash proceeds and non-cash proceeds of all of the foregoing, all of which are covered by this Mortgage, whether or not such property is subject to prior conditional sales agreements, chattel mortgages or other liens, excepting inventory and personal property to be consumed or sold in the normal course of business of the Mortgagor.

(2)     All "Assigned Contracts and Permits" meaning all of the contracts, declarant's rights, development rights, licenses, permits, plans, specifications, approvals, agreements and warranties, and all of Mortgagor's right, title and interest therein, whether now owned or hereafter acquired, and all proceeds and products thereof, and all accounts, deposit accounts, contract rights and general intangibles related thereto, which are in any manner related to the Premises and the improvements on or to be constructed on the Premises.

(3)     Any and all additions, accessions, substitutions or replacements to or for any of the foregoing.

(4)     Any and all products and proceeds of any or all of the foregoing, including, without limitation, cash and cash equivalents, tax refunds, and the proceeds of

insurance policies providing coverage against the loss or destruction of or damage to any of such collateral.

(5)      All of the Mortgagor's after-acquired property of the kinds and types described in the foregoing paragraphs.

1.      <u>Representation, Warranties and Covenants of the Mortgagor</u>.  In addition to the MORTGAGE COVENANTS, the Mortgagor further represents, warrants, covenants and agrees, as appropriate, with the Mortgagee, its successors and assigns, as follows:

1.1      <u>Title</u>.  The Mortgagor, for itself and its successors and assigns, does hereby covenant, grant and agree to and with the Mortgagee and its successors and assigns, that until the delivery hereof it is the lawful owner of the Premises seized and possessed thereof in its own right in fee simple, has full power and lawful authority to grant and convey the same in manner aforesaid that the Premises are free and clear from any encumbrance whatsoever, that except as otherwise recited in <u>Schedule A</u>, it and its successors shall warrant and defend the same to the Mortgagee and its successors and assigns against the lawful claims and demands of any person or persons whatsoever, except as otherwise herein recited; and that, except as otherwise recited in Schedule A, it will not cause or permit any lien to arise against the Premises which is superior to the lien of this Mortgage ("Permitted Encumbrances").

1.2      <u>Payment and Performance</u>.  To pay and perform the Note secured hereby and interest thereon as the same shall become due and payable, and also any other indebtedness that may accrue to the Mortgagee under the terms of this Mortgage, and to perform all other agreements set forth herein and in the Loan Documents.

1.3      <u>Insurance</u>.  That the Mortgagor will keep the buildings, improvements and personal property now existing or hereafter erected or located on the Premises and the interests and liabilities incident to the ownership thereof insured against loss by fire and such other hazards, casualties and contingencies, and in manner, form and companies in the manner set forth in the Loan Agreement; and will escrow payments on account of such insurance premiums with Mortgagee to the extent provided in the Loan Agreement.

1.4      <u>Taxes and Assessments</u>.  That the Mortgagor will pay, before the same become delinquent or any penalty attaches thereto for nonpayment, all taxes, assessments and charges of every nature that may now or hereafter be levied or assessed, upon the Premises or any part thereof, or upon the rents, issues, income or profits thereof, whether any or all of said taxes, assessments or charges be levied directly or indirectly, and will pay, before the same become delinquent or any penalty attached thereto for the nonpayment, all taxes which by reason of nonpayment create a lien prior to the lien of the Mortgage and will thereupon submit to the Mortgagee such evidence of the due and punctual payment of such taxes, etc. as the Mortgagee may reasonably require; and will escrow payments on account of real estate taxes with Mortgagee, in an account bearing interest, upon Mortgagee's request or upon the occurrence of an Event of Default under the Loan Agreement.

1.5     Maintenance of the Premises.  That the Mortgagor will keep protected in good order, repair and condition (reasonable wear and tear and casualty insured against excepted) at all times the buildings and improvements (including the Mortgagor's fixtures) now standing or hereafter erected or placed upon the Premises and any and all of the Mortgagor's appurtenances, apparatus and articles of personal property, including, but not limited to, furniture, furnishings and equipment, now or hereafter in or attached to or used in connection with said buildings or improvements, promptly replacing any of the aforesaid which may become lost, destroyed or unsuitable for use; will always maintain in good order and condition all the facilities, easements, works, and ways set forth in the description of the Premises, whether located upon the Premises hereby mortgaged or elsewhere; and will not commit or suffer any strip or waste of the Premises, or any violation of any law, regulation, ordinance or contract affecting the Premises, and will not commit or suffer any demolition, removal or material alteration of any buildings or improvements (including fixtures) on the Premises without the written consent of the Mortgagee. The Mortgagor shall maintain and preserve the parking areas, passageways and drives, now or hereafter existing on the Premises.

1.6     Books and Records.  That the Mortgagor shall maintain full and correct books and records showing in detail the earnings and expenses of the Premises and will permit the Mortgagee and its representatives to examine said books and records and all supporting vouchers and data at any reasonable time, during business hours, from time to time upon prior request by the Mortgagee.

1.7     Other Proceedings.  That if any action or proceeding be commenced, excepting an action by the Mortgagor against the Mortgagee, to which action or proceeding the Mortgagee is made a party by reason of the execution of the Mortgage or the Note which it secures, or in which it becomes necessary to defend or uphold the lien of the Mortgage, all reasonable sums paid by the Mortgagee for the expense of any litigation to prosecute or defend the rights and lien created hereby including reasonable attorneys' fees, shall be paid by the Mortgagor, together with interest thereon from date of payment at the highest rate specified in the Note secured hereby, and any such sum, and the interest thereon, shall be immediately due and payable and be secured hereby, having the benefit of the lien hereby created, as a part thereof and of its priority.  The Mortgagee shall give the Mortgagor prompt notice of the initiation of any such action or proceeding.

1.8     Consent to Release, Etc.  Without affecting the liability of the Mortgagor or, any other person (except any person expressly released in writing) for payment of any indebtedness secured hereby or for performance of any obligation contained herein, and without affecting the rights of the Mortgagee with respect to any security not expressly released in writing, the Mortgagee may at any time and from time to time, either before or after the maturity of the Note and without notice or consent:

(a)     Release any person liable for payment of all or any part of the indebtedness or for performance of any obligation;

(b)     Make any agreement extending the time or otherwise altering the terms of payment of all or any part of the indebtedness, or modifying or waiving any obligation, or

subordinating, modifying or otherwise dealing with the lien or charge hereof; provided, however, that nothing herein shall entitle Mortgagee to increase Mortgagor's payment or obligations hereunder without Mortgagor's consent.

      (c)     Exercise or refrain from exercising or waive any right the Mortgagee may have;

      (d)     Accept additional security of any kind; or

      (e)     Release or otherwise deal with any property, real or personal, securing the indebtedness, including all or any part of the property mortgaged hereby.

      1.9     <u>Zoning, Etc</u>.  If at any time the then-existing use or occupancy of the Premises shall, pursuant to any zoning or other law, ordinance or regulation, be permitted only so long as such use or occupancy shall continue, that the Mortgagor shall not cause or permit such use or occupancy to be discontinued without the prior written consent of the Mortgagee.

      1.10     <u>Leases</u>.  To enter into leases of the Premises only in such terms and conditions as are reasonably approved by the Mortgagee such approval not to be unreasonably delayed or withheld; all of such leases to be subordinated to the Mortgage and the lien hereof.

      1.11     <u>Due on Sale</u>.  This Mortgage is not assignable or assumable and if all or any part of the Premises is sold or conveyed, or if there are transfers of any interests in the Mortgagor prohibited by the Loan Agreement, then the Mortgagee may, at its option, require immediate payment in full of all sums secured by this Mortgage.

      1.12     <u>Underground Tanks</u>.  The Mortgagor will comply with all applicable federal and state laws and regulations, as the same may be amended from time to time, relating to the inspection and replacement of underground fuel storage tanks located on the Premises.

      1.13     <u>Hazardous Waste</u>.   The Mortgagor represents that the Premises do not contain any hazardous wastes, hazardous substances (including, without limitation, medical or infectious waste), hazardous materials, toxic substances or toxic pollutants, as those terms are used in the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Hazardous Materials Transportation Act and the Toxic Substances Control Act, the Clean Air Act, the Clean Water-Act, or any similar state or local law, or in any regulations promulgated pursuant thereto, or in any other applicable law as the same may be amended from time to time.  The Mortgagor covenants to strictly comply with the requirements of all such laws and to promptly notify the Mortgagee of the presence in or on the Premises of any materials, the use, storage, transportation or disposal of which is regulated by such laws, unless Mortgagor is using or storing such materials in accordance with applicable law. The Mortgagor hereby covenants to defend, indemnify, and hold the Mortgagee harmless from and against all loss, cost, damage and liability, including reasonable attorneys' fees and costs of litigation, suffered or incurred by the Mortgagee on account of the presence of any such materials in or on the Premises, including, without limitation, any such loss, cost, damage or liability arising from a violation of any of such laws.

1.14    Future Advances .  Future advances from the Mortgagee shall be secured by this Mortgage as evidenced by the Note secured hereby.

1.15    Compliance with Laws, Etc.  The Mortgagor will comply with all regulations, condominium documentation, covenants, rules, ordinances, statutes, codes, permits, orders and decrees applicable to the Mortgagor, or to the Premises, the use, occupancy or condition thereof or any part thereof.  The Mortgagor, if an entity other than a natural person, will, so long as it is owner of the Premises, do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges as such an entity under the laws of the state of its incorporation including without limitation the payment of all fees and other charges required in connection therewith.  The Mortgagor shall have the right to contest by appropriate legal proceedings, but without cost or expense to the Mortgagee, the validity of any laws, ordinances, order, rules and regulations affecting the Premises if compliance therewith may legally be held in abeyance without the sufferance of any charge, lien or liability against the Premises, and the Mortgagor may postpone compliance therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay compliance, provided the Mortgagee s furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such noncompliance or delay.

1.16    Mechanics Liens, Etc.  The Mortgagor will pay, as such shall become due, all lawful claims and demands of mechanics, materialmen, laborers and other which, if unpaid, might result in, or permit the creation of, a lien on the Premises or any part thereof, or on the revenues, rents, issues, income and profits arising therefrom.  Except as permitted under the Loan Agreement, the Mortgagor will not create or permit to be created and will promptly discharge any mortgage, lien, or charge on the Premises or any part thereof or on the interest of the Mortgagor or the Mortgagee therein, and the Mortgagor will do or cause to be done everything reasonably necessary so that the lien hereof shall be fully preserved, at the cost of the Mortgagor, without expense to the Mortgagee.  The Mortgagor shall have the right to contest such claims or demands by appropriate legal proceedings, but without cost or expense to the Mortgagee, if such claim or demand may legally be held in abeyance without the sufferance of any charge, lien or liability against the Mortgaged Property, and the Mortgagor may postpone satisfaction therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay satisfaction, provided the Mortgagee is furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such contest and refusal to satisfy pending contest.

1.17    Commercial Purpose.  The Mortgagor warrants that this Mortgage is given primarily for business, commercial or agricultural purpose.  The Premises subject to this Mortgage are not used exclusively for residential purposes and are not the primary residence of the Mortgagor.

2.    Payments, Etc. by the Mortgagee.  If the Mortgagor shall neglect or refuse to keep in good repair the property conveyed by this Mortgage, to replace the same as herein agreed, to maintain and pay the premiums for insurance which may be required under Paragraph l.3 or to

pay and discharge all taxes, assessments, charges and liens of every nature and to whomever assessed, as provided for in Paragraphs l.4 and l.16, the Mortgagee may, at its election, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments, charges and liens and any amounts paid as a result thereof, together with interest thereon at the highest rate of interest specified in the Note secured hereby from the date of payment, shall be immediately due and payable by the Mortgagor to the Mortgagee, and until paid shall be added and become part of the principal debt secured hereby, and the same may be collected as a part of said principal debt in any suit herein or upon the Note; or the Mortgagee, by the payment of any tax, assessment or charge, may, if it sees fit if allowed by law, be thereby subrogated to the rights of the state, county, village and all political or governmental subdivisions. No such advances shall be deemed to relieve the Mortgagor of any default hereunder or impair any right or remedy consequent thereon, and the exercise of the rights to make advances granted in this paragraph shall be optional with the Mortgagee and not obligatory, and the Mortgagee shall not in any case be liable to the Mortgagor for a failure to exercise any such right. The Mortgagee shall have no responsibility with respect to the legality, validity and priority of any such claim, lien, encumbrance, tax, assessment and premium, and of the amount necessary to be paid in satisfaction thereof.

3.      Default; Remedies.

3.1      The Mortgagor shall be in default under this Mortgage upon the occurrence of an event of default under *any* of the Loan Documents, including the Loan Agreement and the expiration of the grace periods, if any, as specified in the Loan Agreement (herein called the "Events of Default"). Such Events of Default shall include without limitation, the following:

(a)      Default in the due and punctual payment of any payment of principal of or premium, if any, or interest on the Note and such default shall continue beyond the expiration of the applicable period of grace, if any; or

(b)      Default in payment or performance under any of the obligations under the Loan Documents, and such default shall continue beyond the expiration of the applicable period of grace, if any; or

(c)      Default in the due performance or observance of any covenant or provision of this Mortgage and such default shall continue beyond the expiration of the applicable period of grace, if any.

3.2      Upon the occurrence of an Event of Default which has not been cured within any applicable remedy period or demand under any demand instrument, and at the option of the Mortgagee, (a) the Mortgagee may declare the obligations of the Mortgagor to the Mortgagee to be immediately due and payable, (b) the Mortgagee may immediately take possession of the Premises, and (c) the Mortgagee may forthwith exercise all other rights and remedies provided herein, or in any of the other Loan Documents, or which may be available to the Mortgagee by law, including without limitation, the STATUTORY POWER OF SALE.

3.3     Notwithstanding any other provision set forth herein and not in limitation thereof, this Mortgage is upon the STATUTORY CONDITIONS as well as the other terms and conditions hereof, for any breach of which the Mortgagee shall have the STATUTORY POWER OF SALE.

3.4     All rights and remedies set forth herein shall be cumulative and concurrent, and may be pursued singly, successively, or together, at the Mortgagee's sole discretion, and may be exercised as often as occasion thereof shall occur.

3.5     If the Mortgagor, its successors or assigns, pays the Mortgagee, all amounts under the Loan Documents, complies with and performs all terms and obligations as set forth in the Note and the Loan Documents, then the Mortgage shall be void; otherwise it shall remain in full force and effect.

4.      Possession by Mortgagee.

4.1     If the Mortgagee shall take possession of the Premises as permitted hereby, then in addition to, and not in limitation of, the Mortgagee's STATUTORY POWER OF SALE, the Mortgagee may:

(a)     hold, manage, operate, and lease the Premises to the Mortgagor or to any other entity on such terms and for such period(s) of time as the Mortgagee may deem proper, and the provisions of any lease made by the Mortgagee pursuant hereto shall be valid and binding upon the Mortgagor notwithstanding the fact that the Mortgagee's right of possession may terminate or this Mortgage may be satisfied of record prior to the expiration of the term of such lease;

(b)     make such alterations, additions, improvements, renovations, repairs, and replacements to the Premises as the Mortgagee may reasonably deem proper;

(c)     remodel such improvements so as to make the same available in whole or in part for business purposes;

(d)     collect the rents, issues, and profits arising from the Premises, past due and thereafter becoming due, and apply the same, in such order of priority as the Mortgagee may determine, to the payment of all charges and commissions incidental to the collection of rents, the management of the Premises, and the obligations and all sums or charges required to be paid by the Mortgagor hereunder;

(e)     take any other action the Mortgagee deems necessary or appropriate in its sole discretion to preserve, protect, or improve the Premises.

4.2     All monies advanced by the Mortgagee for the above purposes and not repaid out of the rents collected shall immediately and without demand be repaid by the Mortgagor to the Mortgagee, together with interest thereon at the same rate as provided in the Note, and shall be added to the- principal indebtedness secured hereby.

4.3     The taking of possession and the collection of rents by the Mortgagee as described above shall not be construed to be an affirmation of any lease of the Premises or any part thereof, and the Mortgagee, or any purchaser at any foreclosure sale, may terminate any such lease at any time, whether or not such taking of possession and collection of rents has occurred.

5.      Foreclosure Pursuant to Power of Sale.

5.1     Upon default, the Mortgagee or its legal representatives or assigns may on such terms and conditions as the Mortgagee deems appropriate in its sole discretion and pursuant to the STATUTORY POWER OF SALE, sell the Premises by public sale to the highest bidder as provided herein and in NH RSA 479, et al., as such statutes may be amended from time to time.

5.2     If the Mortgagee invokes the STATUTORY POWER OF SALE, the Mortgagee may, without further demand upon the Mortgagor, sell the Premises or any estate therein, in one or more parcels, to the highest bidder for cash or other consideration acceptable to the Mortgagee at public sale to be held upon the Premises.

5.3     In the event that the Mortgagee seeks to enforce its rights and remedies hereunder, the Mortgagor shall fully cooperate with the Mortgagee in any foreclosure of the Premises scheduled by the Mortgagee, including without limitation; (i) providing the Mortgagee with any information concerning the Premises reasonably requested by the Mortgagee, such as rental income information, taxes, water assessment charges and any maintenance costs associated with the Premises; (ii) arranging with the Mortgagee two (2) preview dates, each three hours in length, prior to the dates of any foreclosure sale; and (iii) granting the Mortgagee unlimited access to the Premises on the date of the foreclosure sale for one hour before and one hour after the foreclosure sale, except that Mortgagee shall not interfere with the conduct of Mortgagor's business operations on such Premises.  In addition, the Mortgagor shall, without waiving its right to enjoin a foreclosure under NH RSA 479, under no circumstances and in no event in any way interfere with, any foreclosure sale of the Premises scheduled by the Mortgagee.

5.4     The deed given by reason of such sale shall convey to the purchaser an indefeasible title to the Premises, discharged of all rights of redemption with respect to this mortgage by the Mortgagor and its successors or assigns, or any person claiming from or under it or them.  The Mortgagee shall apply the proceeds of such sale first to all costs of notice and sale of the Premises including reasonable attorneys', accountants' and appraisers' fees, then to any and all accrued but unpaid interest due to the Mortgagee, and thereafter to the principal indebtedness evidenced by the Note and secured hereby, and to the other indebtedness secured hereby.  Any excess may be paid to others having a lien on the Premises not having priority over this Mortgage and if none, then to the Mortgagor.  The Mortgagor shall be liable for any deficiency.

5.5     In the event of foreclosure, at the option of the Mortgagee, the interest of each of the Mortgagor and the Mortgagee herein may be sold as a single unit together with such personal property, furniture, furnishings, fixtures, machinery, and equipment as may secure the Note or be secured by the Loan Documents.

5.6     If the provisions of the Uniform Commercial Code apply, any property or security given to secure the indebtedness secured hereby may be sold with or as a part of the Premises, or any part thereof, at one or more foreclosure sales, and any notice required under such provisions shall be fully satisfied by the notice provided to be given hereby in execution of the STATUTORY POWER OF SALE.

6.     Security Agreement.  The Mortgage is among other things intended to be a security agreement and financing statement with respect to the personal property and fixtures described and included in the Mortgage, and all additions, accessions, substitutions and replacements thereto and therefor, together with the proceeds thereof, and all of which are hereinafter referred to as the collateral and the Mortgagor hereby grants and conveys to Mortgagee, its successors and assigns, a security interest therein.  That upon default of any material term, condition or covenant of the Mortgage and acceleration of any indebtedness hereby secured, the Mortgagee may, at its discretion, require the Mortgagor to assemble the collateral and make it available to the Mortgagee at a place reasonably convenient to both parties to be designated by the Mortgagee.  That the Mortgagee shall give the Mortgagor notice, by registered mail, postage prepaid, of the time and place of any public sale of any of the collateral or of the time any private sale or other intended disposition thereof is to be made by sending notice to the Mortgagor at least ten (10) days before the time of the sale or other disposition, which provisions for notice the Mortgagor and the Mortgagee agree are reasonable; provided, however, that nothing herein shall preclude the Mortgagee from proceeding as to both real and personal property in accordance with the Mortgagee's rights and remedies in respect of the real property.  The Mortgagee shall have all of the remedies of a secured party under the Uniform Commercial Code as now in effect in the state of New Hampshire, and such further remedies as may from time to time hereafter be provided in New Hampshire for a secured party.  The Mortgagor agrees that all rights of the Mortgagee as to said collateral and as to said real estate, and rights and interest appurtenant thereto, may have exercised together or separately and further agrees that in exercising its power of sale as to said collateral and as to said real estate, and rights and interest appurtenant thereto, the Mortgagee may sell the collateral or any part thereof, either separately from or together with the sale real estate, rights and interests appurtenant thereto, or any part thereof, all as the Mortgagee may in its discretion elect.

For the purpose of this Mortgage constituting a financing statement under the Uniform Commercial Code the addresses of the parties are:

| | |
|---|---|
| The Mortgagor (Debtor) | HAROLD J. MUNCE and MARILYN J. MUNCE<br>453 Alpine Street<br>Berlin, New Hampshire 03570 |
| | and |
| The Mortgagee (Secured Party) | NORTHWAY BANK<br>9 Main Street<br>Berlin, New Hampshire 03570 |

7.     Appointment of Receiver.  The Mortgagee may, at any time following an Event of Default hereunder which has not been cured within any applicable remedy period or demand under any demand instrument (subject to any limitations in the Loan Documents), apply to any court having jurisdiction for appointment of receiver.  That court shall promptly appoint a receiver of the Premises, who shall be authorized to receive and apply the income, profits, issues, rents and revenues from whatever source derived.  The rents, profits, income, issues, and residues shall be applied by the receiver according to the lien of this Mortgage and the practice of the court.  The appointment of the receiver shall be made by such court as an admitted equity in a matter of absolute right to the Mortgagee, and without references to the adequacy or inadequacy of the value of the Premises or to the solvency or insolvency of the Mortgagor or any co-borrower or guarantor of the obligations secured hereby.

8.     General Provisions.  The Mortgagor and the Mortgagee further agree that:

8.1     Homestead.  There is no homestead interest in the Premises.

8.2     Waivers.  (a) Except as otherwise specifically provided in this Mortgage, the Note and the other Loan Documents, the Mortgagor waives demand, notice of any action taken in reliance on this Mortgage, and all other demands and notices of any description.

(b)     No delay or omission on the part of the Mortgagee in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or of any other right or remedy under this Mortgage.  A waiver on any one occasion shall not be construed as a bar to or waiver of any such right and/or remedy on any future occasion.  No single or partial exercise of any power hereunder shall preclude other or future exercise thereof or the exercise of any other right; and

(c)     That receipt and disposition of rents, income of the Premises, insurance proceeds, eminent domain awards, or any other sums under the provisions of the Loan Documents by the Mortgagee shall not be a waiver or release of any rights of the Mortgagee, including but not limited to, the right of foreclosure or acceleration of the Note, whether such receipt or disposition shall be before or after exercise of any such rights.

8.3     Binding Agreement.  This Mortgage shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, legal representatives, successors, and assigns; provided, however, that any assumption of any obligations of Mortgagor hereunder shall not constitute a release of the party whose obligation is being assumed without the Mortgagee's prior written consent.

8.4     Amendment.  This Mortgage shall not be changed in any respect except by written instrument signed by the parties hereto.

8.5     Governing Law.  This Mortgage and all rights and obligations hereunder, including matters of construction, validity, and performance, shall be governed by the laws of the State of New Hampshire.

8.6　　Severability.  If any term, condition, or provision of this Mortgage or the application thereof to any person or circumstance shall, to any extent, be held invalid or unenforceable according to law, then the remaining terms, conditions, and provisions of this Mortgage, or the application of any such invalid or unenforceable term, condition or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby, and each term, condition, and provision of this Mortgage shall be valid and enforced to the fullest extent permitted by law.

8.7　　Headings.  The descriptive headings of the sections of this Mortgage have been inserted for convenience and reference only and shall not control or affect the meaning or construction of any of the contents hereof.

8.8　　Estoppel Certificate.  The Mortgagor, within five (5) days after being given notice as provided below, will furnish to the Mortgagee a written statement duly acknowledged by the Mortgagor or its representative certifying the principal amount then outstanding on the Note and certifying that no offsets or defenses exist against the Mortgage indebtedness (or explaining such offsets or defenses to the extent they exist).

8.9　　Notice.  Any demand or notice required or permitted hereunder shall be effective if either: (a) hand-delivered to the addressee, or (b) deposited in the mail, registered or certified, return receipt requested and postage prepaid, or delivered to a private express company addressed to the addressee: (i) at the address shown at the beginning of this Mortgage, or (ii) if such party has provided the other in writing with a change of address, at the last address so provided.  Any notice or demand mailed as provided in this paragraph shall be deemed given and received on the earlier of:

(A)　　the date received; or

(B)　　the date of delivery, refusal or non-delivery as indicated on the return receipt, if sent by mail or private express as provided above.

8.10　　Gender and Number.  All words denoting gender or number shall be construed to include any other gender or number as the context and facts require.

8.11　　Conflict with other Loan Documents.  In the event of any conflict between the terms, covenants, conditions and restrictions contained in the Loan Documents, the term, covenant and condition or restriction which grants the greater benefit upon the Mortgagee shall control.  The determination as to which term, covenant, condition or restriction is the more beneficial shall be made by the Mortgagee in its reasonable discretion.

8.12　　Waiver of Right of Exemption.  The Mortgagor, for the consideration aforesaid, hereby waives all rights of exemption in the Premises as the same are now or here after provided of the provisions of any federal or state law, including, without limitation, 11 U.S.C. §522.

8.13　　Replacement of Security Documents.  Upon receipt of an affidavit of an officer of the Mortgagee as to the loss, theft, destruction or mutilation of the Note or any other security

document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon cancellation of such Note or other security document, the Mortgagor will issue, in lieu thereof, a replacement note or other security document in the same principal amount thereof and otherwise of like tenor.

8.14  Waiver of Jury Trial.  THE MORTGAGOR AND THE MORTGAGEE MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF MORTGAGEE RELATING TO THE ADMINISTRATION OF THE LOANS OR ENFORCEMENT OF THE LOAN DOCUMENTS, AND AGREE THAT NEITHER PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  EXCEPT AS PROHIBITED BY LAW OR OTHERWISE PROVIDED IN THE LOAN DOCUMENTS, THE MORTGAGOR HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, ENHANCED COMPENSATORY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES, AND REASONABLE ATTORNEYS FEES IN THE EVENT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE BANK, ITS AGENTS AND EMPLOYEES. THE MORTGAGOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF MORTGAGEE HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT MORTGAGEE WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER.  THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR MORTGAGEE TO ACCEPT THIS MORTGAGE AND MAKE THE LOAN.

[Signature page follows]

IN WITNESS WHEREOF, the Mortgagor has executed this Mortgage, Security Agreement and Collateral Assignment of Leases and Rents as of the ___ day of _____, 2011.

MORTGAGOR:

_____

Witness

Harold P. Munce

_____

Witness

Marilyn J. Munce

MORTGAGEE:

NORTHWAY BANK

_____

Witness

By:_____
     Thomas Caruso, Its Duly
     Authorized Senior Vice President

STATE OF NEW HAMPSHIRE
COUNTY OF _____

    The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by Harold P. Munce.

_____
Justice of the Peace/Notary Public
My Commission Expires:
Notary Seal

STATE OF NEW HAMPSHIRE
COUNTY OF _____

    The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by Marilyn J. Munce.

_____
Justice of the Peace/Notary Public
My Commission Expires:
Notary Seal

STATE OF NEW HAMPSHIRE
COUNTY OF _____

    The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by Thomas Caruso, duly authorized Senior Vice President of NORTHWAY BANK, a bank organized under the laws of the State of New Hampshire, on behalf of the same.

_____
Justice of the Peace/Notary Public
My Commission Expires:
Notary Seal

J:\WDOX\DOCS\CLIENTS\020746\093343\M1811038.DOC

## SCHEDULE A

### Legal Description

The following tracts of land, with the buildings, improvements and fixtures thereon, and interests in real estate, situated in the Towns of Gorham, Berlin, Groveton and Lancaster, Coos County, New Hampshire, more particularly described as follows:

[To be completed]

For recorder's use:
*Tax Stamp*: $ _____
*Recording Fee*: $ _____
*Return to*: Account # _____
*Devine, Millimet & Branch - Attn: mrj*
*111 Amherst Street, Manchester, NH  03101*

_____
**(Properties Located in Warren, Grafton County, New Hampshire)**

## MORTGAGE, SECURITY AGREEMENT AND
## COLLATERAL ASSIGNMENT OF LEASES AND RENTS

THIS MORTGAGE, SECURITY AGREEMENT AND COLLATERAL ASSIGNMENT OF LEASES AND RENTS (hereinafter referred to as this "Mortgage") is made and entered into as of this _____ day of _____, 2011, by **BMRA REAL ESTATE VENTURES, LLC**, a New Hampshire liability company with a principal place of business at 453 Alpine Street, Berlin, New Hampshire  03570 (the "Mortgagor"), in favor of **NORTHWAY BANK**, a bank incorporated under the laws of the State of New Hampshire with a principal place of business at 9 Main Street, Berlin, New Hampshire 03570 (the "Mortgagee") with MORTGAGE COVENANTS, to secure:

A.      the payment of and performance of a certain promissory note of even date payable by the Mortgagor, Munce's Superior Petroleum Products, Inc., Gorham Oil, Inc., Superior Trucking, Inc., Munce's Real Estate Ventures, LLC, Harold P. Munce and Marilyn J. Munce as "Borrowers" to the Mortgagee as the "Bank" (as the same may be amended or modified, the "Note") with interest thereon, pursuant to which Mortgagor has promised to repay a certain loan in the principal amount of up to THREE HUNDRED THOUSAND DOLLARS ($300,000) (the "Loan") made by Mortgagee to the Borrowers for the purpose of financing the restructuring of the Borrowers' commercial and business operations;

B.      the payment of all other sums with interest thereon advanced in accordance herewith to protect the security and priority of this Mortgage Deed (the "Mortgage"), including the costs of collection; and

C.      the payment, performance and satisfaction of the financial liabilities and other obligations under the terms, conditions, representations, warranties and covenants contained in the Note, a certain Loan Agreement by and among the Borrowers, the Mortgagee and others of even date, as the same may be amended, (the "Loan Agreement"), the documents defined therein as the Loan Documents, all loans or obligations, now existing or hereafter arising, of any Borrower owed to the Bank (or any affiliate thereof), as the same may have been and may be hereafter amended, including, but not limited to the prior loans, and any obligations arising under

any foreign exchange contracts, interest rate swap, cap, floor or hedging agreements, or similar agreements and all obligations of Mortgagor to Mortgagee arising out of or in connection with any Automated Clearing House ("ACH") Agreements relating to the procession of ACH transactions, together with all fees, expenses, charges and other amounts outstanding and chargeable to the Mortgagor under the ACH Agreements, all as they may be amended, renewed, extended or restated from time to time (the foregoing including, without limitation, the Note and the Loan Agreement are collectively referred to herein as the "Loan Documents").

The following described premises (the "Premises"):

Certain tracts or parcels of land, together with all buildings, fixtures and improvements thereon, whether now affixed or to be affixed, located in the Town of Warren, Grafton County, New Hampshire, more particularly described in Schedule A attached hereto and made a part hereof.

As further security for payment of the indebtedness and performance of the obligations, covenants and agreements secured hereby, the Mortgagor hereby grants, transfers, sets over and assigns, with MORTGAGE COVENANTS, to the Mortgagee:

D.      Any and all tenants, hereditaments, easements, rights of way, licenses, profits, privileges and other appurtenances belonging, relating or pertaining to the Premises;

E.      All rents, security deposits, issues and profits, revenues, royalties, bonuses, rights and benefits under any and all leases or tenancies now existing or hereafter created of the Premises or any part thereof, with the right to receive and apply the same to said indebtedness, and the Mortgagee may demand, sue for and recover such payments, but shall not be required to do so; provided, however, that so long as the Mortgagor is not in default hereunder, the right to receive and retain such rents, issues and profits is reserved to the Mortgagor.  To carry out the foregoing, the Mortgagor agrees (1) to execute and deliver to the Mortgagee such collateral assignments of leases and rents applicable to the Premises as the Mortgagee may from time to time request, while this Mortgage and the debt secured hereby are outstanding, and further (2) not to cancel, accept a surrender of, reduce the rentals under, anticipate any rentals under, or modify any such leases or tenancies, or consent to an assignment or subletting thereof, in whole or in part, without the Mortgagee's written consent.  Nothing herein shall obligate the Mortgagee to perform the duties of the Mortgagor as landlord or lessor under any such leases or tenancies, which duties the Mortgagor hereby covenants and agrees to well and punctually per-form; and

F.      All judgments, awards of damages and settlements hereafter made as a result or in lieu of any taking of the Premises or any interest therein or part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Premises or the improvements thereon or any part thereof, including any award for change of grade of streets.  In the event that any such damage cannot, in the reasonable opinion of Mortgagee, be repaired within a period of ninety (90) days, or in the event such damage materially interferes with Mortgagor's ability to operate the Premises for their intended purposes, the Mortgagee may apply all such sums or any part thereof so received on the indebtedness secured hereby in such manner as it elects, or, at its option, the entire amount or any part thereof

so received may be released.  If an Event of Default has occurred under the Loan Documents the Mortgagor hereby irrevocably authorizes and appoints the Mortgagee its attorney-in-fact to collect and receive any such judgments, awards and settlements from the authorities or entities making the same, to appear in any proceeding therefor, to give receipts and acquittances therefor, and to apply the same to payment on account of the debt secured hereby, whether then matured or not.  The Mortgagor will execute and deliver to the Mortgagee on demand such assignments and other instruments as the Mortgagee may require for said purposes and, after the occurrence of an Event of Default, will reimburse the Mortgagee for its cost (including reasonable counsel fees) in the collection of such judgments and settlements.

The Mortgagor also grants the Mortgagee a security interest in the following to secure the obligations of the Mortgagor to the Mortgagee set forth herein:

(1)     All fixtures, machinery, equipment, building materials and components whether or not incorporated into the Premises and all other tangible personal property intended for the construction, use or operation of the Premises or for use in or with the building or other improvements on the Premises, whether now or hereafter owned by the Mortgagor and now affixed or to be affixed, or now or hereafter located upon the Premises, including all appurtenant easements.  The foregoing shall include without limitation all construction materials, plumbing, heating, lighting, refrigerating, ventilating and air conditioning apparatus and equipment, elevators and elevator machinery, boilers, tanks, motors, sprinkler and fire extinguishing systems, alarm systems, screens, awnings, screen doors, storm and other detachable awnings, storm and other detachable windows and doors, and other equipment, machinery, furniture and furnishings, fixtures, and articles of personal property now and hereafter owned by the Mortgagor and now and hereafter affixed to, placed upon or used in connection with the construction or operation of the Premises, and all other purposes whether or not included in the foregoing enumeration, together with cash proceeds and non-cash proceeds of all of the foregoing, all of which are covered by this Mortgage, whether or not such property is subject to prior conditional sales agreements, chattel mortgages or other liens, excepting inventory and personal property to be consumed or sold in the normal course of business of the Mortgagor.

(2)     All "Assigned Contracts and Permits" meaning all of the contracts, declarant's rights, development rights, licenses, permits, plans, specifications, approvals, agreements and warranties, and all of Mortgagor's right, title and interest therein, whether now owned or hereafter acquired, and all proceeds and products thereof, and all accounts, deposit accounts, contract rights and general intangibles related thereto, which are in any manner related to the Premises and the improvements on or to be constructed on the Premises.

(3)     Any and all additions, accessions, substitutions or replacements to or for any of the foregoing.

(4) Any and all products and proceeds of any or all of the foregoing, including, without limitation, cash and cash equivalents, tax refunds, and the proceeds of insurance policies providing coverage against the loss or destruction of or damage to any of such collateral.

(5) All of the Mortgagor's after-acquired property of the kinds and types described in the foregoing paragraphs.

1.  <u>Representation, Warranties and Covenants of the Mortgagor</u>.  In addition to the MORTGAGE COVENANTS, the Mortgagor further represents, warrants, covenants and agrees, as appropriate, with the Mortgagee, its successors and assigns, as follows:

1.1  <u>Title</u>.  The Mortgagor, for itself and its successors and assigns, does hereby covenant, grant and agree to and with the Mortgagee and its successors and assigns, that until the delivery hereof it is the lawful owner of the Premises seized and possessed thereof in its own right in fee simple, has full power and lawful authority to grant and convey the same in manner aforesaid that the Premises are free and clear from any encumbrance whatsoever, that except as otherwise recited in <u>Schedule A</u>, it and its successors shall warrant and defend the same to the Mortgagee and its successors and assigns against the lawful claims and demands of any person or persons whatsoever, except as otherwise herein recited; and that, except as otherwise recited in Schedule A, it will not cause or permit any lien to arise against the Premises which is superior to the lien of this Mortgage ("Permitted Encumbrances").

1.2  <u>Payment and Performance</u>.  To pay and perform the Note secured hereby and interest thereon as the same shall become due and payable, and also any other indebtedness that may accrue to the Mortgagee under the terms of this Mortgage, and to perform all other agreements set forth herein and in the Loan Documents.

1.3  <u>Insurance</u>.  That the Mortgagor will keep the buildings, improvements and personal property now existing or hereafter erected or located on the Premises and the interests and liabilities incident to the ownership thereof insured against loss by fire and such other hazards, casualties and contingencies, and in manner, form and companies in the manner set forth in the Loan Agreement; and will escrow payments on account of such insurance premiums with Mortgagee to the extent provided in the Loan Agreement.

1.4  <u>Taxes and Assessments</u>.  That the Mortgagor will pay, before the same become delinquent or any penalty attaches thereto for nonpayment, all taxes, assessments and charges of every nature that may now or hereafter be levied or assessed, upon the Premises or any part thereof, or upon the rents, issues, income or profits thereof, whether any or all of said taxes, assessments or charges be levied directly or indirectly, and will pay, before the same become delinquent or any penalty attached thereto for the nonpayment, all taxes which by reason of nonpayment create a lien prior to the lien of the Mortgage and will thereupon submit to the Mortgagee such evidence of the due and punctual payment of such taxes, etc. as the Mortgagee may reasonably require; and will escrow payments on account of real estate taxes with Mortgagee, in an account bearing interest, upon Mortgagee's request or upon the occurrence of an Event of Default under the Loan Agreement.

1.5     Maintenance of the Premises.  That the Mortgagor will keep protected in good order, repair and condition (reasonable wear and tear and casualty insured against excepted) at all times the buildings and improvements (including the Mortgagor's fixtures) now standing or hereafter erected or placed upon the Premises and any and all of the Mortgagor's appurtenances, apparatus and articles of personal property, including, but not limited to, furniture, furnishings and equipment, now or hereafter in or attached to or used in connection with said buildings or improvements, promptly replacing any of the aforesaid which may become lost, destroyed or unsuitable for use; will always maintain in good order and condition all the facilities, easements, works, and ways set forth in the description of the Premises, whether located upon the Premises hereby mortgaged or elsewhere; and will not commit or suffer any strip or waste of the Premises, or any violation of any law, regulation, ordinance or contract affecting the Premises, and will not commit or suffer any demolition, removal or material alteration of any buildings or improvements (including fixtures) on the Premises without the written consent of the Mortgagee. The Mortgagor shall maintain and preserve the parking areas, passageways and drives, now or hereafter existing on the Premises.

1.6     Books and Records.  That the Mortgagor shall maintain full and correct books and records showing in detail the earnings and expenses of the Premises and will permit the Mortgagee and its representatives to examine said books and records and all supporting vouchers and data at any reasonable time, during business hours, from time to time upon prior request by the Mortgagee.

1.7     Other Proceedings.  That if any action or proceeding be commenced, excepting an action by the Mortgagor against the Mortgagee, to which action or proceeding the Mortgagee is made a party by reason of the execution of the Mortgage or the Note which it secures, or in which it becomes necessary to defend or uphold the lien of the Mortgage, all reasonable sums paid by the Mortgagee for the expense of any litigation to prosecute or defend the rights and lien created hereby including reasonable attorneys' fees, shall be paid by the Mortgagor, together with interest thereon from date of payment at the highest rate specified in the Note secured hereby, and any such sum, and the interest thereon, shall be immediately due and payable and be secured hereby, having the benefit of the lien hereby created, as a part thereof and of its priority.  The Mortgagee shall give the Mortgagor prompt notice of the initiation of any such action or proceeding.

1.8     Consent to Release, Etc.  Without affecting the liability of the Mortgagor or, any other person (except any person expressly released in writing) for payment of any indebtedness secured hereby or for performance of any obligation contained herein, and without affecting the rights of the Mortgagee with respect to any security not expressly released in writing, the Mortgagee may at any time and from time to time, either before or after the maturity of the Note and without notice or consent:

(a)     Release any person liable for payment of all or any part of the indebtedness or for performance of any obligation;

(b)     Make any agreement extending the time or otherwise altering the terms of payment of all or any part of the indebtedness, or modifying or waiving any obligation, or subordinating, modifying or otherwise dealing with the lien or charge hereof; provided, however, that nothing herein shall entitle Mortgagee to increase Mortgagor's payment or obligations hereunder without Mortgagor's consent.

(c)     Exercise or refrain from exercising or waive any right the Mortgagee may have;

(d)     Accept additional security of any kind; or

(e)     Release or otherwise deal with any property, real or personal, securing the indebtedness, including all or any part of the property mortgaged hereby.

1.9     Zoning, Etc.  If at any time the then-existing use or occupancy of the Premises shall, pursuant to any zoning or other law, ordinance or regulation, be permitted only so long as such use or occupancy shall continue, that the Mortgagor shall not cause or permit such use or occupancy to be discontinued without the prior written consent of the Mortgagee.

1.10     Leases.  To enter into leases of the Premises only in such terms and conditions as are reasonably approved by the Mortgagee such approval not to be unreasonably delayed or withheld; all of such leases to be subordinated to the Mortgage and the lien hereof.

1.11     Due on Sale.  This Mortgage is not assignable or assumable and if all or any part of the Premises is sold or conveyed, or if there are transfers of any interests in the Mortgagor prohibited by the Loan Agreement, then the Mortgagee may, at its option, require immediate payment in full of all sums secured by this Mortgage.

1.12     Underground Tanks.  The Mortgagor will comply with all applicable federal and state laws and regulations, as the same may be amended from time to time, relating to the inspection and replacement of underground fuel storage tanks located on the Premises.

1.13     Hazardous Waste.  The Mortgagor represents that the Premises do not contain any hazardous wastes, hazardous substances (including, without limitation, medical or infectious waste), hazardous materials, toxic substances or toxic pollutants, as those terms are used in the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Hazardous Materials Transportation Act and the Toxic Substances Control Act, the Clean Air Act, the Clean Water-Act, or any similar state or local law, or in any regulations promulgated pursuant thereto, or in any other applicable law as the same may be amended from time to time.  The Mortgagor covenants to strictly comply with the requirements of all such laws and to promptly notify the Mortgagee of the presence in or on the Premises of any materials, the use, storage, transportation or disposal of which is regulated by such laws, unless Mortgagor is using or storing such materials in accordance with applicable law.  The Mortgagor hereby covenants to defend, indemnify, and hold the Mortgagee harmless from and against all loss, cost, damage and liability, including reasonable attorneys' fees and costs of litigation, suffered or incurred by the Mortgagee on account of the presence of any such

materials in or on the Premises, including, without limitation, any such loss, cost, damage or liability arising from a violation of any of such laws.

1.14    Future Advances . Future advances from the Mortgagee shall be secured by this Mortgage as evidenced by the Note secured hereby.

1.15    Compliance with Laws, Etc.  The Mortgagor will comply with all regulations, condominium documentation, covenants, rules, ordinances, statutes, codes, permits, orders and decrees applicable to the Mortgagor, or to the Premises, the use, occupancy or condition thereof or any part thereof.  The Mortgagor, if an entity other than a natural person, will, so long as it is owner of the Premises, do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges as such an entity under the laws of the state of its incorporation including without limitation the payment of all fees and other charges required in connection therewith.  The Mortgagor shall have the right to contest by appropriate legal proceedings, but without cost or expense to the Mortgagee, the validity of any laws, ordinances, order, rules and regulations affecting the Premises if compliance therewith may legally be held in abeyance without the sufferance of any charge, lien or liability against the Premises, and the Mortgagor may postpone compliance therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay compliance, provided the Mortgagee s furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such noncompliance or delay.

1.16    Mechanics Liens, Etc.  The Mortgagor will pay, as such shall become due, all lawful claims and demands of mechanics, materialmen, laborers and other which, if unpaid, might result in, or permit the creation of, a lien on the Premises or any part thereof, or on the revenues, rents, issues, income and profits arising therefrom.  Except as permitted under the Loan Agreement, the Mortgagor will not create or permit to be created and will promptly discharge any mortgage, lien, or charge on the Premises or any part thereof or on the interest of the Mortgagor or the Mortgagee therein, and the Mortgagor will do or cause to be done everything reasonably necessary so that the lien hereof shall be fully preserved, at the cost of the Mortgagor, without expense to the Mortgagee.  The Mortgagor shall have the right to contest such claims or demands by appropriate legal proceedings, but without cost or expense to the Mortgagee, if such claim or demand may legally be held in abeyance without the sufferance of any charge, lien or liability against the Mortgaged Property, and the Mortgagor may postpone satisfaction therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay satisfaction, provided the Mortgagee is furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such contest and refusal to satisfy pending contest.

1.17    Commercial Purpose.  The Mortgagor warrants that this Mortgage is given primarily for business, commercial or agricultural purpose.  The Premises subject to this Mortgage are not used exclusively for residential purposes and are not the primary residence of the Mortgagor.

2.    Payments, Etc. by the Mortgagee.  If the Mortgagor shall neglect or refuse to keep in good repair the property conveyed by this Mortgage, to replace the same as herein agreed, to maintain and pay the premiums for insurance which may be required under Paragraph l.3 or to pay and discharge all taxes, assessments, charges and liens of every nature and to whomever assessed, as provided for in Paragraphs l.4 and l.16, the Mortgagee may, at its election, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments, charges and liens and any amounts paid as a result thereof, together with interest thereon at the highest rate of interest specified in the Note secured hereby from the date of payment, shall be immediately due and payable by the Mortgagor to the Mortgagee, and until paid shall be added and become part of the principal debt secured hereby, and the same may be collected as a part of said principal debt in any suit herein or upon the Note; or the Mortgagee, by the payment of any tax, assessment or charge, may, if it sees fit if allowed by law, be thereby subrogated to the rights of the state, county, village and all political or governmental subdivisions.  No such advances shall be deemed to relieve the Mortgagor of any default hereunder or impair any right or remedy consequent thereon, and the exercise of the rights to make advances granted in this paragraph shall be optional with the Mortgagee and not obligatory, and the Mortgagee shall not in any case be liable to the Mortgagor for a failure to exercise any such right.  The Mortgagee shall have no responsibility with respect to the legality, validity and priority of any such claim, lien, encumbrance, tax, assessment and premium, and of the amount necessary to be paid in satisfaction thereof.

3.    Default; Remedies.

3.1    The Mortgagor shall be in default under this Mortgage upon the occurrence of an event of default under *any* of the Loan Documents, including the Loan Agreement and the expiration of the grace periods, if any, as specified in the Loan Agreement (herein called the "Events of Default").  Such Events of Default shall include without limitation, the following:

(a)    Default in the due and punctual payment of any payment of principal of or premium, if any, or interest on the Note and such default shall continue beyond the expiration of the applicable period of grace, if any; or

(b)    Default in payment or performance under any of the obligations under the Loan Documents, and such default shall continue beyond the expiration of the applicable period of grace, if any; or

(c)    Default in the due performance or observance of any covenant or provision of this Mortgage and such default shall continue beyond the expiration of the applicable period of grace, if any.

3.2    Upon the occurrence of an Event of Default which has not been cured within any applicable remedy period or demand under any demand instrument, and at the option of the Mortgagee, (a) the Mortgagee may declare the obligations of the Mortgagor to the Mortgagee to be immediately due and payable, (b) the Mortgagee may immediately take possession of the Premises, and (c) the Mortgagee may forthwith exercise all other rights and remedies provided

herein, or in any of the other Loan Documents, or which may be available to the Mortgagee by law, including without limitation, the STATUTORY POWER OF SALE.

3.3    Notwithstanding any other provision set forth herein and not in limitation thereof, this Mortgage is upon the STATUTORY CONDITIONS as well as the other terms and conditions hereof, for any breach of which the Mortgagee shall have the STATUTORY POWER OF SALE.

3.4    All rights and remedies set forth herein shall be cumulative and concurrent, and may be pursued singly, successively, or together, at the Mortgagee's sole discretion, and may be exercised as often as occasion thereof shall occur.

3.5    If the Mortgagor, its successors or assigns, pays the Mortgagee, all amounts under the Loan Documents, complies with and performs all terms and obligations as set forth in the Note and the Loan Documents, then the Mortgage shall be void; otherwise it shall remain in full force and effect.

4.    <u>Possession by Mortgagee</u>.

4.1    If the Mortgagee shall take possession of the Premises as permitted hereby, then in addition to, and not in limitation of, the Mortgagee's STATUTORY POWER OF SALE, the Mortgagee may:

(a)    hold, manage, operate, and lease the Premises to the Mortgagor or to any other entity on such terms and for such period(s) of time as the Mortgagee may deem proper, and the provisions of any lease made by the Mortgagee pursuant hereto shall be valid and binding upon the Mortgagor notwithstanding the fact that the Mortgagee's right of possession may terminate or this Mortgage may be satisfied of record prior to the expiration of the term of such lease;

(b)    make such alterations, additions, improvements, renovations, repairs, and replacements to the Premises as the Mortgagee may reasonably deem proper;

(c)    remodel such improvements so as to make the same available in whole or in part for business purposes;

(d)    collect the rents, issues, and profits arising from the Premises, past due and thereafter becoming due, and apply the same, in such order of priority as the Mortgagee may determine, to the payment of all charges and commissions incidental to the collection of rents, the management of the Premises, and the obligations and all sums or charges required to be paid by the Mortgagor hereunder;

(e)    take any other action the Mortgagee deems necessary or appropriate in its sole discretion to preserve, protect, or improve the Premises.

4.2    All monies advanced by the Mortgagee for the above purposes and not repaid out of the rents collected shall immediately and without demand be repaid by the Mortgagor to the

Mortgagee, together with interest thereon at the same rate as provided in the Note, and shall be added to the- principal indebtedness secured hereby.

4.3     The taking of possession and the collection of rents by the Mortgagee as described above shall not be construed to be an affirmation of any lease of the Premises or any part thereof, and the Mortgagee, or any purchaser at any foreclosure sale, may terminate any such lease at any time, whether or not such taking of possession and collection of rents has occurred.

5.     <u>Foreclosure Pursuant to Power of Sale</u>.

5.1     Upon default, the Mortgagee or its legal representatives or assigns may on such terms and conditions as the Mortgagee deems appropriate in its sole discretion and pursuant to the STATUTORY POWER OF SALE, sell the Premises by public sale to the highest bidder as provided herein and in NH RSA 479, et al., as such statutes may be amended from time to time.

5.2     If the Mortgagee invokes the STATUTORY POWER OF SALE, the Mortgagee may, without further demand upon the Mortgagor, sell the Premises or any estate therein, in one or more parcels, to the highest bidder for cash or other consideration acceptable to the Mortgagee at public sale to be held upon the Premises.

5.3     In the event that the Mortgagee seeks to enforce its rights and remedies hereunder, the Mortgagor shall fully cooperate with the Mortgagee in any foreclosure of the Premises scheduled by the Mortgagee, including without limitation; (i) providing the Mortgagee with any information concerning the Premises reasonably requested by the Mortgagee, such as rental income information, taxes, water assessment charges and any maintenance costs associated with the Premises; (ii) arranging with the Mortgagee two (2) preview dates, each three hours in length, prior to the dates of any foreclosure sale; and (iii) granting the Mortgagee unlimited access to the Premises on the date of the foreclosure sale for one hour before and one hour after the foreclosure sale, except that Mortgagee shall not interfere with the conduct of Mortgagor's business operations on such Premises.  In addition, the Mortgagor shall, without waiving its right to enjoin a foreclosure under NH RSA 479, under no circumstances and in no event in any way interfere with, any foreclosure sale of the Premises scheduled by the Mortgagee.

5.4     The deed given by reason of such sale shall convey to the purchaser an indefeasible title to the Premises, discharged of all rights of redemption with respect to this mortgage by the Mortgagor and its successors or assigns, or any person claiming from or under it or them.  The Mortgagee shall apply the proceeds of such sale first to all costs of notice and sale of the Premises including reasonable attorneys', accountants' and appraisers' fees, then to any and all accrued but unpaid interest due to the Mortgagee, and thereafter to the principal indebtedness evidenced by the Note and secured hereby, and to the other indebtedness secured hereby.  Any excess may be paid to others having a lien on the Premises not having priority over this Mortgage and if none, then to the Mortgagor.  The Mortgagor shall be liable for any deficiency.

5.5     In the event of foreclosure, at the option of the Mortgagee, the interest of each of the Mortgagor and the Mortgagee herein may be sold as a single unit together with such personal

property, furniture, furnishings, fixtures, machinery, and equipment as may secure the Note or be secured by the Loan Documents.

5.6     If the provisions of the Uniform Commercial Code apply, any property or security given to secure the indebtedness secured hereby may be sold with or as a part of the Premises, or any part thereof, at one or more foreclosure sales, and any notice required under such provisions shall be fully satisfied by the notice provided to be given hereby in execution of the STATUTORY POWER OF SALE.

6.     Security Agreement.  The Mortgage is among other things intended to be a security agreement and financing statement with respect to the personal property and fixtures described and included in the Mortgage, and all additions, accessions, substitutions and replacements thereto and therefor, together with the proceeds thereof, and all of which are hereinafter referred to as the collateral and the Mortgagor hereby grants and conveys to Mortgagee, its successors and assigns, a security interest therein.  That upon default of any material term, condition or covenant of the Mortgage and acceleration of any indebtedness hereby secured, the Mortgagee may, at its discretion, require the Mortgagor to assemble the collateral and make it available to the Mortgagee at a place reasonably convenient to both parties to be designated by the Mortgagee.  That the Mortgagee shall give the Mortgagor notice, by registered mail, postage prepaid, of the time and place of any public sale of any of the collateral or of the time any private sale or other intended disposition thereof is to be made by sending notice to the Mortgagor at least ten (10) days before the time of the sale or other disposition, which provisions for notice the Mortgagor and the Mortgagee agree are reasonable; provided, however, that nothing herein shall preclude the Mortgagee from proceeding as to both real and personal property in accordance with the Mortgagee's rights and remedies in respect of the real property.  The Mortgagee shall have all of the remedies of a secured party under the Uniform Commercial Code as now in effect in the state of New Hampshire, and such further remedies as may from time to time hereafter be provided in New Hampshire for a secured party.  The Mortgagor agrees that all rights of the Mortgagee as to said collateral and as to said real estate, and rights and interest appurtenant thereto, may have exercised together or separately and further agrees that in exercising its power of sale as to said collateral and as to said real estate, and rights and interest appurtenant thereto, the Mortgagee may sell the collateral or any part thereof, either separately from or together with the sale real estate, rights and interests appurtenant thereto, or any part thereof, all as the Mortgagee may in its discretion elect.

For the purpose of this Mortgage constituting a financing statement under the Uniform Commercial Code the addresses of the parties are:

The Mortgagor (Debtor)             BMRA REAL ESTATE VENTURES, LLC
                                   453 Alpine Street
                                   Berlin, New Hampshire 03570

                                   and

The Mortgagee (Secured Party)      NORTHWAY BANK
                                    9 Main Street
                                    Berlin, New Hampshire 03570

7.     <u>Appointment of Receiver</u>.  The Mortgagee may, at any time following an Event of Default hereunder which has not been cured within any applicable remedy period or demand under any demand instrument (subject to any limitations in the Loan Documents), apply to any court having jurisdiction for appointment of receiver.  That court shall promptly appoint a receiver of the Premises, who shall be authorized to receive and apply the income, profits, issues, rents and revenues from whatever source derived.  The rents, profits, income, issues, and residues shall be applied by the receiver according to the lien of this Mortgage and the practice of the court.  The appointment of the receiver shall be made by such court as an admitted equity in a matter of absolute right to the Mortgagee, and without references to the adequacy or inadequacy of the value of the Premises or to the solvency or insolvency of the Mortgagor or any co-borrower or guarantor of the obligations secured hereby.

8.     <u>General Provisions</u>.  The Mortgagor and the Mortgagee further agree that:

8.1     <u>Homestead</u>.  There is no homestead interest in the Premises.

8.2     <u>Waivers</u>.  (a) Except as otherwise specifically provided in this Mortgage, the Note and the other Loan Documents, the Mortgagor waives demand, notice of any action taken in reliance on this Mortgage, and all other demands and notices of any description.

(b)     No delay or omission on the part of the Mortgagee in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or of any other right or remedy under this Mortgage.  A waiver on any one occasion shall not be construed as a bar to or waiver of any such right and/or remedy on any future occasion.  No single or partial exercise of any power hereunder shall preclude other or future exercise thereof or the exercise of any other right; and

(c)     That receipt and disposition of rents, income of the Premises, insurance proceeds, eminent domain awards, or any other sums under the provisions of the Loan Documents by the Mortgagee shall not be a waiver or release of any rights of the Mortgagee, including but not limited to, the right of foreclosure or acceleration of the Note, whether such receipt or disposition shall be before or after exercise of any such rights.

8.3     <u>Binding Agreement</u>.  This Mortgage shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, legal representatives, successors, and assigns; provided, however, that any assumption of any obligations of Mortgagor hereunder shall not constitute a release of the party whose obligation is being assumed without the Mortgagee's prior written consent.

8.4     <u>Amendment</u>.  This Mortgage shall not be changed in any respect except by written instrument signed by the parties hereto.

8.5     Governing Law.  This Mortgage and all rights and obligations hereunder, including matters of construction, validity, and performance, shall be governed by the laws of the State of New Hampshire.

8.6     Severability.  If any term, condition, or provision of this Mortgage or the application thereof to any person or circumstance shall, to any extent, be held invalid or unenforceable according to law, then the remaining terms, conditions, and provisions of this Mortgage, or the application of any such invalid or unenforceable term, condition or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby, and each term, condition, and provision of this Mortgage shall be valid and enforced to the fullest extent permitted by law.

8.7     Headings.  The descriptive headings of the sections of this Mortgage have been inserted for convenience and reference only and shall not control or affect the meaning or construction of any of the contents hereof.

8.8     Estoppel Certificate.  The Mortgagor, within five (5) days after being given notice as provided below, will furnish to the Mortgagee a written statement duly acknowledged by the Mortgagor or its representative certifying the principal amount then outstanding on the Note and certifying that no offsets or defenses exist against the Mortgage indebtedness (or explaining such offsets or defenses to the extent they exist).

8.9     Notice.  Any demand or notice required or permitted hereunder shall be effective if either: (a) hand-delivered to the addressee, or (b) deposited in the mail, registered or certified, return receipt requested and postage prepaid, or delivered to a private express company addressed to the addressee: (i) at the address shown at the beginning of this Mortgage, or (ii) if such party has provided the other in writing with a change of address, at the last address so provided.  Any notice or demand mailed as provided in this paragraph shall be deemed given and received on the earlier of:

        (A)     the date received; or

        (B)     the date of delivery, refusal or non-delivery as indicated on the return receipt, if sent by mail or private express as provided above.

8.10    Gender and Number.  All words denoting gender or number shall be construed to include any other gender or number as the context and facts require.

8.11    Conflict with other Loan Documents.  In the event of any conflict between the terms, covenants, conditions and restrictions contained in the Loan Documents, the term, covenant and condition or restriction which grants the greater benefit upon the Mortgagee shall control.  The determination as to which term, covenant, condition or restriction is the more beneficial shall be made by the Mortgagee in its reasonable discretion.

8.12    Waiver of Right of Exemption.  The Mortgagor, for the consideration aforesaid, hereby waives all rights of exemption in the Premises as the same are now or here after provided of the provisions of any federal or state law, including, without limitation, 11 U.S.C. §522.

8.13    Replacement of Security Documents.  Upon receipt of an affidavit of an officer of the Mortgagee as to the loss, theft, destruction or mutilation of the Note or any other security document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon cancellation of such Note or other security document, the Mortgagor will issue, in lieu thereof, a replacement note or other security document in the same principal amount thereof and otherwise of like tenor.

8.14    Waiver of Jury Trial.  THE MORTGAGOR AND THE MORTGAGEE MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF MORTGAGEE RELATING TO THE ADMINISTRATION OF THE LOANS OR ENFORCEMENT OF THE LOAN DOCUMENTS, AND AGREE THAT NEITHER PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  EXCEPT AS PROHIBITED BY LAW OR OTHERWISE PROVIDED IN THE LOAN DOCUMENTS, THE MORTGAGOR HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, ENHANCED COMPENSATORY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES, AND REASONABLE ATTORNEYS FEES IN THE EVENT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE BANK, ITS AGENTS AND EMPLOYEES. THE MORTGAGOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF MORTGAGEE HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT MORTGAGEE WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER.  THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR MORTGAGEE TO ACCEPT THIS MORTGAGE AND MAKE THE LOAN.

IN WITNESS WHEREOF, the Mortgagor has executed this Mortgage, Security Agreement and Collateral Assignment of Leases and Rents as of the ___ day of _____, 2011.

MORTGAGOR:

BMRA REAL ESTATE VENTURES, LLC

_____     By:_____
Witness     Name:
     Title:

MORTGAGEE:

NORTHWAY BANK

_____     By:_____
Witness     Thomas Caruso, Its Duly
     Authorized Senior Vice President

STATE OF NEW HAMPSHIRE
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by _____, duly authorized _____ of BMRA REAL ESTATE VENTURES, LLC, a New Hampshire limited liability company, on behalf of the same.

STATE OF NEW HAMPSHIRE
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by Thomas Caruso, duly authorized Senior Vice President of NORTHWAY BANK, a bank organized under the laws of the State of New Hampshire, on behalf of the same.

_____
Justice of the Peace/Notary Public
My Commission Expires:
Notary Seal

## SCHEDULE A

## Legal Description

The following tracts of land, with the buildings, improvements and fixtures thereon, and interests in real estate, situated in the Town of Warren, Grafton County, New Hampshire, more particularly described as follows:

[To be completed]

*For recorder's use:*
**Tax Stamp***: $ _____*
**Recording Fee***: $ _____*
**Return to***: Account # _____*
*Devine, Millimet & Branch - Attn: mrj*
*111 Amherst Street, Manchester, NH 03101*

_____
**(Properties Located in Lincoln and Plymouth, Grafton County, New Hampshire)**

## MORTGAGE, SECURITY AGREEMENT AND
## COLLATERAL ASSIGNMENT OF LEASES AND RENTS

THIS MORTGAGE, SECURITY AGREEMENT AND COLLATERAL ASSIGNMENT OF LEASES AND RENTS (hereinafter referred to as this "Mortgage") is made and entered into as of this _____ day of _____, 2011, by **HAROLD P. MUNCE and MARILYN J. MUNCE,** individuals with a principal address of 453 Alpine Street, Berlin, New Hampshire 03570 (the "Mortgagor"), in favor of **NORTHWAY BANK**, a bank incorporated under the laws of the State of New Hampshire with a principal place of business at 9 Main Street, Berlin, New Hampshire 03570 (the "Mortgagee") with MORTGAGE COVENANTS, to secure:

A. the payment of and performance of a certain promissory note of even date payable by the Mortgagor, Munce's Superior Petroleum Products, Inc., Gorham Oil, Inc., Superior Trucking, Inc., BMRA Real Estate Ventures, LLC, and Munce's Real Estate Ventures, LLC as "Borrowers" to the Mortgagee as the "Bank" (as the same may be amended or modified, the "Note") with interest thereon, pursuant to which Mortgagor has promised to repay a certain loan in the principal amount of up to THREE HUNDRED THOUSAND DOLLARS ($300,000) (the "Loan") made by Mortgagee to the Borrowers for the purpose of financing the restructuring of the Borrowers' commercial and business operations;

B. the payment of all other sums with interest thereon advanced in accordance herewith to protect the security and priority of this Mortgage Deed (the "Mortgage"), including the costs of collection; and

C. the payment, performance and satisfaction of the financial liabilities and other obligations under the terms, conditions, representations, warranties and covenants contained in the Note, a certain Loan Agreement by and among the Borrowers, the Mortgagee and others of even date, as the same may be amended, (the "Loan Agreement"), the documents defined therein as the Loan Documents, all loans or obligations, now existing or hereafter arising, of any Borrower owed to the Bank (or any affiliate thereof), as the same may have been and may be hereafter amended, including, but not limited to the prior loans, and any obligations arising under any foreign exchange contracts, interest rate swap, cap, floor or hedging agreements, or similar

agreements and all obligations of Mortgagor to Mortgagee arising out of or in connection with any Automated Clearing House ("ACH") Agreements relating to the procession of ACH transactions, together with all fees, expenses, charges and other amounts outstanding and chargeable to the Mortgagor under the ACH Agreements, all as they may be amended, renewed, extended or restated from time to time (the foregoing including, without limitation, the Note and the Loan Agreement are collectively referred to herein as the "Loan Documents").

The following described premises (the "Premises"):

Certain tracts or parcels of land, together with all buildings, fixtures and improvements thereon, whether now affixed or to be affixed, located in the Towns of Lincoln and Plymouth, Grafton County, New Hampshire, more particularly described in <u>Schedule A</u> attached hereto and made a part hereof.

As further security for payment of the indebtedness and performance of the obligations, covenants and agreements secured hereby, the Mortgagor hereby grants, transfers, sets over and assigns, with MORTGAGE COVENANTS, to the Mortgagee:

D.      Any and all tenants, hereditaments, easements, rights of way, licenses, profits, privileges and other appurtenances belonging, relating or pertaining to the Premises;

E.      All rents, security deposits, issues and profits, revenues, royalties, bonuses, rights and benefits under any and all leases or tenancies now existing or hereafter created of the Premises or any part thereof, with the right to receive and apply the same to said indebtedness, and the Mortgagee may demand, sue for and recover such payments, but shall not be required to do so; <u>provided</u>, <u>however</u>, that so long as the Mortgagor is not in default hereunder, the right to receive and retain such rents, issues and profits is reserved to the Mortgagor.  To carry out the foregoing, the Mortgagor agrees (1) to execute and deliver to the Mortgagee such collateral assignments of leases and rents applicable to the Premises as the Mortgagee may from time to time request, while this Mortgage and the debt secured hereby are outstanding, and further (2) not to cancel, accept a surrender of, reduce the rentals under, anticipate any rentals under, or modify any such leases or tenancies, or consent to an assignment or subletting thereof, in whole or in part, without the Mortgagee's written consent.  Nothing herein shall obligate the Mortgagee to perform the duties of the Mortgagor as landlord or lessor under any such leases or tenancies, which duties the Mortgagor hereby covenants and agrees to well and punctually per-form; and

F.      All judgments, awards of damages and settlements hereafter made as a result or in lieu of any taking of the Premises or any interest therein or part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Premises or the improvements thereon or any part thereof, including any award for change of grade of streets.  In the event that any such damage cannot, in the reasonable opinion of Mortgagee, be repaired within a period of ninety (90) days, or in the event such damage materially interferes with Mortgagor's ability to operate the Premises for their intended purposes, the Mortgagee may apply all such sums or any part thereof so received on the indebtedness secured hereby in such manner as it elects, or, at its option, the entire amount or any part thereof so received may be released.  If an Event of Default has occurred under the Loan Documents the

Mortgagor hereby irrevocably authorizes and appoints the Mortgagee its attorney-in-fact to collect and receive any such judgments, awards and settlements from the authorities or entities making the same, to appear in any proceeding therefor, to give receipts and acquittances therefor, and to apply the same to payment on account of the debt secured hereby, whether then matured or not.  The Mortgagor will execute and deliver to the Mortgagee on demand such assignments and other instruments as the Mortgagee may require for said purposes and, after the occurrence of an Event of Default, will reimburse the Mortgagee for its cost (including reasonable counsel fees) in the collection of such judgments and settlements.

The Mortgagor also grants the Mortgagee a security interest in the following to secure the obligations of the Mortgagor to the Mortgagee set forth herein:

(1)     All fixtures, machinery, equipment, building materials and components whether or not incorporated into the Premises and all other tangible personal property intended for the construction, use or operation of the Premises or for use in or with the building or other improvements on the Premises, whether now or hereafter owned by the Mortgagor and now affixed or to be affixed, or now or hereafter located upon the Premises, including all appurtenant easements.  The foregoing shall include without limitation all construction materials, plumbing, heating, lighting, refrigerating, ventilating and air conditioning apparatus and equipment, elevators and elevator machinery, boilers, tanks, motors, sprinkler and fire extinguishing systems, alarm systems, screens, awnings, screen doors, storm and other detachable awnings, storm and other detachable windows and doors, and other equipment, machinery, furniture and furnishings, fixtures, and articles of personal property now and hereafter owned by the Mortgagor and now and hereafter affixed to, placed upon or used in connection with the construction or operation of the Premises, and all other purposes whether or not included in the foregoing enumeration, together with cash proceeds and non-cash proceeds of all of the foregoing, all of which are covered by this Mortgage, whether or not such property is subject to prior conditional sales agreements, chattel mortgages or other liens, excepting inventory and personal property to be consumed or sold in the normal course of business of the Mortgagor.

(2)     All "Assigned Contracts and Permits" meaning all of the contracts, declarant's rights, development rights, licenses, permits, plans, specifications, approvals, agreements and warranties, and all of Mortgagor's right, title and interest therein, whether now owned or hereafter acquired, and all proceeds and products thereof, and all accounts, deposit accounts, contract rights and general intangibles related thereto, which are in any manner related to the Premises and the improvements on or to be constructed on the Premises.

(3)     Any and all additions, accessions, substitutions or replacements to or for any of the foregoing.

(4)     Any and all products and proceeds of any or all of the foregoing, including, without limitation, cash and cash equivalents, tax refunds, and the proceeds of

insurance policies providing coverage against the loss or destruction of or damage to any of such collateral.

(5)     All of the Mortgagor's after-acquired property of the kinds and types described in the foregoing paragraphs.

1.     Representation, Warranties and Covenants of the Mortgagor.  In addition to the MORTGAGE COVENANTS, the Mortgagor further represents, warrants, covenants and agrees, as appropriate, with the Mortgagee, its successors and assigns, as follows:

1.1     Title.  The Mortgagor, for itself and its successors and assigns, does hereby covenant, grant and agree to and with the Mortgagee and its successors and assigns, that until the delivery hereof it is the lawful owner of the Premises seized and possessed thereof in its own right in fee simple, has full power and lawful authority to grant and convey the same in manner aforesaid that the Premises are free and clear from any encumbrance whatsoever, that except as otherwise recited in Schedule A, it and its successors shall warrant and defend the same to the Mortgagee and its successors and assigns against the lawful claims and demands of any person or persons whatsoever, except as otherwise herein recited; and that, except as otherwise recited in Schedule A, it will not cause or permit any lien to arise against the Premises which is superior to the lien of this Mortgage ("Permitted Encumbrances").

1.2     Payment and Performance.  To pay and perform the Note secured hereby and interest thereon as the same shall become due and payable, and also any other indebtedness that may accrue to the Mortgagee under the terms of this Mortgage, and to perform all other agreements set forth herein and in the Loan Documents.

1.3     Insurance.  That the Mortgagor will keep the buildings, improvements and personal property now existing or hereafter erected or located on the Premises and the interests and liabilities incident to the ownership thereof insured against loss by fire and such other hazards, casualties and contingencies, and in manner, form and companies in the manner set forth in the Loan Agreement; and will escrow payments on account of such insurance premiums with Mortgagee to the extent provided in the Loan Agreement.

1.4     Taxes and Assessments.  That the Mortgagor will pay, before the same become delinquent or any penalty attaches thereto for nonpayment, all taxes, assessments and charges of every nature that may now or hereafter be levied or assessed, upon the Premises or any part thereof, or upon the rents, issues, income or profits thereof, whether any or all of said taxes, assessments or charges be levied directly or indirectly, and will pay, before the same become delinquent or any penalty attached thereto for the nonpayment, all taxes which by reason of nonpayment create a lien prior to the lien of the Mortgage and will thereupon submit to the Mortgagee such evidence of the due and punctual payment of such taxes, etc. as the Mortgagee may reasonably require; and will escrow payments on account of real estate taxes with Mortgagee, in an account bearing interest, upon Mortgagee's request or upon the occurrence of an Event of Default under the Loan Agreement.

1.5    Maintenance of the Premises.  That the Mortgagor will keep protected in good order, repair and condition (reasonable wear and tear and casualty insured against excepted) at all times the buildings and improvements (including the Mortgagor's fixtures) now standing or hereafter erected or placed upon the Premises and any and all of the Mortgagor's appurtenances, apparatus and articles of personal property, including, but not limited to, furniture, furnishings and equipment, now or hereafter in or attached to or used in connection with said buildings or improvements, promptly replacing any of the aforesaid which may become lost, destroyed or unsuitable for use; will always maintain in good order and condition all the facilities, easements, works, and ways set forth in the description of the Premises, whether located upon the Premises hereby mortgaged or elsewhere; and will not commit or suffer any strip or waste of the Premises, or any violation of any law, regulation, ordinance or contract affecting the Premises, and will not commit or suffer any demolition, removal or material alteration of any buildings or improvements (including fixtures) on the Premises without the written consent of the Mortgagee. The Mortgagor shall maintain and preserve the parking areas, passageways and drives, now or hereafter existing on the Premises.

1.6    Books and Records.  That the Mortgagor shall maintain full and correct books and records showing in detail the earnings and expenses of the Premises and will permit the Mortgagee and its representatives to examine said books and records and all supporting vouchers and data at any reasonable time, during business hours, from time to time upon prior request by the Mortgagee.

1.7    Other Proceedings.  That if any action or proceeding be commenced, excepting an action by the Mortgagor against the Mortgagee, to which action or proceeding the Mortgagee is made a party by reason of the execution of the Mortgage or the Note which it secures, or in which it becomes necessary to defend or uphold the lien of the Mortgage, all reasonable sums paid by the Mortgagee for the expense of any litigation to prosecute or defend the rights and lien created hereby including reasonable attorneys' fees, shall be paid by the Mortgagor, together with interest thereon from date of payment at the highest rate specified in the Note secured hereby, and any such sum, and the interest thereon, shall be immediately due and payable and be secured hereby, having the benefit of the lien hereby created, as a part thereof and of its priority.  The Mortgagee shall give the Mortgagor prompt notice of the initiation of any such action or proceeding.

1.8    Consent to Release, Etc.  Without affecting the liability of the Mortgagor or, any other person (except any person expressly released in writing) for payment of any indebtedness secured hereby or for performance of any obligation contained herein, and without affecting the rights of the Mortgagee with respect to any security not expressly released in writing, the Mortgagee may at any time and from time to time, either before or after the maturity of the Note and without notice or consent:

(a)    Release any person liable for payment of all or any part of the indebtedness or for performance of any obligation;

(b)    Make any agreement extending the time or otherwise altering the terms of payment of all or any part of the indebtedness, or modifying or waiving any obligation, or

subordinating, modifying or otherwise dealing with the lien or charge hereof; provided, however, that nothing herein shall entitle Mortgagee to increase Mortgagor's payment or obligations hereunder without Mortgagor's consent.

        (c)     Exercise or refrain from exercising or waive any right the Mortgagee may have;

        (d)     Accept additional security of any kind; or

        (e)     Release or otherwise deal with any property, real or personal, securing the indebtedness, including all or any part of the property mortgaged hereby.

        1.9     <u>Zoning, Etc</u>.  If at any time the then-existing use or occupancy of the Premises shall, pursuant to any zoning or other law, ordinance or regulation, be permitted only so long as such use or occupancy shall continue, that the Mortgagor shall not cause or permit such use or occupancy to be discontinued without the prior written consent of the Mortgagee.

        1.10     <u>Leases</u>.  To enter into leases of the Premises only in such terms and conditions as are reasonably approved by the Mortgagee such approval not to be unreasonably delayed or withheld; all of such leases to be subordinated to the Mortgage and the lien hereof.

        1.11     <u>Due on Sale</u>.  This Mortgage is not assignable or assumable and if all or any part of the Premises is sold or conveyed, or if there are transfers of any interests in the Mortgagor prohibited by the Loan Agreement, then the Mortgagee may, at its option, require immediate payment in full of all sums secured by this Mortgage.

        1.12     <u>Underground Tanks</u>.  The Mortgagor will comply with all applicable federal and state laws and regulations, as the same may be amended from time to time, relating to the inspection and replacement of underground fuel storage tanks located on the Premises.

        1.13     <u>Hazardous Waste</u>.  The Mortgagor represents that the Premises do not contain any hazardous wastes, hazardous substances (including, without limitation, medical or infectious waste), hazardous materials, toxic substances or toxic pollutants, as those terms are used in the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Hazardous Materials Transportation Act and the Toxic Substances Control Act, the Clean Air Act, the Clean Water-Act, or any similar state or local law, or in any regulations promulgated pursuant thereto, or in any other applicable law as the same may be amended from time to time.  The Mortgagor covenants to strictly comply with the requirements of all such laws and to promptly notify the Mortgagee of the presence in or on the Premises of any materials, the use, storage, transportation or disposal of which is regulated by such laws, unless Mortgagor is using or storing such materials in accordance with applicable law.  The Mortgagor hereby covenants to defend, indemnify, and hold the Mortgagee harmless from and against all loss, cost, damage and liability, including reasonable attorneys' fees and costs of litigation, suffered or incurred by the Mortgagee on account of the presence of any such materials in or on the Premises, including, without limitation, any such loss, cost, damage or liability arising from a violation of any of such laws.

1.14    Future Advances .  Future advances from the Mortgagee shall be secured by this Mortgage as evidenced by the Note secured hereby.

1.15    Compliance with Laws, Etc.  The Mortgagor will comply with all regulations, condominium documentation, covenants, rules, ordinances, statutes, codes, permits, orders and decrees applicable to the Mortgagor, or to the Premises, the use, occupancy or condition thereof or any part thereof.  The Mortgagor, if an entity other than a natural person, will, so long as it is owner of the Premises, do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges as such an entity under the laws of the state of its incorporation including without limitation the payment of all fees and other charges required in connection therewith.  The Mortgagor shall have the right to contest by appropriate legal proceedings, but without cost or expense to the Mortgagee, the validity of any laws, ordinances, order, rules and regulations affecting the Premises if compliance therewith may legally be held in abeyance without the sufferance of any charge, lien or liability against the Premises, and the Mortgagor may postpone compliance therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay compliance, provided the Mortgagee s furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such noncompliance or delay.

1.16    Mechanics Liens, Etc.  The Mortgagor will pay, as such shall become due, all lawful claims and demands of mechanics, materialmen, laborers and other which, if unpaid, might result in, or permit the creation of, a lien on the Premises or any part thereof, or on the revenues, rents, issues, income and profits arising therefrom.  Except as permitted under the Loan Agreement, the Mortgagor will not create or permit to be created and will promptly discharge any mortgage, lien, or charge on the Premises or any part thereof or on the interest of the Mortgagor or the Mortgagee therein, and the Mortgagor will do or cause to be done everything reasonably necessary so that the lien hereof shall be fully preserved, at the cost of the Mortgagor, without expense to the Mortgagee.  The Mortgagor shall have the right to contest such claims or demands by appropriate legal proceedings, but without cost or expense to the Mortgagee, if such claim or demand may legally be held in abeyance without the sufferance of any charge, lien or liability against the Mortgaged Property, and the Mortgagor may postpone satisfaction therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay satisfaction, provided the Mortgagee is furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such contest and refusal to satisfy pending contest.

1.17    Commercial Purpose.  The Mortgagor warrants that this Mortgage is given primarily for business, commercial or agricultural purpose.  The Premises subject to this Mortgage are not used exclusively for residential purposes and are not the primary residence of the Mortgagor.

2.    Payments, Etc. by the Mortgagee.  If the Mortgagor shall neglect or refuse to keep in good repair the property conveyed by this Mortgage, to replace the same as herein agreed, to maintain and pay the premiums for insurance which may be required under Paragraph l.3 or to

pay and discharge all taxes, assessments, charges and liens of every nature and to whomever assessed, as provided for in Paragraphs l.4 and l.16, the Mortgagee may, at its election, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments, charges and liens and any amounts paid as a result thereof, together with interest thereon at the highest rate of interest specified in the Note secured hereby from the date of payment, shall be immediately due and payable by the Mortgagor to the Mortgagee, and until paid shall be added and become part of the principal debt secured hereby, and the same may be collected as a part of said principal debt in any suit herein or upon the Note; or the Mortgagee, by the payment of any tax, assessment or charge, may, if it sees fit if allowed by law, be thereby subrogated to the rights of the state, county, village and all political or governmental subdivisions. No such advances shall be deemed to relieve the Mortgagor of any default hereunder or impair any right or remedy consequent thereon, and the exercise of the rights to make advances granted in this paragraph shall be optional with the Mortgagee and not obligatory, and the Mortgagee shall not in any case be liable to the Mortgagor for a failure to exercise any such right. The Mortgagee shall have no responsibility with respect to the legality, validity and priority of any such claim, lien, encumbrance, tax, assessment and premium, and of the amount necessary to be paid in satisfaction thereof.

3.    <u>Default; Remedies</u>.

3.1    The Mortgagor shall be in default under this Mortgage upon the occurrence of an event of default under *any* of the Loan Documents, including the Loan Agreement and the expiration of the grace periods, if any, as specified in the Loan Agreement (herein called the "Events of Default"). Such Events of Default shall include without limitation, the following:

(a)    Default in the due and punctual payment of any payment of principal of or premium, if any, or interest on the Note and such default shall continue beyond the expiration of the applicable period of grace, if any; or

(b)    Default in payment or performance under any of the obligations under the Loan Documents, and such default shall continue beyond the expiration of the applicable period of grace, if any; or

(c)    Default in the due performance or observance of any covenant or provision of this Mortgage and such default shall continue beyond the expiration of the applicable period of grace, if any.

3.2    Upon the occurrence of an Event of Default which has not been cured within any applicable remedy period or demand under any demand instrument, and at the option of the Mortgagee, (a) the Mortgagee may declare the obligations of the Mortgagor to the Mortgagee to be immediately due and payable, (b) the Mortgagee may immediately take possession of the Premises, and (c) the Mortgagee may forthwith exercise all other rights and remedies provided herein, or in any of the other Loan Documents, or which may be available to the Mortgagee by law, including without limitation, the STATUTORY POWER OF SALE.

3.3     Notwithstanding any other provision set forth herein and not in limitation thereof, this Mortgage is upon the STATUTORY CONDITIONS as well as the other terms and conditions hereof, for any breach of which the Mortgagee shall have the STATUTORY POWER OF SALE.

3.4     All rights and remedies set forth herein shall be cumulative and concurrent, and may be pursued singly, successively, or together, at the Mortgagee's sole discretion, and may be exercised as often as occasion thereof shall occur.

3.5     If the Mortgagor, its successors or assigns, pays the Mortgagee, all amounts under the Loan Documents, complies with and performs all terms and obligations as set forth in the Note and the Loan Documents, then the Mortgage shall be void; otherwise it shall remain in full force and effect.

4.     <u>Possession by Mortgagee</u>.

4.1     If the Mortgagee shall take possession of the Premises as permitted hereby, then in addition to, and not in limitation of, the Mortgagee's STATUTORY POWER OF SALE, the Mortgagee may:

(a)     hold, manage, operate, and lease the Premises to the Mortgagor or to any other entity on such terms and for such period(s) of time as the Mortgagee may deem proper, and the provisions of any lease made by the Mortgagee pursuant hereto shall be valid and binding upon the Mortgagor notwithstanding the fact that the Mortgagee's right of possession may terminate or this Mortgage may be satisfied of record prior to the expiration of the term of such lease;

(b)     make such alterations, additions, improvements, renovations, repairs, and replacements to the Premises as the Mortgagee may reasonably deem proper;

(c)     remodel such improvements so as to make the same available in whole or in part for business purposes;

(d)     collect the rents, issues, and profits arising from the Premises, past due and thereafter becoming due, and apply the same, in such order of priority as the Mortgagee may determine, to the payment of all charges and commissions incidental to the collection of rents, the management of the Premises, and the obligations and all sums or charges required to be paid by the Mortgagor hereunder;

(e)     take any other action the Mortgagee deems necessary or appropriate in its sole discretion to preserve, protect, or improve the Premises.

4.2     All monies advanced by the Mortgagee for the above purposes and not repaid out of the rents collected shall immediately and without demand be repaid by the Mortgagor to the Mortgagee, together with interest thereon at the same rate as provided in the Note, and shall be added to the- principal indebtedness secured hereby.

4.3     The taking of possession and the collection of rents by the Mortgagee as described above shall not be construed to be an affirmation of any lease of the Premises or any part thereof, and the Mortgagee, or any purchaser at any foreclosure sale, may terminate any such lease at any time, whether or not such taking of possession and collection of rents has occurred.

5.     <u>Foreclosure Pursuant to Power of Sale.</u>

5.1     Upon default, the Mortgagee or its legal representatives or assigns may on such terms and conditions as the Mortgagee deems appropriate in its sole discretion and pursuant to the STATUTORY POWER OF SALE, sell the Premises by public sale to the highest bidder as provided herein and in NH RSA 479, et al., as such statutes may be amended from time to time.

5.2     If the Mortgagee invokes the STATUTORY POWER OF SALE, the Mortgagee may, without further demand upon the Mortgagor, sell the Premises or any estate therein, in one or more parcels, to the highest bidder for cash or other consideration acceptable to the Mortgagee at public sale to be held upon the Premises.

5.3     In the event that the Mortgagee seeks to enforce its rights and remedies hereunder, the Mortgagor shall fully cooperate with the Mortgagee in any foreclosure of the Premises scheduled by the Mortgagee, including without limitation; (i) providing the Mortgagee with any information concerning the Premises reasonably requested by the Mortgagee, such as rental income information, taxes, water assessment charges and any maintenance costs associated with the Premises; (ii) arranging with the Mortgagee two (2) preview dates, each three hours in length, prior to the dates of any foreclosure sale; and (iii) granting the Mortgagee unlimited access to the Premises on the date of the foreclosure sale for one hour before and one hour after the foreclosure sale, except that Mortgagee shall not interfere with the conduct of Mortgagor's business operations on such Premises. In addition, the Mortgagor shall, without waiving its right to enjoin a foreclosure under NH RSA 479, under no circumstances and in no event in any way interfere with, any foreclosure sale of the Premises scheduled by the Mortgagee.

5.4     The deed given by reason of such sale shall convey to the purchaser an indefeasible title to the Premises, discharged of all rights of redemption with respect to this mortgage by the Mortgagor and its successors or assigns, or any person claiming from or under it or them. The Mortgagee shall apply the proceeds of such sale first to all costs of notice and sale of the Premises including reasonable attorneys', accountants' and appraisers' fees, then to any and all accrued but unpaid interest due to the Mortgagee, and thereafter to the principal indebtedness evidenced by the Note and secured hereby, and to the other indebtedness secured hereby. Any excess may be paid to others having a lien on the Premises not having priority over this Mortgage and if none, then to the Mortgagor. The Mortgagor shall be liable for any deficiency.

5.5     In the event of foreclosure, at the option of the Mortgagee, the interest of each of the Mortgagor and the Mortgagee herein may be sold as a single unit together with such personal property, furniture, furnishings, fixtures, machinery, and equipment as may secure the Note or be secured by the Loan Documents.

5.6     If the provisions of the Uniform Commercial Code apply, any property or security given to secure the indebtedness secured hereby may be sold with or as a part of the Premises, or any part thereof, at one or more foreclosure sales, and any notice required under such provisions shall be fully satisfied by the notice provided to be given hereby in execution of the STATUTORY POWER OF SALE.

6.      Security Agreement.  The Mortgage is among other things intended to be a security agreement and financing statement with respect to the personal property and fixtures described and included in the Mortgage, and all additions, accessions, substitutions and replacements thereto and therefor, together with the proceeds thereof, and all of which are hereinafter referred to as the collateral and the Mortgagor hereby grants and conveys to Mortgagee, its successors and assigns, a security interest therein.  That upon default of any material term, condition or covenant of the Mortgage and acceleration of any indebtedness hereby secured, the Mortgagee may, at its discretion, require the Mortgagor to assemble the collateral and make it available to the Mortgagee at a place reasonably convenient to both parties to be designated by the Mortgagee.  That the Mortgagee shall give the Mortgagor notice, by registered mail, postage prepaid, of the time and place of any public sale of any of the collateral or of the time any private sale or other intended disposition thereof is to be made by sending notice to the Mortgagor at least ten (10) days before the time of the sale or other disposition, which provisions for notice the Mortgagor and the Mortgagee agree are reasonable; provided, however, that nothing herein shall preclude the Mortgagee from proceeding as to both real and personal property in accordance with the Mortgagee's rights and remedies in respect of the real property.  The Mortgagee shall have all of the remedies of a secured party under the Uniform Commercial Code as now in effect in the state of New Hampshire, and such further remedies as may from time to time hereafter be provided in New Hampshire for a secured party.  The Mortgagor agrees that all rights of the Mortgagee as to said collateral and as to said real estate, and rights and interest appurtenant thereto, may have exercised together or separately and further agrees that in exercising its power of sale as to said collateral and as to said real estate, and rights and interest appurtenant thereto, the Mortgagee may sell the collateral or any part thereof, either separately from or together with the sale real estate, rights and interests appurtenant thereto, or any part thereof, all as the Mortgagee may in its discretion elect.

For the purpose of this Mortgage constituting a financing statement under the Uniform Commercial Code the addresses of the parties are:

| The Mortgagor (Debtor) | HAROLD J. MUNCE and MARILYN J. MUNCE |
| | 453 Alpine Street |
| | Berlin, New Hampshire 03570 |
| | |
| | and |
| | |
| The Mortgagee (Secured Party) | NORTHWAY BANK |
| | 9 Main Street |
| | Berlin, New Hampshire 03570 |

7.    Appointment of Receiver.  The Mortgagee may, at any time following an Event of Default hereunder which has not been cured within any applicable remedy period or demand under any demand instrument (subject to any limitations in the Loan Documents), apply to any court having jurisdiction for appointment of receiver.  That court shall promptly appoint a receiver of the Premises, who shall be authorized to receive and apply the income, profits, issues, rents and revenues from whatever source derived.  The rents, profits, income, issues, and residues shall be applied by the receiver according to the lien of this Mortgage and the practice of the court.  The appointment of the receiver shall be made by such court as an admitted equity in a matter of absolute right to the Mortgagee, and without references to the adequacy or inadequacy of the value of the Premises or to the solvency or insolvency of the Mortgagor or any co-borrower or guarantor of the obligations secured hereby.

8.    General Provisions.  The Mortgagor and the Mortgagee further agree that:

8.1    Homestead.  There is no homestead interest in the Premises.

8.2    Waivers.  (a) Except as otherwise specifically provided in this Mortgage, the Note and the other Loan Documents, the Mortgagor waives demand, notice of any action taken in reliance on this Mortgage, and all other demands and notices of any description.

(b)    No delay or omission on the part of the Mortgagee in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or of any other right or remedy under this Mortgage.  A waiver on any one occasion shall not be construed as a bar to or waiver of any such right and/or remedy on any future occasion.  No single or partial exercise of any power hereunder shall preclude other or future exercise thereof or the exercise of any other right; and

(c)    That receipt and disposition of rents, income of the Premises, insurance proceeds, eminent domain awards, or any other sums under the provisions of the Loan Documents by the Mortgagee shall not be a waiver or release of any rights of the Mortgagee, including but not limited to, the right of foreclosure or acceleration of the Note, whether such receipt or disposition shall be before or after exercise of any such rights.

8.3    Binding Agreement.  This Mortgage shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, legal representatives, successors, and assigns; provided, however, that any assumption of any obligations of Mortgagor hereunder shall not constitute a release of the party whose obligation is being assumed without the Mortgagee's prior written consent.

8.4    Amendment.  This Mortgage shall not be changed in any respect except by written instrument signed by the parties hereto.

8.5    Governing Law.  This Mortgage and all rights and obligations hereunder, including matters of construction, validity, and performance, shall be governed by the laws of the State of New Hampshire.

8.6     Severability.  If any term, condition, or provision of this Mortgage or the application thereof to any person or circumstance shall, to any extent, be held invalid or unenforceable according to law, then the remaining terms, conditions, and provisions of this Mortgage, or the application of any such invalid or unenforceable term, condition or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby, and each term, condition, and provision of this Mortgage shall be valid and enforced to the fullest extent permitted by law.

8.7     Headings.  The descriptive headings of the sections of this Mortgage have been inserted for convenience and reference only and shall not control or affect the meaning or construction of any of the contents hereof.

8.8     Estoppel Certificate.  The Mortgagor, within five (5) days after being given notice as provided below, will furnish to the Mortgagee a written statement duly acknowledged by the Mortgagor or its representative certifying the principal amount then outstanding on the Note and certifying that no offsets or defenses exist against the Mortgage indebtedness (or explaining such offsets or defenses to the extent they exist).

8.9     Notice.  Any demand or notice required or permitted hereunder shall be effective if either: (a) hand-delivered to the addressee, or (b) deposited in the mail, registered or certified, return receipt requested and postage prepaid, or delivered to a private express company addressed to the addressee: (i) at the address shown at the beginning of this Mortgage, or (ii) if such party has provided the other in writing with a change of address, at the last address so provided.  Any notice or demand mailed as provided in this paragraph shall be deemed given and received on the earlier of:

        (A)     the date received; or

        (B)     the date of delivery, refusal or non-delivery as indicated on the return receipt, if sent by mail or private express as provided above.

8.10     Gender and Number.  All words denoting gender or number shall be construed to include any other gender or number as the context and facts require.

8.11     Conflict with other Loan Documents.  In the event of any conflict between the terms, covenants, conditions and restrictions contained in the Loan Documents, the term, covenant and condition or restriction which grants the greater benefit upon the Mortgagee shall control.  The determination as to which term, covenant, condition or restriction is the more beneficial shall be made by the Mortgagee in its reasonable discretion.

8.12     Waiver of Right of Exemption.  The Mortgagor, for the consideration aforesaid, hereby waives all rights of exemption in the Premises as the same are now or here after provided of the provisions of any federal or state law, including, without limitation, 11 U.S.C. §522.

8.13     Replacement of Security Documents.  Upon receipt of an affidavit of an officer of the Mortgagee as to the loss, theft, destruction or mutilation of the Note or any other security

document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon cancellation of such Note or other security document, the Mortgagor will issue, in lieu thereof, a replacement note or other security document in the same principal amount thereof and otherwise of like tenor.

8.14    Waiver of Jury Trial.  THE MORTGAGOR AND THE MORTGAGEE MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF MORTGAGEE RELATING TO THE ADMINISTRATION OF THE LOANS OR ENFORCEMENT OF THE LOAN DOCUMENTS, AND AGREE THAT NEITHER PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  EXCEPT AS PROHIBITED BY LAW OR OTHERWISE PROVIDED IN THE LOAN DOCUMENTS, THE MORTGAGOR HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, ENHANCED COMPENSATORY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES, AND REASONABLE ATTORNEYS FEES IN THE EVENT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE BANK, ITS AGENTS AND EMPLOYEES. THE MORTGAGOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF MORTGAGEE HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT MORTGAGEE WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER.  THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR MORTGAGEE TO ACCEPT THIS MORTGAGE AND MAKE THE LOAN.

[Signature page follows]

IN WITNESS WHEREOF, the Mortgagor has executed this Mortgage, Security Agreement and Collateral Assignment of Leases and Rents as of the ___ day of _____, 2011.

MORTGAGOR:


_____          _____
Witness                                   Harold P. Munce


_____          _____
Witness                                   Marilyn J. Munce


MORTGAGEE:

NORTHWAY BANK


_____          By:_____
Witness                                       Thomas Caruso, Its Duly
                                              Authorized Senior Vice President


STATE OF NEW HAMPSHIRE
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by Harold P. Munce.


                                          _____
                                          Justice of the Peace/Notary Public
                                          My Commission Expires:
                                          Notary Seal

STATE OF NEW HAMPSHIRE
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by Marilyn J. Munce.


                                          _____
                                          Justice of the Peace/Notary Public
                                          My Commission Expires:
                                          Notary Seal

STATE OF NEW HAMPSHIRE
COUNTY OF _____

     The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by Thomas Caruso, duly authorized Senior Vice President of NORTHWAY BANK, a bank organized under the laws of the State of New Hampshire, on behalf of the same.

 

_____
Justice of the Peace/Notary Public
My Commission Expires:
Notary Seal

J:\WDOX\DOCS\CLIENTS\020746\093343\M1811007.DOC

## SCHEDULE A

## Legal Description

The following tracts of land, with the buildings, improvements and fixtures thereon, and interests in real estate, situated in the Towns of Lincoln and Plymouth, Grafton County, New Hampshire, more particularly described as follows:

[To be completed]

_____ of _____
*Tax Stamp*: $ 00.00
*Recording Fee*: $ _____
*L-Chip Surcharge*: $25.00
*Return to*: Account # _____
*Devine, Millimet & Branch, P.A. – Attn: MRJ*
*111 Amherst Street*
*Manchester, NH  03101*

_____
**(Property Located in Berlin, Coos County, New Hampshire)**

## SECOND MORTGAGE DEED AND SECURITY AGREEMENT

MUNCE'S REAL ESTATE VENTURES, LLC, a New Hampshire limited liability company, with an address of 453 Alpine Street, Berlin, New Hampshire  03570 (the "Mortgagor") for consideration paid, grants to NORTHWAY BANK, a state chartered bank organized under the laws of the State of New Hampshire, having an office at 9 Main Street, Berlin, New Hampshire 03570 (the "Mortgagee"), with MORTGAGE COVENANTS, to secure:

A.      the payment of and performance of a certain promissory note of even date payable by the Mortgagor, Munce's Superior Petroleum Products, Inc., Gorham Oil, Inc., Superior Trucking, Inc., BMRA Real Estate Ventures, LLC, Harold P. Munce and Marilyn J. Munce as "Borrowers" to the Mortgagee as the "Bank" (as the same may be amended or modified, the "Note") with interest thereon, pursuant to which Mortgagor has promised to repay a certain loan in the principal amount of up to THREE HUNDRED THOUSAND DOLLARS ($300,000) (the "Loan") made by Mortgagee to the Borrowers for the purpose of financing the restructuring of the Borrowers' commercial and business operations;

B.      the payment of all other sums with interest thereon advanced in accordance herewith to protect the security and priority of this Mortgage Deed (the "Mortgage"), including the costs of collection; and

C.      the payment, performance and satisfaction of the financial liabilities and other obligations under the terms, conditions, representations, warranties and covenants contained in the Note, a certain Loan Agreement by and among the Borrowers, the Mortgagee and others of even date, as the same may be amended, (the "Loan Agreement"), the documents defined therein as the Loan Documents, all loans or obligations, now existing or hereafter arising, of any Borrower owed to the Bank (or any affiliate thereof), as the same may have been and may be hereafter amended, including, but not limited to the prior loans, and any obligations arising under any foreign exchange contracts, interest rate swap, cap, floor or hedging agreements, or similar agreements and all obligations of Mortgagor to Mortgagee arising out of or in connection with any Automated Clearing

House ("ACH") Agreements relating to the procession of ACH transactions, together with all fees, expenses, charges and other amounts outstanding and chargeable to the Mortgagor under the ACH Agreements, all as they may be amended, renewed, extended or restated from time to time (the foregoing including, without limitation, the Note and the Loan Agreement are collectively referred to herein as the "Loan Documents").

The following described property (the "Mortgaged Property"): A certain parcel of land with the fixtures and improvements now or hereafter thereon and all appurtenances thereto located at 148 Jericho Road in the Town of Berlin, Coos County, New Hampshire, as more particularly described in <u>Schedule A</u>, attached hereto and made a part hereof.

As further security for payment of the indebtedness and performance of the obligations, covenants and agreements secured hereby, the Mortgagor hereby transfers, sets over and assigns to the Mortgagee:

D.      Any and all fixtures and any and all tenements, hereditaments, easements, rights of way, licenses, profits, privileges and other appurtenances belonging, relating or pertaining to the Mortgaged Property, including, but not limited to certain easement interests, leasehold interest and licenses owned or held by Mortgagor;

E.      All rents, security deposits, issues and profits, revenues, royalties, bonuses, rights and benefits under any and all leases or tenancies now existing or hereafter created of the Mortgaged Property or any part thereof, with the right to receive and apply the same to said indebtedness, and the Mortgagee may demand, sue for and recover such payments, but shall not be required to do so; provided, however, that so long as the Mortgagor is not in default hereunder, the right to receive and retain such rents, issues and profits is reserved to the Mortgagor. To carry out the foregoing, the Mortgagor agrees (1) to execute and deliver to the Mortgagee such conditional assignments of leases and rents applicable to the Mortgaged Property as the Mortgagee may from time to time request, while this Mortgage and the debt secured hereby are outstanding, and further (2) not to cancel, accept a surrender of, reduce the rentals under, anticipate any rentals under, or modify any such leases or tenancies, or consent to an assignment or subletting thereof, in whole or in part, without the Mortgagee's written consent. Nothing herein shall obligate the Mortgagee to perform the duties of the Mortgagor as landlord or lessor under any such leases or tenancies, which duties the Mortgagor hereby covenants and agrees to well and punctually perform;

F.      All judgments, awards of damages and settlements hereafter made as a result or in lieu of any taking of the Mortgaged Property or any interest therein or part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Mortgaged Property or the improvements thereon or any part thereof. If any such damage can, in the reasonable opinion of the Mortgagee, be repaired within a period of one hundred eighty (180) days, then the Mortgagee shall release, at its option, the entire amount or any part of all such sums so received, to the Mortgagor on a construction basis to repair or rebuild the Mortgaged Property. If any such damage cannot, in the reasonable opinion of the Mortgagee, be repaired within a period of one hundred eighty (180) days, then the Mortgagee may apply all such sums or any part thereof so received on the indebtedness secured hereby in such manner as it elects, or, at its option, the entire amount or any part thereof so received may be released to the

Mortgagor on a construction basis to repair and/or rebuild the Mortgaged Property. If an Event of Default has occurred under the Loan Documents the Mortgagor hereby irrevocably authorizes and appoints the Mortgagee its attorney-in-fact to collect and receive any such judgments, awards and settlements from the authorities or entities making the same, to appear in any proceeding therefor, to give receipts and acquittances therefor, and to apply the same to payment on account of the debt secured hereby, whether then matured or not. The Mortgagor will execute and deliver to the Mortgagee on demand such assignments and other instruments as the Mortgagee may require for said purposes and, after the occurrence of an Event of Default, will reimburse the Mortgagee for its cost (including reasonable counsel fees) in the collection of such judgments and settlements.

The Mortgagor also grants the Mortgagee a security interest in the following to secure the obligations of the Mortgagor to the Mortgagee set forth herein:

(a)     All fixtures, machinery, equipment and all other tangible personal property (the "Personal Property") intended for use in or with the building and other improvements on the Mortgaged Property, whether now or hereafter owned by the Mortgagor and now affixed or to be affixed, or now or hereafter located upon the Mortgaged Property, including all appurtenant easements. The foregoing shall include without limitation all plumbing, heating, lighting, refrigerating, ventilating and air conditioning apparatus and equipment, elevators and elevator machinery, boilers, tanks, motors, sprinkler and fire extinguishing systems, alarm systems, screens, awnings, screen doors, storm and other detachable awnings, windows and doors and other equipment, machinery, furniture and furnishings, fixtures, and articles of Personal Property now and hereafter owned by the Mortgagor and now or hereafter affixed to, placed upon or used in connection with the operation of the Mortgaged Property, and all other purposes whether or not included in the foregoing enumeration, together with cash proceeds and non-cash proceeds of all of the foregoing, all of which are covered by this Mortgage, whether or not such property is subject to prior conditional sales agreements, chattel mortgages or other liens, excepting inventory and Personal Property to be consumed or sold in the normal course of business of the Mortgagor. If the lien hereof on any fixtures or Personal Property is subject to a conditional sales agreement or chattel mortgage or security agreement covering such property, then in the event of any default hereunder all the rights, title and interest of the Mortgagor in and to any and all deposits made thereon or therefor are hereby assigned to the Mortgagee, together with the benefit of any payments now or hereafter made thereon. There are also transferred, set over and assigned to the Mortgagee, its successors and assigns hereby all conditional sales agreements, leases and use agreements of machinery, equipment and other Personal Property of the Mortgagor in the categories hereinafter set forth and now and hereafter affixed to, placed upon or used in connection with the operation of the Mortgaged Property under which either of the Mortgagor is the lessee of, or entitled to use, such items, and the Mortgagor agrees to execute and deliver to the Mortgagee specific separate assignments thereof to the Mortgagee of such leases and agreements when requested by the Mortgagee; and nothing herein shall obligate

the Mortgagee to perform any obligations of the Mortgagor under such leases or agreements, unless it so chooses, which obligations the Mortgagor hereby covenants and agrees to well and punctually perform.

(b)     Any and all additions, accessions, substitutions or replacements to or for any of the foregoing.

(c)     Any and all products and proceeds of any or all of the foregoing, including, without limitation, cash and cash equivalents, tax refunds, and the proceeds of insurance policies providing coverage against the loss or destruction of or damage to any of such collateral.

(d)     All of the Mortgagor's after-acquired property of the kinds and types described in the foregoing paragraphs.

PROVIDED NONETHELESS, that if Mortgagor pays to Mortgagee all indebtedness evidenced by the Note, this Mortgage, the Loan Agreement and the Loan Documents and pays or causes to be satisfied and paid all amounts due under any future amendment, modifications, renewals and replacements thereof and all costs, expenses and advances extended or incurred to protect or foreclose upon the Mortgaged Property together with reasonable attorneys' fees, then this Mortgage shall be null and void, otherwise it shall remain in full force and effect.

1.     Representation, Warranties and Covenants of the Mortgagor.  In addition to the MORTGAGE COVENANTS, the Mortgagor further represents, warrants, covenants and agrees, as appropriate, with the Mortgagee, its successors and assigns, as follows:

1.1     Title.  The Mortgagor, for itself and its successors and assigns, does hereby covenant, grant and agree to and with the Mortgagee and its successors and assigns, that until the delivery hereof it is the lawful owner of the Mortgaged Property seized and possessed thereof in its own right in fee simple or as specified in Schedule A attached hereto and made a part hereof, has full power and lawful authority to grant and convey the same in manner aforesaid that the Mortgaged Property is free and clear from any encumbrance whatsoever, that except as otherwise recited in Schedule A, it and its successors shall warrant and defend the same to the Mortgagee and its successors and assigns against the lawful claims and demands of any person or persons whatsoever, except as otherwise herein recited; and that, except as otherwise recited in Schedule A, it will not cause or permit any lien to arise against the Mortgaged Property which is superior to the lien of this Mortgage.

1.2     Payment and Performance.  To pay and perform The Note secured hereby and interest thereon as the same shall become due and payable, and also any other indebtedness that may accrue to the Mortgagee under the terms of this Mortgage, and to perform all other agreements set forth herein and in the Loan Documents.

1.3     Insurance.  That the Mortgagor will keep the improvements and Personal Property now existing or hereafter erected or located on the Mortgaged Property and the interests and liabilities incident to the ownership thereof insured against loss by fire and such other hazards,

casualties and contingencies, and in manner, form and companies in the manner set forth in the Loan Agreement; and will escrow payments on account of such insurance premiums with Mortgagee to the extent provided in the Loan Agreement.

1.4    Taxes and Assessments.  That the Mortgagor will pay, before the same become delinquent or any penalty attaches thereto for nonpayment, all taxes, assessments and charges of every nature that may now or hereafter be levied or assessed, upon the Mortgaged Property or any part thereof, or upon the rents, issues, income or profits thereof, whether any or all of said taxes, assessments or charges be levied directly or indirectly, and will pay, before the same become delinquent or any penalty attached thereto for the nonpayment, all taxes which by reason of nonpayment create a lien prior to the lien of the Mortgage and will thereupon submit to the Mortgagee such evidence of the due and punctual payment of such taxes, etc. as the Mortgagee may reasonably require; and will escrow payments on account of real estate taxes with Mortgagee, upon Mortgagee's request or upon the occurrence of an Event of Default under the Loan Agreement.

1.5    Maintenance of the Mortgaged Property.  That the Mortgagor will keep protected in good order, repair and condition (reasonable wear and tear and casualty insured against excepted) at all times the buildings and improvements (including the Mortgagor's fixtures) now standing or hereafter erected or placed upon the Mortgaged Property and any and all of the Mortgagor's appurtenances, apparatus and articles of Personal Property, including, but not limited to, furniture, furnishings and equipment, now or hereafter in or attached to or used in connection with said buildings or improvements, promptly replacing any of the aforesaid which may become lost, destroyed or unsuitable for use; will always maintain in good order and condition all the facilities, easements, works, and ways set forth in the description of the Mortgaged Property, whether located upon the Mortgaged Property hereby mortgaged or elsewhere; and will not commit or suffer any strip or waste of the Mortgaged Property, or any violation of any law, regulation, ordinance or contract affecting the Mortgaged Property, and, except as permitted by the Loan Agreement between the Mortgagor and the Mortgagee will not commit or suffer any demolition, removal or material alteration of any buildings or improvements (including fixtures) on the Mortgaged Property without the written consent of the Mortgagee.  The Mortgagor shall maintain and preserve the parking areas, passageways and drives, now or hereafter existing on the Mortgaged Property.

1.6    Books and Records.  That the Mortgagor shall maintain full and correct books and records showing in detail the earnings and expenses of the Mortgaged Property and will permit the Mortgagee and its representatives to examine said books and records and all supporting vouchers and data at any reasonable time, during business hours, from time to time upon prior request by the Mortgagee.

1.7    Other Proceedings.  That if any action or proceeding be commenced, excepting an action by the Mortgagor against the Mortgagee, to which action or proceeding the Mortgagee is made a party by reason of the execution of this Mortgage, the Note or any Loan Document which it secures, or in which it becomes necessary to defend or uphold the lien of this Mortgage, then all reasonable sums paid by the Mortgagee for the expense of any litigation to prosecute or defend the rights and lien created hereby including reasonable attorneys' fees, shall be paid by

the Mortgagor, together with interest thereon from date of payment at the highest rate specified in the Note secured hereby, and any such sum, and the interest thereon, shall be immediately due and payable and be secured hereby, having the benefit of the lien hereby created, as a part thereof and of its priority. The Mortgagee shall give the Mortgagor prompt notice of the initiation of any such action or proceeding.

1.8     Consent to Release, Etc. Without affecting the liability of the Mortgagor or, any other person (except any person expressly released in writing) for payment of any indebtedness secured hereby or for performance of any obligation contained herein, and without affecting the rights of the Mortgagee with respect to any security not expressly released in writing, the Mortgagee may at any time and from time to time, either before or after the maturity of the Note and without notice or consent:

(a)     Release any person liable for payment of all or any part of the indebtedness or for performance of any obligation;

(b)     Make any agreement extending the time or otherwise altering the terms of payment of all or any part of the indebtedness, or modifying or waiving any obligation, or subordinating, modifying or otherwise dealing with the lien or charge hereof; provided, however, that nothing herein shall entitle Mortgagee to increase Mortgagor's payment or adversely change Mortgagor's obligations hereunder without Mortgagor's consent.

(c)     Exercise or refrain from exercising or waive any right the Mortgagee may have;

(d)     Accept additional security of any kind; or

(e)     Release or otherwise deal with any property, real or personal, securing the indebtedness, including all or any part of the property mortgaged hereby.

1.9     Zoning, Etc. If at any time the then-existing use or occupancy of the Mortgaged Property shall, pursuant to any zoning or other law, ordinance or regulation, be permitted only so long as such use or occupancy shall continue, then the Mortgagor shall not cause or permit such use or occupancy to be discontinued without the prior written consent of the Mortgagee.

1.10     Leases. Except for rentals to hotel guests, to enter into leases of the Mortgaged Property only upon such terms and conditions as are reasonably approved by the Mortgagee, such approval not to be unreasonably delayed or withheld; all of such leases to be subordinated to this Mortgage and the lien hereof.

1.11     Due on Sale. This Mortgage is not assignable or assumable and if all or any part of the Mortgaged Property is sold or conveyed, or if there are transfers of any interests in the Mortgagor prohibited by the Loan Agreement, then the Mortgagee may, at its option, require immediate payment in full of all sums secured by this Mortgage.

1.12     Underground Tanks. The Mortgagor will comply with New Hampshire Department of Environmental Services and all other applicable laws and regulations, as the same

may be amended from time to time, relating to the inspection and replacement of underground fuel storage tanks located on the Mortgaged Property.

1.13    Hazardous Waste.   The Mortgagor represents that, to the best of its knowledge, the Mortgaged Property does not contain or store any hazardous wastes, hazardous substances (including, without limitation, medical or infectious waste), hazardous materials, toxic substances or toxic pollutants, as those terms are used in the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Hazardous Materials Transportation Act and the Toxic Substances Control Act, the Clean Air Act, the Clean Water Act, or any similar state or local law, or in any regulations promulgated pursuant thereto, or in any other applicable law as the same may be amended from time to time, other than in strict compliance with the foregoing laws and regulations, excluding however, those materials used in the ordinary course of the Mortgagor's business and disposed of in accordance with all laws.  The Mortgagor covenants to strictly comply with the requirements of all such laws and to promptly notify the Mortgagee of the presence in or on the Mortgaged Property of any materials, the use, storage, transportation or disposal of which is regulated by such laws, unless Mortgagor is using or storing such materials in accordance with applicable law. The Mortgagor hereby covenants to defend, indemnify, and hold the Mortgagee harmless from and against all loss, cost, damage and liability, including reasonable attorneys' fees and costs of litigation, suffered or incurred by the Mortgagee on account of the presence of any such materials in or on the Mortgaged Property, including, without limitation, any such loss, cost, damage or liability arising from a violation of any of such laws.

1.14    Future Advances.   Future advances from the Mortgagee shall be secured by this Mortgage as evidenced by the Note secured hereby.

1.15    Compliance with Laws, Etc.   The Mortgagor will comply with all regulations, covenants, rules, ordinances, statutes, codes, permits, orders and decrees applicable to the Mortgagor, or to the Mortgaged Property, the use, occupancy or condition thereof or any part thereof.  The Mortgagor, if an entity other than a natural person, will, so long as it is owner of the Mortgaged Property, do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges as such an entity under the laws of the state of its incorporation including without limitation the payment of all fees and other charges required in connection therewith.   The Mortgagor shall have the right to contest by appropriate legal proceedings, but without cost or expense to the Mortgagee, the validity of any laws, ordinances, order, rules and regulations affecting the Mortgaged Property if compliance therewith may legally be held in abeyance without the sufferance of any charge, lien or liability against the Mortgaged Property, and the Mortgagor may postpone compliance therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay compliance, provided the Mortgagee is furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such noncompliance or delay.

1.16    Mechanics Liens, Etc.   The Mortgagor will pay, as such shall become due, all lawful claims and demands of mechanics, materialmen, laborers and other which, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part thereof, or

on the revenues, rents, issues, income and profits arising therefrom. Except for the Permitted Encumbrances and except as permitted under the Loan Agreement, the Mortgagor will not create or permit to be created and will promptly discharge any mortgage, lien, or charge on the Mortgaged Property or any part thereof or on the interest of the Mortgagor or the Mortgagee therein, and the Mortgagor will do or cause to be done everything reasonably necessary so that the lien hereof shall be fully preserved, at the cost of the Mortgagor, without expense to the Mortgagee. The Mortgagor shall have the right to contest such claims or demands by appropriate legal proceedings, but without cost or expense to the Mortgagee, if such claim or demand may legally be held in abeyance without the sufferance of any charge, lien or liability against the Mortgaged Property, and the Mortgagor may postpone satisfaction therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay satisfaction, provided the Mortgagee is furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such contest and refusal to satisfy pending contest.

1.17    <u>Commercial Purpose</u>.    The Mortgagor warrants that this Mortgage is given primarily for business, commercial or agricultural purpose. The Mortgaged Property subject to this Mortgage is not used exclusively for residential purposes and is not the primary residence of the Mortgagor.

2.    <u>Payments, Etc. by the Mortgagee</u>.    If the Mortgagor shall neglect or refuse to keep in good repair the property conveyed by this Mortgage, to replace the same as herein agreed, to maintain and pay the premiums for insurance which may be required under Paragraph 1.3 or to pay and discharge all taxes, assessments, charges and liens of every nature and to whomever assessed, as provided for in Paragraphs 1.4 and 1.16, the Mortgagee may, at its election, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments, charges and liens and any amounts paid as a result thereof, together with interest thereon at the highest rate of interest specified in the Note secured hereby from the date of payment, shall be immediately due and payable by the Mortgagor to the Mortgagee, and until paid shall be added and become part of the principal debt secured hereby, and the same may be collected as a part of said principal debt in any suit herein or upon the Note; or the Mortgagee, by the payment of any tax, assessment or charge, may, if it sees fit if allowed by law, be thereby subrogated to the rights of the state, county, village and all political or governmental subdivisions. No such advances shall be deemed to relieve the Mortgagor of any default hereunder or impair any right or remedy consequent thereon, and the exercise of the rights to make advances granted in this paragraph shall be optional with the Mortgagee and not obligatory, and the Mortgagee shall not in any case be liable to the Mortgagor for a failure to exercise any such right. The Mortgagee shall have no responsibility with respect to the legality, validity and priority of any such claim, lien, encumbrance, tax, assessment and premium, and of the amount necessary to be paid in satisfaction thereof.

3.    <u>Default; Remedies</u>.

3.1    The Mortgagor shall be in default under this Mortgage upon the occurrence of an event of default under any of the Loan Documents, including the Loan Agreement and the

expiration of the grace periods, if any, as specified in the Loan Agreement (herein called the "Events of Default").  Such Events of Default shall include without limitation, the following:

(a)     Default in the due and punctual payment of any payment of principal of or premium, if any, or interest on the Note and such default shall continue beyond the expiration of the applicable period of grace, if any; or

(b)     Default in payment or performance under any of the obligations under the Loan Documents, and such default shall continue beyond the expiration of the applicable period of grace, if any; or

(c)     Default in the due performance or observance of any other covenant or provision of this Mortgage and such default shall continue for a period of thirty (30) days after the earlier of the date of notice thereof to the Mortgagor by the Mortgagee or the date the Mortgagor becomes aware of such default.

3.2     Upon the occurrence of an Event of Default which has not been cured within any applicable remedy period or demand under any demand instrument, and at the option of the Mortgagee, (a) the Mortgagee may declare the obligations of the Mortgagor to the Mortgagee to be immediately due and payable, (b) the Mortgagee may immediately take possession of the Mortgaged Property, and (c) the Mortgagee may forthwith exercise all other rights and remedies provided herein, or in any of the other Loan Documents, or which may be available to the Mortgagee by law, including without limitation, the STATUTORY POWER OF SALE.

3.3     (a)     Notwithstanding any other provision set forth herein and not in limitation thereof, this Mortgage is upon the STATUTORY CONDITIONS and upon the further condition that all covenants and agreements of, and conditions imposed upon, the Mortgagor contained herein and in the Note, the Loan Agreement, and  the other instruments and agreements evidencing or securing the Obligations secured hereby shall be kept and fully performed, for any breach of which (remaining uncured beyond the grace period, if any, provided herein or therein, or in the Loan Agreement) the Mortgagee shall have the STATUTORY POWER OF SALE, and upon the further condition that upon default (remaining uncured as aforesaid) the Mortgagee shall have as to the Personal Property all the rights and remedies of a Secured Party under the Uniform Commercial Code as now in effect in the State of New Hampshire including, but not limited to, the option to proceed as to both the Mortgaged Property and Personal Property under the law relating to foreclosure of real estate mortgages, and such further remedies as from time to time may hereafter be provided in New Hampshire for a Secured Party, and upon the further condition that all rights of the Mortgagee under this Mortgage and the other Loan Documents as to the Personal Property and the Mortgaged Property may be exercised together or separately and, at the Mortgagee's discretion, in connection with the exercise by the Mortgagee of its rights under any one or more of the Loan Documents.  To the fullest extent not prohibited by applicable law: (a) in case of a foreclosure sale the Mortgagee shall be entitled to the costs, charges and expenses allowed under the Statutory Power of Sale or under this Mortgage and (b) in case redemption is had by the Mortgagor after foreclosure proceedings have been begun, the Mortgagee shall be entitled to collect all costs, charges and expenses, including reasonable attorneys' fees, incurred through the time of redemption.

(b)     In exercising its power of sale under this instrument, the Mortgagee may sell the Personal Property, or any part thereof, either separately from or together with the Mortgaged Property and the balance of the Mortgaged Property, or any part thereof, either as one parcel or unit or in such separate parcels or units, all as the Mortgagee may in its discretion elect; and may so sell the Mortgaged Property, or the Mortgaged Property, as one parcel or unit or in such separate parcels or units, all as the Mortgagee may in its reasonable discretion elect; and may so sell the Mortgaged Property or any part thereof either separately from or together with the whole or any part of other collateral which may constitute security for any obligation secured by the Mortgaged Property, also as the Mortgagee may in its discretion elect.  In the event of any separate sale of Personal Property, the Mortgagee will give to the Mortgagor reasonable notice of the time and place of any public sale or of the time after which any private sale or other intended disposition thereof is to be made, and such requirement of reasonable notice shall be met if such notice is mailed postage prepaid to the address of the Mortgagor as provided in this Mortgage at least fifteen (15) days before the time of the sale or other disposition.

3.4     All rights and remedies set forth herein shall be cumulative and concurrent, and may be pursued singly, successively, or together, at the Mortgagee's sole discretion, and may be exercised as often as occasion thereof shall occur.

3.5     If the Mortgagor, its successors or assigns, pays the Mortgagee, all amounts under the Loan Documents, then the Mortgage shall be void; otherwise it shall remain in full force and effect.

4.      Possession by Mortgagee.

4.1     If the Mortgagee shall take possession of the Mortgaged Property as permitted hereby, then in addition to, and not in limitation of, the Mortgagee's STATUTORY POWER OF SALE, the Mortgagee may:

(a)     hold, manage, operate, and lease the Mortgaged Property to the Mortgagor or to any other entity on such terms and for such period(s) of time as the Mortgagee may deem proper, and the provisions of any lease made by the Mortgagee pursuant hereto shall be valid and binding upon the Mortgagor notwithstanding the fact that the Mortgagee's right of possession may terminate or this Mortgage may be satisfied of record prior to the expiration of the term of such lease;

(b)     make such alterations, additions, improvements, renovations, repairs, and replacements to the Mortgaged Property as the Mortgagee may reasonably deem proper;

(c)     remodel such improvements so as to make the same available in whole or in part for business purposes;

(d)     collect the rents, issues, and profits arising from the Mortgaged Property, past due and thereafter becoming due, and apply the same, in such order of priority as the Mortgagee may determine, to the payment of all charges and commissions incidental to the collection of rents,

the management of the Mortgaged Property, and the obligations and all sums or charges required to be paid by the Mortgagor hereunder;

(e)     take any other action the Mortgagee deems necessary or appropriate in its sole discretion to preserve, protect, or improve the Mortgaged Property.

4.2     All monies advanced by the Mortgagee for the above purposes and not repaid out of the rents collected shall immediately and without demand be repaid by the Mortgagor to the Mortgagee, together with interest thereon at the same rate as provided in the Note, and shall be added to the principal indebtedness secured hereby.

4.3     The taking of possession and the collection of rents by the Mortgagee as described above shall not be construed to be an affirmation of any lease of the Mortgaged Property or any part thereof, and the Mortgagee, or any purchaser at any foreclosure sale, may terminate any such lease at any time, whether or not such taking of possession and collection of rents has occurred.

5.     <u>Foreclosure Pursuant to Power of Sale</u>.

5.1     Upon an Event of Default, the Mortgagee or its legal representatives or assigns may on such terms and conditions as the Mortgagee deems appropriate in its sole discretion and pursuant to the STATUTORY POWER OF SALE, sell the Mortgaged Property by public sale to the highest bidder as provided herein and in N.H. RSA 479:25-27a, as such statutes may be amended from time to time.

5.2     If the Mortgagee invokes the STATUTORY POWER OF SALE, then the Mortgagee may, without further demand upon the Mortgagor, sell the Mortgaged Property or any estate therein, in one or more parcels, to the highest bidder for cash or other consideration acceptable to the Mortgagee at public sale to be held upon the Mortgaged Property.

5.3     In the event that the Mortgagee seeks to enforce its rights and remedies hereunder, the Mortgagor shall fully cooperate with the Mortgagee in any foreclosure of the Mortgaged Property scheduled by the Mortgagee, including without limitation; (i) providing the Mortgagee with any information concerning the Mortgaged Property reasonably requested by the Mortgagee, such as rental income information, taxes, water assessment charges and any maintenance costs associated with the Mortgaged Property; (ii) arranging with the Mortgagee two (2) preview dates, each three hours in length, prior to the dates of any foreclosure sale; and (iii) granting the Mortgagee unlimited access to the Mortgaged Property on the date of the foreclosure sale for one hour before and one hour after the foreclosure sale, except that Mortgagee shall not interfere with the conduct of Mortgagor's business operations on such Premises.   In addition, the Mortgagor shall, without waiving its right to enjoin a foreclosure under N.H. RSA 479, under no circumstances and in no event in any way interfere with, any foreclosure sale of the Mortgaged Property scheduled by the Mortgagee.

5.4     The deed given by reason of such sale shall convey to the purchaser an indefeasible title to the Mortgaged Property, discharged of all rights of redemption with respect

to this mortgage by the Mortgagor and its successors or assigns, or any person claiming from or under it or them.  The Mortgagee shall apply the proceeds of such sale first to all costs of notice and sale of the Mortgaged Property including reasonable attorneys', accountants' and appraisers' fees, then to any and all accrued but unpaid interest due to the Mortgagee, and thereafter to the principal indebtedness evidenced by the Note and secured hereby, and to the other indebtedness secured hereby.  Any excess may be paid to others having a lien on the Mortgaged Property not having priority over this Mortgage and if none, then to the Mortgagor.  The Mortgagor shall be liable for any deficiency.

5.5     In the event of foreclosure, at the option of the Mortgagee, the interest of each of the Mortgagor and the Mortgagee herein may be sold as a single unit together with such Personal Property, furniture, furnishings, fixtures, machinery, and equipment as may secure the Note or be secured by the Loan Documents.

5.6     If the provisions of the Uniform Commercial Code apply, any property or security given to secure the indebtedness secured hereby may be sold with or as a part of the Mortgaged Property, or any part thereof, at one or more foreclosure sales, and any notice required under such provisions shall be fully satisfied by the notice provided to be given hereby in execution of the STATUTORY POWER OF SALE.

6.     <u>Security Agreement</u>.  The Mortgage is among other things intended to be a security agreement and financing statement with respect to the Personal Property and fixtures described and included in the Mortgage, and all additions, accessions, substitutions and replacements thereto and therefor, together with the proceeds thereof, and all of which are hereinafter referred to as the collateral and the Mortgagor hereby grants and conveys to Mortgagee, its successors and assigns, a security interest therein.  That upon an Event of Default of any material term, condition or covenant of the Mortgage and acceleration of any indebtedness hereby secured, the Mortgagee may, at its discretion, require the Mortgagor to assemble the collateral and make it available to the Mortgagee at a place reasonably convenient to both parties to be designated by the Mortgagee.  That the Mortgagee shall give the Mortgagor notice, by certified mail, of the time and place of any public sale of any of the collateral or of the time any private sale or other intended disposition thereof is to be made by sending notice to the Mortgagor at least ten (10) days before the time of the sale or other disposition, which provisions for notice the Mortgagor and the Mortgagee agree are reasonable; <u>provided</u> <u>however</u>, that nothing herein shall preclude the Mortgagee from proceeding as to both real and personal property in accordance with the Mortgagee's rights and remedies in respect of the real property.  The Mortgagee shall have all of the remedies of a secured party under the Uniform Commercial Code as now in effect in the State of New Hampshire, and such further remedies as may from time to time hereafter be provided in New Hampshire for a secured party.  The Mortgagor agrees that all rights of the Mortgagee as to said collateral and as to said real estate, and rights and interest appurtenant thereto, may have exercised together or separately and further agrees that in exercising its power of sale as to said collateral and as to said real estate, and rights and interest appurtenant thereto, the Mortgagee may sell the collateral or any part thereof, either separately from or together with the sale real estate, rights and interests appurtenant thereto, or any part thereof, all as the Mortgagee may in its discretion elect.

For the purpose of this Mortgage constituting a financing statement under the Uniform Commercial Code the addresses of the parties are:

| | |
|---|---|
| The Mortgagor (Debtor): | MUNCE'S REAL ESTATE VENTURES, LLC |
| | 453 Alpine Street |
| | Berlin, New Hampshire  03570 |
| | |
| | and |
| | |
| The Mortgagee  (Secured Party): | NORTHWAY BANK |
| | 9 Main Street |
| | Berlin, New Hampshire 03570 |

7.    Appointment of Receiver.  The Mortgagee may, at any time following an Event of Default hereunder which has not been cured within any applicable remedy period or demand under any demand instrument (subject to any limitations in the Loan Documents), apply to any court having jurisdiction for appointment of receiver.  That court shall promptly appoint a receiver of the Mortgaged Property, who shall be authorized to receive and apply the income, profits, issues, rents and revenues from whatever source derived.  The rents, profits, income, issues, and residues shall be applied by the receiver according to the lien of this Mortgage and the practice of the court.  The appointment of the receiver shall be made by such court as an admitted equity in a matter of absolute right to the Mortgagee, and without references to the adequacy or inadequacy of the value of the Mortgaged Property or to the solvency or insolvency of the Mortgagor or any co-borrower or guarantor of the obligations secured hereby.

8.    General Provisions.  The Mortgagor and the Mortgagee further agree that:

8.1    Homestead.  There is no homestead interest in the Mortgaged Property.

8.2     Waivers.

(a)    Except as otherwise specifically provided in this Mortgage, the Note and the other Loan Documents, the Mortgagor waives demand, notice of any action taken in reliance on this Mortgage, and all other demands and notices of any description.

(b)    No delay or omission on the part of the Mortgagee in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or of any other right or remedy under this Mortgage.  A waiver on any one occasion shall not be construed as a bar to or waiver of any such right and/or remedy on any future occasion.  No single or partial exercise of any power hereunder shall preclude other or future exercise thereof or the exercise of any other right; and

(c)    That receipt and disposition of rents, income of the Mortgaged Property, insurance proceeds, eminent domain awards, or any other sums under the provisions of the Loan Documents by the Mortgagee shall not be a waiver or release of any rights of the Mortgagee,

including but not limited to, the right of foreclosure or acceleration of the Note, whether such receipt or disposition shall be before or after exercise of any such rights.

8.3 <u>Binding Agreement</u>. This Mortgage shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, legal representatives, successors, and assigns; provided, however, that any assumption of any obligations of Mortgagor hereunder shall not constitute a release of the party whose obligation is being assumed without the Mortgagee's prior written consent.

8.4 <u>Amendment</u>. This Mortgage shall not be changed in any respect except by written instrument signed by the parties hereto.

8.5 <u>Governing Law</u>. This Mortgage and all rights and obligations hereunder, including matters of construction, validity, and performance, shall be governed by the laws of the State of New Hampshire without regard to its choice of law or conflicts of law rules or rulings.

8.6 <u>Severability</u>. If any term, condition, or provision of this Mortgage or the application thereof to any person or circumstance shall, to any extent, be held invalid or unenforceable according to law, then the remaining terms, conditions, and provisions of this Mortgage, or the application of any such invalid or unenforceable term, condition or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby, and each term, condition, and provision of this Mortgage shall be valid and enforced to the fullest extent permitted by law.

8.7 <u>Headings</u>. The descriptive headings of the sections of this Mortgage have been inserted for convenience and reference only and shall not control or affect the meaning or construction of any of the contents hereof.

8.8 <u>Estoppel Certificate</u>. The Mortgagor, within five (5) days after being given notice as provided below, will furnish to the Mortgagee a written statement duly acknowledged by the Mortgagor or its representative certifying the principal amount then outstanding on the Note and certifying that no offsets or defenses exist against the Mortgage indebtedness (or explaining such offsets or defenses to the extent they exist).

8.9 <u>Notice</u>. Any demand or notice required or permitted hereunder shall be effective if either: (a) hand-delivered to the addressee, or (b) deposited in the mail, registered or certified, return receipt requested and postage prepaid, or delivered to a private express company addressed to the addressee: (i) at the address shown at the beginning of this Mortgage, or (ii) if such party has provided the other in writing with a change of address, at the last address so provided. Any notice or demand mailed as provided in this paragraph shall be deemed given and received on the earlier of:

(A) the date received; or

(B) the date of delivery, refusal or non-delivery as indicated on the return receipt, if sent by mail or private express as provided above.

8.10    Gender and Number.  All words denoting gender or number shall be construed to include any other gender or number as the context and facts require.

8.11    Conflict with other Loan Documents.  In the event of any conflict between the terms, covenants, conditions and restrictions contained in the Loan Documents, the term, covenant and condition or restriction which grants the greater benefit upon the Mortgagee shall control.  The determination as to which term, covenant, condition or restriction is the more beneficial shall be made by the Mortgagee in its reasonable discretion.

8.12    Waiver of Right of Exemption.  The Mortgagor, for the consideration aforesaid, hereby waives all rights of exemption in the Mortgaged Property as the same are now or here after provided of the provisions of any federal or state law, including, without limitation, 11 U.S.C. §522.

8.13    Replacement of Security Documents.  Upon receipt of an affidavit of an officer of the Mortgagee as to the loss, theft, destruction or mutilation of the Note or any other security document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon cancellation of such Note or other security document, the Mortgagor will issue, in lieu thereof, a replacement note or other security document in the same principal amount thereof and otherwise of like tenor.

8.14    Waiver of Jury Trial.  THE MORTGAGOR AND THE MORTGAGEE MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF MORTGAGEE RELATING TO THE ADMINISTRATION OF THE LOAN OR ENFORCEMENT OF THE LOAN DOCUMENTS, AND AGREE THAT NEITHER PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  EXCEPT AS PROHIBITED BY LAW OR OTHERWISE PROVIDED IN THE LOAN DOCUMENTS, THE MORTGAGOR HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, ENHANCED COMPENSATORY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES, AND REASONABLE ATTORNEYS FEES IN THE EVENT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE BANK, ITS AGENTS AND EMPLOYEES. THE MORTGAGOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF MORTGAGEE HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT MORTGAGEE WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER.  THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR MORTGAGEE TO ACCEPT THIS MORTGAGE AND MAKE THE LOAN.

IN WITNESS WHEREOF, the parties hereto have executed this Mortgage Deed and Security Agreement as of the __ day of _____, 2011.

NORTHWAY BANK (the "Mortgagee")

_____     By:_____
Witness                             Thomas Caruso, Its Duly Authorized
                                       Senior Vice President

MUNCE'S REAL ESTATE VENTURES, LLC
(the "Mortgagor")

_____     By:_____
Witness                             Name:
                            Title:

STATE OF NEW HAMPSHIRE
COUNTY OF _____

The foregoing instrument was acknowledged before me this ___ day of _____, 2011, by Thomas Caruso, duly authorized Senior Vice President of NORTHWAY BANK, a state chartered bank organized under the laws of the State of New Hampshire, on behalf of same.

_____
Justice of the Peace/Notary Public
My Commission Expires:_____
Notary Seal

STATE OF NEW HAMPSHIRE
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2011 by _____, duly authorized _____ of MUNCE'S REAL ESTATE VENTURES, LLC, a New Hampshire limited liability company, on behalf of the same.

_____
Justice of the Peace/Notary Public
My Commission Expires:_____
Notary Seal

J:\WDOX\DOCS\CLIENTS\020746\093343\M1810977.DOC

## SCHEDULE A

### Legal Description

Certain real property, with the improvements thereon, situate in the City of Berlin, Coös County, New Hampshire, on the northerly side of NH Route 110 and on the southerly side of the St. Lawrence and Atlantic Railroad, shown on a Plan entitled "Plat of Survey for Isaacson Structural Steel, Inc., Jericho Road, Berlin, New Hampshire" prepared by York Land Service Co. dated July 7, 1999, recorded as Plan #1595 in the Coös County Registry of Deeds, said real property more particularly described as follows:

Beginning at an iron pin situated on the northerly sideline of NH Route 110 (which point of beginning iron pin has been referenced to be North 26°24'20" West a distance of 130.78 feet from the northwesterly corner of land now or formerly of Isaacson Structural Steel, Inc. described in the deed at Book 833, Page 714); thence

1.     North 20°02'47" East a distance of 91.28 feet to an iron pin on the southerly sideline of the St. Lawrence and Atlantic Railroad; thence

2.     South 47°45'24" East along the southerly sideline of the St. Lawrence and Atlantic Railroad a distance of 686.88 feet to a point; thence

3.     In a westerly direction along the northerly sideline of NH Route 110 along the arc of a curve having a radius of 925.00 feet for a distance of 54.19 feet to a point; thence

4.     North 57°17'57" West along the northerly sideline of NH Route 110 a distance of 367.55 feet to a point; thence

5.     Continuing in a westerly direction along the northerly sideline of NH Route 110 along the arc of a curve having a radius of 1,207.30 feet for a distance of 237.18 feet to the point of beginning.

Shown to contain 0.79 acre, more or less.

Meaning and intending to describe the same property conveyed by the Warranty Deed of Arnold P. Hanson, Jr., et al, Trustees of the Eli L. Isaacson Family Trust / Family Trust to Munce's Real Estate Ventures, LLC, recorded November 21, 2000, at Book 951, Page 377.

Address:  148 Jericho Road, Berlin, NH
Tax Lot:  000105-000018.000000

*For recorder's use:*
*Tax Stamp: $ _____*
*Recording Fee: $ _____*
*Return to: Account # _____*
*Devine, Millimet & Branch - Attn: mrj*
*111 Amherst Street, Manchester, NH  03101*

_____
**(Properties Located in Gorham and Lancaster, Coos County, New Hampshire)**

## SECOND MORTGAGE, SECURITY AGREEMENT AND COLLATERAL ASSIGNMENT OF LEASES AND RENTS

THIS SECOND MORTGAGE, SECURITY AGREEMENT AND COLLATERAL ASSIGNMENT OF LEASES AND RENTS (hereinafter referred to as this "Mortgage") is made and entered into as of this _____ day of _____, 2011, by **HAROLD P. MUNCE and MARILYN J. MUNCE,** individuals with a principal address of 453 Alpine Street, Berlin, New Hampshire  03570 (the "Mortgagor"), in favor of **NORTHWAY BANK**, a bank incorporated under the laws of the State of New Hampshire with a principal place of business at 9 Main Street, Berlin, New Hampshire 03570 (the "Mortgagee") with MORTGAGE COVENANTS, to secure:

A.	the payment of and performance of a certain promissory note of even date payable by the Mortgagor, Munce's Superior Petroleum Products, Inc., Gorham Oil, Inc., Superior Trucking, Inc., BMRA Real Estate Ventures, LLC, and Munce's Real Estate Ventures, LLC, as "Borrowers" to the Mortgagee as the "Bank" (as the same may be amended or modified, the "Note") with interest thereon, pursuant to which Mortgagor has promised to repay a certain loan in the principal amount of up to THREE HUNDRED THOUSAND DOLLARS ($300,000) (the "Loan") made by Mortgagee to the Borrowers for the purpose of financing the restructuring of the Borrowers' commercial and business operations;

B.	the payment of all other sums with interest thereon advanced in accordance herewith to protect the security and priority of this Mortgage Deed (the "Mortgage"), including the costs of collection; and

C.	the payment, performance and satisfaction of the financial liabilities and other obligations under the terms, conditions, representations, warranties and covenants contained in the Note, a certain Loan Agreement by and among the Borrowers, the Mortgagee and others of even date, as the same may be amended, (the "Loan Agreement"), the documents defined therein as the Loan Documents, all loans or obligations, now existing or hereafter arising, of any Borrower owed to the Bank (or any affiliate thereof), as the same may have been and may be hereafter amended, including, but not limited to the prior loans, and any obligations arising under

any foreign exchange contracts, interest rate swap, cap, floor or hedging agreements, or similar agreements and all obligations of Mortgagor to Mortgagee arising out of or in connection with any Automated Clearing House ("ACH") Agreements relating to the procession of ACH transactions, together with all fees, expenses, charges and other amounts outstanding and chargeable to the Mortgagor under the ACH Agreements, all as they may be amended, renewed, extended or restated from time to time (the foregoing including, without limitation, the Note and the Loan Agreement are collectively referred to herein as the "Loan Documents").

The following described premises (the "Premises"):

Certain tracts or parcels of land, together with all buildings, fixtures and improvements thereon, whether now affixed or to be affixed, located in the Towns of Gorham and Lancaster, Coos County, New Hampshire, more particularly described in <u>Schedule A</u> attached hereto and made a part hereof.

As further security for payment of the indebtedness and performance of the obligations, covenants and agreements secured hereby, the Mortgagor hereby grants, transfers, sets over and assigns, with MORTGAGE COVENANTS, to the Mortgagee:

D.      Any and all tenants, hereditaments, easements, rights of way, licenses, profits, privileges and other appurtenances belonging, relating or pertaining to the Premises;

E.      All rents, security deposits, issues and profits, revenues, royalties, bonuses, rights and benefits under any and all leases or tenancies now existing or hereafter created of the Premises or any part thereof, with the right to receive and apply the same to said indebtedness, and the Mortgagee may demand, sue for and recover such payments, but shall not be required to do so; <u>provided</u>, <u>however</u>, that so long as the Mortgagor is not in default hereunder, the right to receive and retain such rents, issues and profits is reserved to the Mortgagor.  To carry out the foregoing, the Mortgagor agrees (1) to execute and deliver to the Mortgagee such collateral assignments of leases and rents applicable to the Premises as the Mortgagee may from time to time request, while this Mortgage and the debt secured hereby are outstanding, and further (2) not to cancel, accept a surrender of, reduce the rentals under, anticipate any rentals under, or modify any such leases or tenancies, or consent to an assignment or subletting thereof, in whole or in part, without the Mortgagee's written consent.  Nothing herein shall obligate the Mortgagee to perform the duties of the Mortgagor as landlord or lessor under any such leases or tenancies, which duties the Mortgagor hereby covenants and agrees to well and punctually per-form; and

F.      All judgments, awards of damages and settlements hereafter made as a result or in lieu of any taking of the Premises or any interest therein or part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Premises or the improvements thereon or any part thereof, including any award for change of grade of streets.  In the event that any such damage cannot, in the reasonable opinion of Mortgagee, be repaired within a period of ninety (90) days, or in the event such damage materially interferes with Mortgagor's ability to operate the Premises for their intended purposes, the Mortgagee may apply all such sums or any part thereof so received on the indebtedness secured hereby in such manner as it elects, or, at its option, the entire amount or any part thereof

so received may be released.  If an Event of Default has occurred under the Loan Documents the Mortgagor hereby irrevocably authorizes and appoints the Mortgagee its attorney-in-fact to collect and receive any such judgments, awards and settlements from the authorities or entities making the same, to appear in any proceeding therefor, to give receipts and acquittances therefor, and to apply the same to payment on account of the debt secured hereby, whether then matured or not.  The Mortgagor will execute and deliver to the Mortgagee on demand such assignments and other instruments as the Mortgagee may require for said purposes and, after the occurrence of an Event of Default, will reimburse the Mortgagee for its cost (including reasonable counsel fees) in the collection of such judgments and settlements.

The Mortgagor also grants the Mortgagee a security interest in the following to secure the obligations of the Mortgagor to the Mortgagee set forth herein:

(1)     All fixtures, machinery, equipment, building materials and components whether or not incorporated into the Premises and all other tangible personal property intended for the construction, use or operation of the Premises or for use in or with the building or other improvements on the Premises, whether now or hereafter owned by the Mortgagor and now affixed or to be affixed, or now or hereafter located upon the Premises, including all appurtenant easements.  The foregoing shall include without limitation all construction materials, plumbing, heating, lighting, refrigerating, ventilating and air conditioning apparatus and equipment, elevators and elevator machinery, boilers, tanks, motors, sprinkler and fire extinguishing systems, alarm systems, screens, awnings, screen doors, storm and other detachable awnings, storm and other detachable windows and doors, and other equipment, machinery, furniture and furnishings, fixtures, and articles of personal property now and hereafter owned by the Mortgagor and now and hereafter affixed to, placed upon or used in connection with the construction or operation of the Premises, and all other purposes whether or not included in the foregoing enumeration, together with cash proceeds and non-cash proceeds of all of the foregoing, all of which are covered by this Mortgage, whether or not such property is subject to prior conditional sales agreements, chattel mortgages or other liens, excepting inventory and personal property to be consumed or sold in the normal course of business of the Mortgagor.

(2)     All "Assigned Contracts and Permits" meaning all of the contracts, declarant's rights, development rights, licenses, permits, plans, specifications, approvals, agreements and warranties, and all of Mortgagor's right, title and interest therein, whether now owned or hereafter acquired, and all proceeds and products thereof, and all accounts, deposit accounts, contract rights and general intangibles related thereto, which are in any manner related to the Premises and the improvements on or to be constructed on the Premises.

(3)     Any and all additions, accessions, substitutions or replacements to or for any of the foregoing.

(4)        Any and all products and proceeds of any or all of the foregoing, including, without limitation, cash and cash equivalents, tax refunds, and the proceeds of insurance policies providing coverage against the loss or destruction of or damage to any of such collateral.

(5)        All of the Mortgagor's after-acquired property of the kinds and types described in the foregoing paragraphs.

1.        <u>Representation, Warranties and Covenants of the Mortgagor</u>.  In addition to the MORTGAGE COVENANTS, the Mortgagor further represents, warrants, covenants and agrees, as appropriate, with the Mortgagee, its successors and assigns, as follows:

1.1        <u>Title</u>.  The Mortgagor, for itself and its successors and assigns, does hereby covenant, grant and agree to and with the Mortgagee and its successors and assigns, that until the delivery hereof it is the lawful owner of the Premises seized and possessed thereof in its own right in fee simple, has full power and lawful authority to grant and convey the same in manner aforesaid that the Premises are free and clear from any encumbrance whatsoever, that except as otherwise recited in <u>Schedule A</u>, it and its successors shall warrant and defend the same to the Mortgagee and its successors and assigns against the lawful claims and demands of any person or persons whatsoever, except as otherwise herein recited; and that, except as otherwise recited in Schedule A, it will not cause or permit any lien to arise against the Premises which is superior to the lien of this Mortgage ("<u>Permitted Encumbrances</u>").

1.2        <u>Payment and Performance</u>.  To pay and perform the Note secured hereby and interest thereon as the same shall become due and payable, and also any other indebtedness that may accrue to the Mortgagee under the terms of this Mortgage, and to perform all other agreements set forth herein and in the Loan Documents.

1.3        <u>Insurance</u>.  That the Mortgagor will keep the buildings, improvements and personal property now existing or hereafter erected or located on the Premises and the interests and liabilities incident to the ownership thereof insured against loss by fire and such other hazards, casualties and contingencies, and in manner, form and companies in the manner set forth in the Loan Agreement; and will escrow payments on account of such insurance premiums with Mortgagee to the extent provided in the Loan Agreement.

1.4        <u>Taxes and Assessments</u>.  That the Mortgagor will pay, before the same become delinquent or any penalty attaches thereto for nonpayment, all taxes, assessments and charges of every nature that may now or hereafter be levied or assessed, upon the Premises or any part thereof, or upon the rents, issues, income or profits thereof, whether any or all of said taxes, assessments or charges be levied directly or indirectly, and will pay, before the same become delinquent or any penalty attached thereto for the nonpayment, all taxes which by reason of nonpayment create a lien prior to the lien of the Mortgage and will thereupon submit to the Mortgagee such evidence of the due and punctual payment of such taxes, etc. as the Mortgagee may reasonably require; and will escrow payments on account of real estate taxes with Mortgagee, in an account bearing interest, upon Mortgagee's request or upon the occurrence of an Event of Default under the Loan Agreement.

1.5     Maintenance of the Premises.  That the Mortgagor will keep protected in good order, repair and condition (reasonable wear and tear and casualty insured against excepted) at all times the buildings and improvements (including the Mortgagor's fixtures) now standing or hereafter erected or placed upon the Premises and any and all of the Mortgagor's appurtenances, apparatus and articles of personal property, including, but not limited to, furniture, furnishings and equipment, now or hereafter in or attached to or used in connection with said buildings or improvements, promptly replacing any of the aforesaid which may become lost, destroyed or unsuitable for use; will always maintain in good order and condition all the facilities, easements, works, and ways set forth in the description of the Premises, whether located upon the Premises hereby mortgaged or elsewhere; and will not commit or suffer any strip or waste of the Premises, or any violation of any law, regulation, ordinance or contract affecting the Premises, and will not commit or suffer any demolition, removal or material alteration of any buildings or improvements (including fixtures) on the Premises without the written consent of the Mortgagee. The Mortgagor shall maintain and preserve the parking areas, passageways and drives, now or hereafter existing on the Premises.

1.6     Books and Records.  That the Mortgagor shall maintain full and correct books and records showing in detail the earnings and expenses of the Premises and will permit the Mortgagee and its representatives to examine said books and records and all supporting vouchers and data at any reasonable time, during business hours, from time to time upon prior request by the Mortgagee.

1.7     Other Proceedings.  That if any action or proceeding be commenced, excepting an action by the Mortgagor against the Mortgagee, to which action or proceeding the Mortgagee is made a party by reason of the execution of the Mortgage or the Note which it secures, or in which it becomes necessary to defend or uphold the lien of the Mortgage, all reasonable sums paid by the Mortgagee for the expense of any litigation to prosecute or defend the rights and lien created hereby including reasonable attorneys' fees, shall be paid by the Mortgagor, together with interest thereon from date of payment at the highest rate specified in the Note secured hereby, and any such sum, and the interest thereon, shall be immediately due and payable and be secured hereby, having the benefit of the lien hereby created, as a part thereof and of its priority.  The Mortgagee shall give the Mortgagor prompt notice of the initiation of any such action or proceeding.

1.8     Consent to Release, Etc.  Without affecting the liability of the Mortgagor or, any other person (except any person expressly released in writing) for payment of any indebtedness secured hereby or for performance of any obligation contained herein, and without affecting the rights of the Mortgagee with respect to any security not expressly released in writing, the Mortgagee may at any time and from time to time, either before or after the maturity of the Note and without notice or consent:

(a)     Release any person liable for payment of all or any part of the indebtedness or for performance of any obligation;

(b)     Make any agreement extending the time or otherwise altering the terms of payment of all or any part of the indebtedness, or modifying or waiving any obligation, or subordinating, modifying or otherwise dealing with the lien or charge hereof; provided, however, that nothing herein shall entitle Mortgagee to increase Mortgagor's payment or obligations hereunder without Mortgagor's consent.

(c)     Exercise or refrain from exercising or waive any right the Mortgagee may have;

(d)     Accept additional security of any kind; or

(e)     Release or otherwise deal with any property, real or personal, securing the indebtedness, including all or any part of the property mortgaged hereby.

1.9     <u>Zoning, Etc</u>.  If at any time the then-existing use or occupancy of the Premises shall, pursuant to any zoning or other law, ordinance or regulation, be permitted only so long as such use or occupancy shall continue, that the Mortgagor shall not cause or permit such use or occupancy to be discontinued without the prior written consent of the Mortgagee.

1.10     <u>Leases</u>.  To enter into leases of the Premises only in such terms and conditions as are reasonably approved by the Mortgagee such approval not to be unreasonably delayed or withheld; all of such leases to be subordinated to the Mortgage and the lien hereof.

1.11     <u>Due on Sale</u>.  This Mortgage is not assignable or assumable and if all or any part of the Premises is sold or conveyed, or if there are transfers of any interests in the Mortgagor prohibited by the Loan Agreement, then the Mortgagee may, at its option, require immediate payment in full of all sums secured by this Mortgage.

1.12     <u>Underground Tanks</u>.  The Mortgagor will comply with all applicable federal and state laws and regulations, as the same may be amended from time to time, relating to the inspection and replacement of underground fuel storage tanks located on the Premises.

1.13     <u>Hazardous Waste</u>.  The Mortgagor represents that the Premises do not contain any hazardous wastes, hazardous substances (including, without limitation, medical or infectious waste), hazardous materials, toxic substances or toxic pollutants, as those terms are used in the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Hazardous Materials Transportation Act and the Toxic Substances Control Act, the Clean Air Act, the Clean Water-Act, or any similar state or local law, or in any regulations promulgated pursuant thereto, or in any other applicable law as the same may be amended from time to time.  The Mortgagor covenants to strictly comply with the requirements of all such laws and to promptly notify the Mortgagee of the presence in or on the Premises of any materials, the use, storage, transportation or disposal of which is regulated by such laws, unless Mortgagor is using or storing such materials in accordance with applicable law. The Mortgagor hereby covenants to defend, indemnify, and hold the Mortgagee harmless from and against all loss, cost, damage and liability, including reasonable attorneys' fees and costs of litigation, suffered or incurred by the Mortgagee on account of the presence of any such

materials in or on the Premises, including, without limitation, any such loss, cost, damage or liability arising from a violation of any of such laws.

1.14   Future Advances .  Future advances from the Mortgagee shall be secured by this Mortgage as evidenced by the Note secured hereby.

1.15   Compliance with Laws, Etc.  The Mortgagor will comply with all regulations, condominium documentation, covenants, rules, ordinances, statutes, codes, permits, orders and decrees applicable to the Mortgagor, or to the Premises, the use, occupancy or condition thereof or any part thereof.  The Mortgagor, if an entity other than a natural person, will, so long as it is owner of the Premises, do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges as such an entity under the laws of the state of its incorporation including without limitation the payment of all fees and other charges required in connection therewith.  The Mortgagor shall have the right to contest by appropriate legal proceedings, but without cost or expense to the Mortgagee, the validity of any laws, ordinances, order, rules and regulations affecting the Premises if compliance therewith may legally be held in abeyance without the sufferance of any charge, lien or liability against the Premises, and the Mortgagor may postpone compliance therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay compliance, provided the Mortgagee is furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such noncompliance or delay.

1.16   Mechanics Liens, Etc.  The Mortgagor will pay, as such shall become due, all lawful claims and demands of mechanics, materialmen, laborers and other which, if unpaid, might result in, or permit the creation of, a lien on the Premises or any part thereof, or on the revenues, rents, issues, income and profits arising therefrom.  Except as permitted under the Loan Agreement, the Mortgagor will not create or permit to be created and will promptly discharge any mortgage, lien, or charge on the Premises or any part thereof or on the interest of the Mortgagor or the Mortgagee therein, and the Mortgagor will do or cause to be done everything reasonably necessary so that the lien hereof shall be fully preserved, at the cost of the Mortgagor, without expense to the Mortgagee.  The Mortgagor shall have the right to contest such claims or demands by appropriate legal proceedings, but without cost or expense to the Mortgagee, if such claim or demand may legally be held in abeyance without the sufferance of any charge, lien or liability against the Mortgaged Property, and the Mortgagor may postpone satisfaction therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay satisfaction, provided the Mortgagee is furnished with security, reasonably satisfactory to it, against any loss or injury by reason of such contest and refusal to satisfy pending contest.

1.17   Commercial Purpose.  The Mortgagor warrants that this Mortgage is given primarily for business, commercial or agricultural purpose.  The Premises subject to this Mortgage are not used exclusively for residential purposes and are not the primary residence of the Mortgagor.

2.    Payments, Etc. by the Mortgagee.  If the Mortgagor shall neglect or refuse to keep in good repair the property conveyed by this Mortgage, to replace the same as herein agreed, to maintain and pay the premiums for insurance which may be required under Paragraph l.3 or to pay and discharge all taxes, assessments, charges and liens of every nature and to whomever assessed, as provided for in Paragraphs l.4 and l.16, the Mortgagee may, at its election, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments, charges and liens and any amounts paid as a result thereof, together with interest thereon at the highest rate of interest specified in the Note secured hereby from the date of payment, shall be immediately due and payable by the Mortgagor to the Mortgagee, and until paid shall be added and become part of the principal debt secured hereby, and the same may be collected as a part of said principal debt in any suit herein or upon the Note; or the Mortgagee, by the payment of any tax, assessment or charge, may, if it sees fit if allowed by law, be thereby subrogated to the rights of the state, county, village and all political or governmental subdivisions.  No such advances shall be deemed to relieve the Mortgagor of any default hereunder or impair any right or remedy consequent thereon, and the exercise of the rights to make advances granted in this paragraph shall be optional with the Mortgagee and not obligatory, and the Mortgagee shall not in any case be liable to the Mortgagor for a failure to exercise any such right.  The Mortgagee shall have no responsibility with respect to the legality, validity and priority of any such claim, lien, encumbrance, tax, assessment and premium, and of the amount necessary to be paid in satisfaction thereof.

3.    Default; Remedies.

3.1    The Mortgagor shall be in default under this Mortgage upon the occurrence of an event of default under *any* of the Loan Documents, including the Loan Agreement and the expiration of the grace periods, if any, as specified in the Loan Agreement (herein called the "Events of Default").  Such Events of Default shall include without limitation, the following:

(a)    Default in the due and punctual payment of any payment of principal of or premium, if any, or interest on the Note and such default shall continue beyond the expiration of the applicable period of grace, if any; or

(b)    Default in payment or performance under any of the obligations under the Loan Documents, and such default shall continue beyond the expiration of the applicable period of grace, if any; or

(c)    Default in the due performance or observance of any covenant or provision of this Mortgage and such default shall continue beyond the expiration of the applicable period of grace, if any.

3.2    Upon the occurrence of an Event of Default which has not been cured within any applicable remedy period or demand under any demand instrument, and at the option of the Mortgagee, (a) the Mortgagee may declare the obligations of the Mortgagor to the Mortgagee to be immediately due and payable, (b) the Mortgagee may immediately take possession of the Premises, and (c) the Mortgagee may forthwith exercise all other rights and remedies provided

herein, or in any of the other Loan Documents, or which may be available to the Mortgagee by law, including without limitation, the STATUTORY POWER OF SALE.

3.3     Notwithstanding any other provision set forth herein and not in limitation thereof, this Mortgage is upon the STATUTORY CONDITIONS as well as the other terms and conditions hereof, for any breach of which the Mortgagee shall have the STATUTORY POWER OF SALE.

3.4     All rights and remedies set forth herein shall be cumulative and concurrent, and may be pursued singly, successively, or together, at the Mortgagee's sole discretion, and may be exercised as often as occasion thereof shall occur.

3.5     If the Mortgagor, its successors or assigns, pays the Mortgagee, all amounts under the Loan Documents, complies with and performs all terms and obligations as set forth in the Note and the Loan Documents, then the Mortgage shall be void; otherwise it shall remain in full force and effect.

4.     <u>Possession by Mortgagee</u>.

4.1     If the Mortgagee shall take possession of the Premises as permitted hereby, then in addition to, and not in limitation of, the Mortgagee's STATUTORY POWER OF SALE, the Mortgagee may:

(a)     hold, manage, operate, and lease the Premises to the Mortgagor or to any other entity on such terms and for such period(s) of time as the Mortgagee may deem proper, and the provisions of any lease made by the Mortgagee pursuant hereto shall be valid and binding upon the Mortgagor notwithstanding the fact that the Mortgagee's right of possession may terminate or this Mortgage may be satisfied of record prior to the expiration of the term of such lease;

(b)     make such alterations, additions, improvements, renovations, repairs, and replacements to the Premises as the Mortgagee may reasonably deem proper;

(c)     remodel such improvements so as to make the same available in whole or in part for business purposes;

(d)     collect the rents, issues, and profits arising from the Premises, past due and thereafter becoming due, and apply the same, in such order of priority as the Mortgagee may determine, to the payment of all charges and commissions incidental to the collection of rents, the management of the Premises, and the obligations and all sums or charges required to be paid by the Mortgagor hereunder;

(e)     take any other action the Mortgagee deems necessary or appropriate in its sole discretion to preserve, protect, or improve the Premises.

4.2     All monies advanced by the Mortgagee for the above purposes and not repaid out of the rents collected shall immediately and without demand be repaid by the Mortgagor to the

Mortgagee, together with interest thereon at the same rate as provided in the Note, and shall be added to the- principal indebtedness secured hereby.

4.3     The taking of possession and the collection of rents by the Mortgagee as described above shall not be construed to be an affirmation of any lease of the Premises or any part thereof, and the Mortgagee, or any purchaser at any foreclosure sale, may terminate any such lease at any time, whether or not such taking of possession and collection of rents has occurred.

5.     <u>Foreclosure Pursuant to Power of Sale</u>.

5.1     Upon default, the Mortgagee or its legal representatives or assigns may on such terms and conditions as the Mortgagee deems appropriate in its sole discretion and pursuant to the STATUTORY POWER OF SALE, sell the Premises by public sale to the highest bidder as provided herein and in NH RSA 479, et al., as such statutes may be amended from time to time.

5.2     If the Mortgagee invokes the STATUTORY POWER OF SALE, the Mortgagee may, without further demand upon the Mortgagor, sell the Premises or any estate therein, in one or more parcels, to the highest bidder for cash or other consideration acceptable to the Mortgagee at public sale to be held upon the Premises.

5.3     In the event that the Mortgagee seeks to enforce its rights and remedies hereunder, the Mortgagor shall fully cooperate with the Mortgagee in any foreclosure of the Premises scheduled by the Mortgagee, including without limitation; (i) providing the Mortgagee with any information concerning the Premises reasonably requested by the Mortgagee, such as rental income information, taxes, water assessment charges and any maintenance costs associated with the Premises; (ii) arranging with the Mortgagee two (2) preview dates, each three hours in length, prior to the dates of any foreclosure sale; and (iii) granting the Mortgagee unlimited access to the Premises on the date of the foreclosure sale for one hour before and one hour after the foreclosure sale, except that Mortgagee shall not interfere with the conduct of Mortgagor's business operations on such Premises.  In addition, the Mortgagor shall, without waiving its right to enjoin a foreclosure under NH RSA 479, under no circumstances and in no event in any way interfere with, any foreclosure sale of the Premises scheduled by the Mortgagee.

5.4     The deed given by reason of such sale shall convey to the purchaser an indefeasible title to the Premises, discharged of all rights of redemption with respect to this mortgage by the Mortgagor and its successors or assigns, or any person claiming from or under it or them.  The Mortgagee shall apply the proceeds of such sale first to all costs of notice and sale of the Premises including reasonable attorneys', accountants' and appraisers' fees, then to any and all accrued but unpaid interest due to the Mortgagee, and thereafter to the principal indebtedness evidenced by the Note and secured hereby, and to the other indebtedness secured hereby.  Any excess may be paid to others having a lien on the Premises not having priority over this Mortgage and if none, then to the Mortgagor.  The Mortgagor shall be liable for any deficiency.

5.5     In the event of foreclosure, at the option of the Mortgagee, the interest of each of the Mortgagor and the Mortgagee herein may be sold as a single unit together with such personal

property, furniture, furnishings, fixtures, machinery, and equipment as may secure the Note or be secured by the Loan Documents.

5.6     If the provisions of the Uniform Commercial Code apply, any property or security given to secure the indebtedness secured hereby may be sold with or as a part of the Premises, or any part thereof, at one or more foreclosure sales, and any notice required under such provisions shall be fully satisfied by the notice provided to be given hereby in execution of the STATUTORY POWER OF SALE.

6.     Security Agreement.  The Mortgage is among other things intended to be a security agreement and financing statement with respect to the personal property and fixtures described and included in the Mortgage, and all additions, accessions, substitutions and replacements thereto and therefor, together with the proceeds thereof, and all of which are hereinafter referred to as the collateral and the Mortgagor hereby grants and conveys to Mortgagee, its successors and assigns, a security interest therein.  That upon default of any material term, condition or covenant of the Mortgage and acceleration of any indebtedness hereby secured, the Mortgagee may, at its discretion, require the Mortgagor to assemble the collateral and make it available to the Mortgagee at a place reasonably convenient to both parties to be designated by the Mortgagee.  That the Mortgagee shall give the Mortgagor notice, by registered mail, postage prepaid, of the time and place of any public sale of any of the collateral or of the time any private sale or other intended disposition thereof is to be made by sending notice to the Mortgagor at least ten (10) days before the time of the sale or other disposition, which provisions for notice the Mortgagor and the Mortgagee agree are reasonable; provided, however, that nothing herein shall preclude the Mortgagee from proceeding as to both real and personal property in accordance with the Mortgagee's rights and remedies in respect of the real property.  The Mortgagee shall have all of the remedies of a secured party under the Uniform Commercial Code as now in effect in the state of New Hampshire, and such further remedies as may from time to time hereafter be provided in New Hampshire for a secured party.  The Mortgagor agrees that all rights of the Mortgagee as to said collateral and as to said real estate, and rights and interest appurtenant thereto, may have exercised together or separately and further agrees that in exercising its power of sale as to said collateral and as to said real estate, and rights and interest appurtenant thereto, the Mortgagee may sell the collateral or any part thereof, either separately from or together with the sale real estate, rights and interests appurtenant thereto, or any part thereof, all as the Mortgagee may in its discretion elect.

For the purpose of this Mortgage constituting a financing statement under the Uniform Commercial Code the addresses of the parties are:

The Mortgagor (Debtor)          HAROLD J. MUNCE and MARILYN J. MUNCE
                                453 Alpine Street
                                Berlin, New Hampshire 03570

                                and

The Mortgagee (Secured Party)   NORTHWAY BANK
                                9 Main Street

7.     Appointment of Receiver.  The Mortgagee may, at any time following an Event of Default hereunder which has not been cured within any applicable remedy period or demand under any demand instrument (subject to any limitations in the Loan Documents), apply to any court having jurisdiction for appointment of receiver.  That court shall promptly appoint a receiver of the Premises, who shall be authorized to receive and apply the income, profits, issues, rents and revenues from whatever source derived.  The rents, profits, income, issues, and residues shall be applied by the receiver according to the lien of this Mortgage and the practice of the court.  The appointment of the receiver shall be made by such court as an admitted equity in a matter of absolute right to the Mortgagee, and without references to the adequacy or inadequacy of the value of the Premises or to the solvency or insolvency of the Mortgagor or any co-borrower or guarantor of the obligations secured hereby.

8.     General Provisions.  The Mortgagor and the Mortgagee further agree that:

8.1     Homestead.  There is no homestead interest in the Premises.

8.2     Waivers.  (a) Except as otherwise specifically provided in this Mortgage, the Note and the other Loan Documents, the Mortgagor waives demand, notice of any action taken in reliance on this Mortgage, and all other demands and notices of any description.

(b)     No delay or omission on the part of the Mortgagee in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or of any other right or remedy under this Mortgage.  A waiver on any one occasion shall not be construed as a bar to or waiver of any such right and/or remedy on any future occasion.  No single or partial exercise of any power hereunder shall preclude other or future exercise thereof or the exercise of any other right; and

(c)     That receipt and disposition of rents, income of the Premises, insurance proceeds, eminent domain awards, or any other sums under the provisions of the Loan Documents by the Mortgagee shall not be a waiver or release of any rights of the Mortgagee, including but not limited to, the right of foreclosure or acceleration of the Note, whether such receipt or disposition shall be before or after exercise of any such rights.

8.3     Binding Agreement.  This Mortgage shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, legal representatives, successors, and assigns; provided, however, that any assumption of any obligations of Mortgagor hereunder shall not constitute a release of the party whose obligation is being assumed without the Mortgagee's prior written consent.

8.4     Amendment.  This Mortgage shall not be changed in any respect except by written instrument signed by the parties hereto.

8.5     Governing Law.  This Mortgage and all rights and obligations hereunder, including matters of construction, validity, and performance, shall be governed by the laws of the State of New Hampshire.

8.6     Severability.  If any term, condition, or provision of this Mortgage or the application thereof to any person or circumstance shall, to any extent, be held invalid or unenforceable according to law, then the remaining terms, conditions, and provisions of this Mortgage, or the application of any such invalid or unenforceable term, condition or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby, and each term, condition, and provision of this Mortgage shall be valid and enforced to the fullest extent permitted by law.

8.7     Headings.  The descriptive headings of the sections of this Mortgage have been inserted for convenience and reference only and shall not control or affect the meaning or construction of any of the contents hereof.

8.8     Estoppel Certificate.  The Mortgagor, within five (5) days after being given notice as provided below, will furnish to the Mortgagee a written statement duly acknowledged by the Mortgagor or its representative certifying the principal amount then outstanding on the Note and certifying that no offsets or defenses exist against the Mortgage indebtedness (or explaining such offsets or defenses to the extent they exist).

8.9     Notice.  Any demand or notice required or permitted hereunder shall be effective if either: (a) hand-delivered to the addressee, or (b) deposited in the mail, registered or certified, return receipt requested and postage prepaid, or delivered to a private express company addressed to the addressee: (i) at the address shown at the beginning of this Mortgage, or (ii) if such party has provided the other in writing with a change of address, at the last address so provided.  Any notice or demand mailed as provided in this paragraph shall be deemed given and received on the earlier of:

        (A)     the date received; or

        (B)     the date of delivery, refusal or non-delivery as indicated on the return receipt, if sent by mail or private express as provided above.

8.10    Gender and Number.  All words denoting gender or number shall be construed to include any other gender or number as the context and facts require.

8.11    Conflict with other Loan Documents.  In the event of any conflict between the terms, covenants, conditions and restrictions contained in the Loan Documents, the term, covenant and condition or restriction which grants the greater benefit upon the Mortgagee shall control.  The determination as to which term, covenant, condition or restriction is the more beneficial shall be made by the Mortgagee in its reasonable discretion.

8.12    Waiver of Right of Exemption.  The Mortgagor, for the consideration aforesaid, hereby waives all rights of exemption in the Premises as the same are now or here after provided of the provisions of any federal or state law, including, without limitation, 11 U.S.C. §522.

8.13    Replacement of Security Documents.  Upon receipt of an affidavit of an officer of the Mortgagee as to the loss, theft, destruction or mutilation of the Note or any other security document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon cancellation of such Note or other security document, the Mortgagor will issue, in lieu thereof, a replacement note or other security document in the same principal amount thereof and otherwise of like tenor.

8.14    Waiver of Jury Trial.  THE MORTGAGOR AND THE MORTGAGEE MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF MORTGAGEE RELATING TO THE ADMINISTRATION OF THE LOANS OR ENFORCEMENT OF THE LOAN DOCUMENTS, AND AGREE THAT NEITHER PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  EXCEPT AS PROHIBITED BY LAW OR OTHERWISE PROVIDED IN THE LOAN DOCUMENTS, THE MORTGAGOR HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, ENHANCED COMPENSATORY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES, AND REASONABLE ATTORNEYS FEES IN THE EVENT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE BANK, ITS AGENTS AND EMPLOYEES. THE MORTGAGOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF MORTGAGEE HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT MORTGAGEE WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER.  THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR MORTGAGEE TO ACCEPT THIS MORTGAGE AND MAKE THE LOAN.

IN WITNESS WHEREOF, the Mortgagor has executed this Second Mortgage, Security Agreement and Collateral Assignment of Leases and Rents as of the ___ day of _____, 2011.

MORTGAGOR:

_____
Witness

_____
Harold P. Munce

_____
Witness

_____
Marilyn J. Munce

MORTGAGEE:

NORTHWAY BANK

_____
Witness

By:_____
        Thomas Caruso, Its Duly
        Authorized Senior Vice President

STATE OF NEW HAMPSHIRE
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by Harold P. Munce.

_____
Justice of the Peace/Notary Public
My Commission Expires:
Notary Seal

STATE OF NEW HAMPSHIRE
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by Marilyn J. Munce.

_____
Justice of the Peace/Notary Public
My Commission Expires:
Notary Seal

STATE OF NEW HAMPSHIRE
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by Thomas Caruso, duly authorized Senior Vice President of NORTHWAY BANK, a bank organized under the laws of the State of New Hampshire, on behalf of the same.

_____
Justice of the Peace/Notary Public
My Commission Expires:
Notary Seal

## SCHEDULE A

### Legal Description

The following tracts of land, with the buildings, improvements and fixtures thereon, and interests in real estate, situated in the Towns of Gorham and Lancaster, Coos County, New Hampshire, more particularly described as follows:

[To be completed]